IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUTOMATED SOLUTIONS CORP., | ) | CASE NO. 1:05CV1519 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HEMANN |
| | ) | |
| PARAGON DATA SYSTEMS, INC.. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | Docket ##80, 117 |
| | ) | |

This case is before the magistrate judge on referral. Pending is the motion of
plaintiff/counter-defendant, Automated Solutions Corp. ("ASC"), to dismiss the counterclaim
pursuant to Fed. R. Civ. P. 12(B)(6) ("R. 12(B)(6)") ("Pl. mot."; Docket # 80).
Defendant/counterclaimant, Paragon Data Systems, Inc. ("Paragon"), opposes ASC's
motion ("Def. opp."; Docket # 95). Also pending is Paragon's motion to bifurcate the
proceedings and stay discovery (Docket # 117). ASC opposes Paragon's motion (Docket
# 120). For the reasons stated below, the magistrate judge recommends that the court
grant ASC's motion to dismiss in part and overrule it in part and also recommends that the
court overrule Paragon's motion to bifurcate and stay discovery.

I. Background

The court, as it must, takes all well-pleaded allegations in the counter-claim as true
and construes those allegations in a light most favorable to the counter-claimant. Paragon
alleges or does not dispute the following facts.

On June 21, 2001 ASC and Paragon entered into a Software Development and Ownership Agreement ("Agreement") by which ASC and Paragon were to license and own software for use by the Tribune and by similar companies ("ASC-Paragon software" or "SCDS software").  The Agreement included in relevant part the following preliminary clauses:

> **WHEREAS,** ASC is in the process of developing custom software to be licensed and used by The Chicago Tribune, Inc. and other similar businesses ("ASC-PARAGON SOFTWARE");
>
> **WHEREAS,** Paragon will provide certain equipment, maintenance and support to The Chicago Tribune, Inc. and other similar businesses, in conjunction with the ASC-PARAGON SOFTWARE;
>
> **WHEREAS,** ASC and Paragon agree that the ASC-PARAGON SOFTWARE will be jointly owned by the two companies, including, but not limited to all copyrights to said software and all rights to license and/or sell and/or modify said software;
>
> **WHEREAS,** ASC and Paragon acknowledge that Paragon has paid in excess of $150,000.00 as of this date to develop the ASC-PARAGON SOFTWARE;
>
> **WHEREAS,** ASC and Paragon agree that the two companies will jointly market the software and will equally divide all revenues received as a result of the software;
>
> **WHEREAS,** ASC and Paragon desire at this time to formalize their agreement in writing and proceed with the development of the ASC-PARAGON SOFTWARE and the marketing of the same.

Agreement, Amended Counterclaim (Docket # 56), Exh. A, p. 1.  The Agreement also included the following substantive clauses:

### SECTION ONE

ASC will devote the time required to complete the development of the ASC-PARAGON SOFTWARE which is required to satisfy each and every term of the Software License Agreement which has been proposed by The Chicago Tribune, Inc.

2

## SECTION TWO

PARAGON will continue to pay to ASC the costs directly associated with the development and modification of the ASC-PARAGON SOFTWARE.  The additional costs of ASC shall not exceed $200,000.

## SECTION THREE

ASC and PARAGON will devote the time and resources necessary in order to successfully market and modify the ASC-PARAGON SOFTWARE to The Chicago Tribune, Inc. and other potential customers.  No contract for sale, licensure, modifications, etc. of said software will be valid unless signed by both ASC and PARAGON.

## SECTION FOUR

ASC and PARAGON shall equally divide all revenues received from the ASC-PARAGON SOFTWARE.  This shall include all revenues received from the original version of said software and/or any modification of said software less the actual cost of said modifications.  This shall further include all revenues from all sources, whether it be from licenses, sales, maintenance, etc.

## SECTION FIVE

ASC and PARAGON agree that upon the completion of the ASC-PARAGON SOFTWARE, that they shall jointly take all steps necessary to have the software copyrighted and that they shall jointly own said copyright.

## SECTION SIX

ASC and PARAGON agree that should ASC not complete the development of said software with in [sic] 180 business days from the date of this contract in order; or to satisfy the terms and conditions of contract with The Chicago Tribune, Inc., based upon the timelines agreed upon by The Chicago Tribune and ASC-PARAGON exclusive of documented delays resulting from the actions of third parties outside of ASC control then the following events shall occur:

1.  PARAGON shall become the sole and exclusive owner of the ASC-PARAGON SOFTWARE, the source codes and all rights to said software and all revenues from all sources generated by said software shall become the sole and exclusive property of PARAGON should ASC or its principals not complete the terms of this contract;

2.  ASC shall take all steps necessary to transfer ownership of the ASC-

3

PARAGON SOFTWARE and the copyright to PARAGON; and

3.      The principals of ASC, Richard Petcher and Edward Eaglehouse, shall perform independent consulting services for Paragon at the hourly rate of $85.00 until the software is completed and operational in accordance with the terms and conditions of the contract with The Chicago Tribune, Inc. Payment to Richard Petcher and Edward Eaglehouse for said services shall not exceed the balance of the $200,000 less payments already made;

## SECTION SEVEN

It is agreed and understood that the partes may modify this contract at some point in the future, should it become necessary and that the parties shall negotiate in good faith a modification of this contract and each party will execute any modifications of this contract in order for said modification to become binding.

## SECTION EIGHT

This instrument contains the entire agreement between the parties, and no statements, promises, or inducements made by either party or agent of either party that are not contained in this written contract shall be binding; this contract may not be enlarged, modified, or altered except in writing signed by the parties and endorsed on this agreement.

## SECTION NINE

This agreement shall inure to the benefit of and be binding on the heirs, legal representatives, assignees, and successors of the respective parties.

## SECTION TEN

ASC and PARAGON agree that nothing contained in this agreement is intended or shall be deemed to constitute a partnership or joint venture between ASC and PARAGON, or the right to incur credit, debt or other forms of obligation in the name of the other party.

## SECTION ELEVEN

ASC and PARAGON agree that nothing contained in this agreement is intended or shall be deemed to give ASC or PARAGON the right to contract on the other parties' [sic] behalf.

*Id.* at 1-3.

4

On September 23, 2003 ASC filed a complaint  against Paragon in the Cuyahoga County Court of Common Pleas.  ASC sought a declaratory judgment  regarding its rights under the Agreement after Paragon's alleged termination and breach of the Agreement. The court entered an opinion in the case on February 4, 2005.  *See* Opinion & Order, attached to First Amended Complaint (Docket #5).  In its opinion the court made the following relevant findings of fact and law:[1]

1.      The parties entered into a contract on June 21, 2001 that provided for the development of software (Exhibit 3).  Pursuant to the contract, the parties jointly owned the software.

2.      Parties then contracted with the Chicago Tribune to provide the software to the Tribune.  Plaintiff claims that the Defendant was not a party to the Plaintiff''s contract with the Chicago Tribune (Exhibit 33, executed August 22, 2001). However, Defendant signed the agreement.  Moreover, the Chicago Tribune contract states that both the Plaintiff and the Defendant jointly owned the software.

3.      Plaintiff alleges that the Defendant failed to make payments required by the June 2001 contract.  However, the parties signed a settlement of their monetary obligations on September 20, 2002 (Exhibit 34).  Plaintiff cannot now claim that the Defendants failed to make payments under the June 2001 contract, when Plaintiff settled those claims.

4.      Plaintiff also alleged that the Defendant breached the June 2001 contract by marketing the software to third parties without the Plaintiff's written consent. Testimony at trial proves that the Defendant could market the software without the Plaintiff's consent, but had to obtain written authorization before executing a sale. Plaintiff presented no evidence of a sale.

5.      Defendant asserts counterclaims alleging the Plaintiff failed to timely complete the project according to the deadlines outlined in the June 2001 contract. It is undisputed that the Chicago Tribune requested modifications to the software, which resulted in delays and continuances.  Continuances due to modifications are allowed by the express terms of the June 2001 contract.

6.      Defendant clearly and unambiguously terminated its June 2001 contract by letter dated September 16, 2003 (Exhibit 20).  At that time, Defendant had settled its monetary obligations to the Plaintiff and was awaiting Plaintiff's completion of the software.  Defendant claims that the Plaintiff was in breach of the June 2001 contract, but instead of seeking legal remedies for the alleged breach, Defendant

---

[1]  This court quotes from the state court opinion not to evaluate the truth or falsity of the state court's findings but solely to determine which issues were adjudicated in the state court action.

"terminated" the agreement.  Defendant, at that time, had the option to seek a determination in court as to whether or not in fact the Plaintiff had breached its duties under the contract.  At that juncture, the Defendant chose to terminate the contract prior to seeking any judicial ruling on the issues between the parties.

7.      In view of this Court's finding that the parties were in fact joint owners of the software/code, the Defendant's unilateral termination of the contract was a decision made at their own risk.  Clearly, the Defendant could have sought legal remedies prior to termination of the contract, but it chose not to do so.  By terminating the contract, Defendant lost any rights under the contract as of that date.

8.      The parties were joint owners of the software until September 16, 2003.  Defendant, however, has no legal rights related to any modifications of the software made after the Defendant's unilateral termination of the contract on September 16, 2003.  As of that date, all obligations between the parties were "terminated."

Order & Opinion at 1-2.

On February 25, 2005 ASC obtained a federal registration of its copyright to the SCDS software.  On March 4, 2005 Paragon filed a notice of appeal of the state court's decision denying Paragon rights to the SCDS software after September 16, 2003.

ASC filed the instant action in state court, and Paragon removed it to federal court on May 5, 2005.  ASC alleges that Paragon has been selling and licensing "Delivery, Return, and Collection Information" ("DRACI") software and that this software infringes on its copyright to the SCDS software.  ASC also alleges that Paragon has wrongfully retained copies of the SCDS software, continues to represent itself as the owner of that software, has marketed its DRACI software as SCDS software, and has improperly sold or licensed SCDS software to third parties without ASC's consent.  ASC contends that these alleged wrongful acts have interfered with ASC's relations with present and prospective customers.  ASC asserts federal causes of action for copyright infringement pursuant to 17 U.S.C. § 502 and for a violation of the Lanham Act pursuant to 15 U.S.C. § 1125(a).  ASC also asserts state law causes of action for conversion, tortious interference with business relationships, unjust enrichment, and unfair competition.  ASC seeks injunctive relief,

6

compensatory and punitive damages, and attorney's fees and costs.

Paragon filed an Answer and Counterclaims on July 14, 2005, and on October 6, 2005 Paragon filed an Amended Counterclaim.  Paragon alleges that ASC breached the Agreement by failing to complete the SCDS software by specified deadlines, failing to create marketable software, attempting to transfer rights not exclusive to it, failing to provide consulting services to Paragon, failing to provide hardware to the Chicago Tribune, and failing to include reference to Paragon as an author of the SCDS software on its registration of that software with the United States Copyright Office.  Paragon also contends that ASC and Paragon entered into a Letter Agreement on September 20, 2002 ("the Letter Agreement") regarding excess payments made to ASC by Paragon and the handling of future invoicing and payments.  Paragon alleges that ASC breached the Letter Agreement and that one consequence of this breach is that Paragon is the sole owner of the SCDS software and of profits derived from its sale.  Paragon further alleges that ASC's copyright registration of the SCDS software should be declared invalid because of ASC's failure to include Paragon as an author of that software.  Finally Paragon alleges that ASC's service of a subpoena *duces tecum* to the Cleveland Plain Dealer to produce copies of DRACI without properly serving Paragon with a copy of the subpoena infringed on Paragon's copyright to the DRACI software and constituted an abuse of process.  Paragon asserts federal causes of action for declaratory judgment, copyright infringement, violations of the Lanham Act, and abuse of process.  Paragon also asserts state causes of action for breach of contract, deceptive trade practices, and unjust enrichment.  Paragon seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs.

On December 19, 2005 ASC moved pursuant to Fed. R. Civ. P. 12(B)(6) for

7

dismissal of Paragon's Amended Counterclaims ("Pl. mot."; Docket #80).  Paragon opposes
ASC's motion ("Def. opp."; Docket #95).

## II.  Standard for motion to dismiss

In deciding a Motion to Dismiss under Rule 12(b)(6), the court must take all well-
pleaded allegations in the complaint as true and construe those allegations in a light most
favorable to the plaintiff.  *Gausmann v. City of Ashland,* 926 F. Supp. 635, 638 (N.D. Ohio
1996)(citations omitted).   A well-pleaded allegation is one that alleges specific facts and
does not merely rely upon conclusory statements.  *Scheid v. Fanny Farmer Candy Shops,
Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("more than bare assertions of legal conclusions is
ordinarily required to satisfy federal notice pleading requirements."), citing 5 C. WRIGHT &
A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 596 (1969).  The court is to dismiss
a claim "only if it is clear that no relief could be granted under any set of facts that could be
proved consistent with the allegations."  *Gausmann*, 926 F. Supp. at 638, citing *Hishon v.
King & Spaulding,* 467 U.S. 69, 73 (1984).   While the complaint must give the defendant
fair notice of the plaintiff's claim and the grounds upon which it rests, it need not set down
in detail all the particularities of the claim.  *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064
(6th Cir. 1994); *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th
Cir. 1993).  Under this standard,

> [a] plaintiff will not be thrown out of court for failing to plead facts in support of every
> arcane element of his claim.  But when a complaint omits facts that, if they existed,
> would clearly dominate the case, it seems fair to assume that those facts do not
> exist.

*Scheid*, 859 F.2d at 436 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)

*cert. denied*,  431 U.S. 914 (1977)).

III.   Breach of contract

ASC moves for dismissal of Paragon's cause of action for breach of contract, alleging that this cause of action is barred by *res judicata* and collateral estoppel.  Paragon replies that (1) *res judicata* is not a proper defense to a motion to dismiss under Ohio law; (2) the state court's judgment is void because the state court lacked subject matter jurisdiction to hear the case, and (3) the state court hearing the breach of contract action denied Paragon leave to file its counterclaim.  The court considers each of these arguments separately.

A.      *Res judicata is not a proper defense to a motion to dismiss under Ohio law*

Paragon's reliance on Ohio law to demonstrate that *res judicata* is not a proper defense to a R. 12(B)(6) motion is misplaced.  *Res judicata* is a valid defense to a R. 12(B)(6) motion under the federal procedural rules.  *See, e.g., Kane v. Magna Mixer Co.*, 71 F.3d 555 (6th Cir. 1995); *Rushford v. Firstar Bank, N.A.*, 50 Fed. Appx. 202 (6th Cir. 2002).  As this court is a federal court proceeding under the federal procedural rules, Paragon's examination of Ohio's procedural rules is beside the point.

B.      *The state court lacked subject matter jurisdiction to hear ASC's claims*

Paragon also argues that the judgment of the state court does not have preclusive effect under the doctrine of *res judicata* because the state court lacked subject matter jurisdiction to hear the case.  This argument fails because the state court did not lack subject matter jurisdiction.

The state court case brought by ASC originally included eight causes of action against Paragon:   declaratory judgment, breach of contract, conversion, promissory estoppel, unjust enrichment, fraud, negligent misrepresentation, and tortious interference

9

with business relationships.  *See* Stipulated Partial Dismissal without Prejudice and Tolling

Agreement, Def. opp.. Exh. B., p. 1.  The parties agreed to proceed to trial only on ASC's

first cause of action, a request for declaratory judgment as to ASC's claim that it was

entitled to ownership of the SCDS software at issue in the instant case.  *Id.*  Paragon now

asserts that the court should not give *res judicata* effect "because the state court lacked

subject matter jurisdiction to award sole rights of ownership over the software to ASC

because Section 301 of the federal Copyright Act bestows exclusive jurisdiction in the

federal courts.  Because the state court had no subject matter jurisdiction, its judgment is

void."[2]  Def. opp. at 9.

As Paragon notes, federal courts have exclusive jurisdiction over copyright law and

federal copyright law preempts state laws within the subject matter of copyright:

> Section 301 of the Copyright Act broadly preempts state law claims, and
> federal law vests exclusive jurisdiction over such preempted copyright claims in the
> federal courts.  Section 301 of the Copyright Act states that "all legal or equitable
> rights *that are equivalent* to any of the exclusive rights *within the general scope* of
> copyright as specified in § 106 in works of authorship that . . . come within the
> subject matter of copyright . . . are governed exclusively by this title. . . . [N]o person
> is entitled to any such right or equivalent right in any such work under the common
> law or statutes of any State."  17 U.S.C. § 301(a) (emphasis added).  Section
> 1388(a), Title 28, further provides that "[t]he district courts shall have exclusive
> jurisdiction of any civil action arising under any act of Congress relating to . . .
> copyrights. . . . Such jurisdiction shall be exclusive of the courts of the states in . .
> . copyright cases."  The Copyright Act is unusually broad in its assertion of federal

---

[2] In its development of this argument Paragon cites two cases, *Ritchie v. Williams*,
395 F.3d 283 (6th Cir. 2005), and *Gener-Villar v. Adcom Grp., Inc.*, 417 F.3d 201 (1st Cir.
2005), both of which lead the court to the conclusion that Paragon's argument is utterly
without merit.  ASC's briefing on the issue of preemption inapplicably was based on an
Ohio appellate case, *Tewarson v. Simon*, 141 Ohio App. 3d 103, 750 N.E.2d 176 (2001).
The court assumes that ASC was unable to find anything to the point written by the United
States Supreme Court or the Sixth Circuit regarding the issue of preemption.  The court
suggests that both parties spend less time sniping at each other and more time reading the
caselaw to advance their arguments more effectively and certainly more professionally.

authority.  Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law "within the general scope of copyright" into federal law to be uniformly applied throughout the nation.

*Ritchie v. Williams*, 395 F.3d 283, 285-86 (6th Cir. 2005) (footnote omitted).

This not to say, however, that any matter in any way related to the issue of copyright is preempted by copyright law.  Federal copyright law preempts only actions that are equivalent to a copyright action.  States are free to adjudicate related matters:

In determining . . . whether or not a particular state law cause of action is "equivalent" to a federal copyright infringement action, most circuits (including this one) have referred to the "extra element test."  *See Wrench v. Taco Bell Corp.,* 256 F.3d 446, 454 (6th Cir. 2001).  Under this analytical device, if the state claim requires an "extra element," beyond those required for copyright infringement, then it is not "equivalent," and therefore not preempted.  *Id.*  If there is no "extra element," or the "extra elements" are merely "illusory," then the claim is equivalent to a copyright action, it is preempted by the Copyright Act and the federal courts have exclusive jurisdiction to hear it.  *Id.*

*Ritchie*, 395 F.3d at 288 n.3 (noting the difficulty of applying the "extra element test').

Paragon conducts no analysis to determine whether the state court action below was preempted by federal copyright law.  In that case, the court determined that ASC was the sole owner of the SCDS program developed for the Chicago Tribune because Paragon had breached the contract that would have given it some ownership of the program.  To prevail on a copyright infringement claim, "a plaintiff must show:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir. 1999).  To prevail on a breach of contract claim under Ohio law, a plaintiff must show:   (1) the existence of a binding contract or agreement, (2) the nonbreaching party performed its contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered

11

damages as a result of the breach.  *See National City Bank v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108, 661 N.E.2d 218, 226 (1995).  Ohio's cause of action for breach of contract has much more than an "extra element" beyond those required for copyright infringement.  Indeed, the two causes of action have nothing in common.  ASC's cause of action for a declaratory judgment regarding its rights pursuant to the Agreement, therefore, is not preempted by federal copyright law.[3]

Nor is this result barred because the state court decision in the state contract matter might have a preclusive effect on later copyright litigation.  The general rule that federal courts must give state court judgments the same preclusive effect those judgments would have in a state court requires federal courts to respect the factual and legal decisions of state courts in later copyright actions.  State court decisions may even preclude a subsequent action within the exclusive jurisdiction of the federal courts, such as a copyright action.  *See Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373 (1985); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259 (6th Cir. 1988).

For these reasons, Paragon's argument that the judgment of the state court does not have preclusive effect under the doctrine of *res judicata* because the state court lacked subject matter jurisdiction to hear the case is not well-taken.[4]

---

[3]  Similarly, in *Gener-Villar*, 417 F.3d at 206, the First Circuit found that a state court action sounding in contract was not identical to a copyright action and agreed with the trial court's finding that it had jurisdiction to hear the contract action:  "[W]e are dealing with a controversy of a contractual nature for which this Court does have jurisdiction."

[4]  Indeed, despite Paragon's argument to the contrary, federal courts must sometimes give preclusive effect to the decisions of state courts even when those courts were without subject matter jurisdiction to hear the case at issue.  *See* Wright & Miller, 18A

C.    *The state court denied Paragon leave to file its counterclaim*

Paragon argues that because the state court denied Paragon's attempt to file a counterclaim against ASC, its counterclaims in the instant case are not barred by *res judicata*.  This argument is erroneous.

ASC contends that Paragon's claims are barred both by *res judicata* and collateral estoppel.  Title 28 U.S.C. § 1738 requires a federal court to give a state court judgment the same preclusive effect that judgment would have in a state court.  When a federal court is asked, therefore, to determine whether a state court's judgment should be given preclusive effect in an action in federal court, the federal court must apply the law of the state where the prior judgment was rendered to determine whether and to what extent the state court judgment should be given preclusive effect in the federal action.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); *Reithmiller v. Blue Cross & Blue Shield of Mich.,* 824 F.2d 510, 511 n.1 (6th Cir. 1987).

ASC asks the court to give preclusive effect to the judgment of an Ohio court.  In Ohio, "[t]he doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)."  *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381, 653 N.E.2d 226, 228 (1995).  The general rule of *res judicata* in Ohio is that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *Id.*, 73 Ohio St. 3d at 379, 653 N.E.2d at 227 (syllabus by the court, overruling *Whitehead v. General Tel. Co.*, 20

---

Fed. Prac. & Proc. Juris. 2d § 4428 (2005 update).

Ohio St. 2d 108, 254 N.E.2d 10 (1969)).  The Ohio Supreme Court gives *res judicata* broad effect:

> In *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St. 3d 60, 62, 558 N.E.2d 1178, 1180, we stated:  "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit' " (emphasis *sic* ) (quoting *Rogers v. Whitehall* [1986], 25 Ohio St. 3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388).  We also declared that "[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it."  *Id.*

*Id.,* 73 Ohio St. 3d at 382, 653 N.E.2d at 229.  For this reason, "[w]here a party is called upon to make good his cause of action . . . , he must do so by all the proper means within his control, and if he fails in that respect . . . , he will not afterward be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties."  *National Amusements*, 53 Ohio St. 3d at 62, 558 N.E.2d at 1180 (quoting *Covington & Cincinnati Bridge Co. v. Sargent*, 27 Ohio St. 233 (1875) (paragraph one of the syllabus)).

In the previous action between ASC and Paragon in the Cuyahoga County Court of Common Pleas, Paragon attempted to file an amended answer and counterclaim on December 30, 2003.  ASC moved to strike this filing on January 15, 2004.  On March 2, 2004 the court granted ASC's motion to strike, stating the following:

> DEFT'S. AMENDED ANSWER AND COUNTERCLAIM (FILED 12-30-03) WAS FILED WITHOUT LEAVE OF COURT.  DEFENDANT'S HAVING FAILED TO ARTICULATE ANY GOOD REASON FOR FAILING TO FILE COUNTERCLAIM AND/OR ADDING PARTIES PETCHER AND EAGLEHOUSE IN THEIR ANSWER TO PLT.'S AMENDED COMPLAINT (FILED 12-2-03).  DEFT. FAILED TO RAISE THIS AS AN ISSUE AT C.M.C. OF 12-12-03 WHEN A FIRM TRIAL DATE WAS SET IN THIS MATTER.  DEFT'S WERE WELL AWARE OF PETCHER AND EAGLEHOUSE SINCE THE "AGREEMENT" REFERRED TO BY DEFTS. WAS ATTACHED TO PLT'S AMENDED COMPLAINT (FILED 10-17-03).  THIS IS THE SAME AGREEMENT SITED [sic] IN PARAGRAPH 6, FOOTNOTE 3 OF

14

> DEFENDANT'S REPLY BRIEF INSTANTER.  THOUGH DEFT'S ANSWER TO AMENDED COMPLAINT LIST [sic] TWELVE AFFIRMATIVE DEFENSES IT FAILS TO STATE THERE WERE ADDITIONAL PARTIES NECESSARY FOR PROPER ADJUDICATION OF THIS MATTER.  NEVER THE LESS [sic] THE COURT IN THE INTEREST OF SUBSTANTIAL JUSTICE WILL GRANT THE DEFT. LEAVE TO FILE A COUNTERCLAIM ON BEHALF OF DEFT. PARAGON DATA SYSTEMS INC., [sic] ONLY VS. PLT. AUTOMATED SOLUTIONS CORP. BY 3-15-04.

Docket entry, 03/02/2004, *Automated Solutions Corp. v. Paragon Data Sys.*, Cuyahoga County, CV-03-511012 (Ct. C. Pl. Ohio), Exh. A, p. 7.  Paragon did not attempt to file its counterclaim until it filed a motion for leave to file a counterclaim instanter on April 27, 2004.  On July 27, 2004 the court denied Paragon leave to file its counterclaim.

That Paragon was denied leave to file a counterclaim in the state court case has no effect on whether this court should apply *res judicata* to those claims that Paragon *could* have brought as counterclaims.  Paragon had an opportunity in the state court action to raise counterclaims related to its rights under the Agreement  and failed timely to avail itself of its opportunity.  Any claim that Paragon could have raised will be barred by *res judicata* if the claim would have been barred had Paragon actually raised it in the state court.

The Sixth Circuit has found that the claim preclusive effect of *res judicata* has four elements in Ohio:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir. 1997).  The state court decision regarding ASC's rights under the Agreement was a prior final, valid decision on the merits by a court of competent jurisdiction, and the instant case is a second action involving the same parties.  Thus, to the extent that Paragon raises claims that were litigated or could

15

have been litigated in the previous state court action and arise out of the transaction or

occurrence that was the subject matter of that previous action, those claims are barred by

*res judicata.*

Paragon's counterclaim for breach of contract against ASC in the instant case

includes claims based on an alleged breach of the Agreement and claims based on an

alleged breach of the Letter Agreement.  The claims based on an alleged breach of the

Agreement read in relevant part as follows:

> 5.    The Agreement contemplated the parties' joint development and authorship of software which has become known as "SCDS" in the third recital to the Agreement, providing "ASC and Paragon agree that the ASC-PARAGON SOFTWARE will be jointly owned by the two companies, including, but not limited to all copyrights to said software and all rights to license and/or sell and/or modify said software."  Section Three of the Agreement further provided that "No contract for sale, licensure, modifications, etc. of said software will be valid unless signed by both ASC and PARAGON."  Section Five further provided, "ASC and PARAGON agree that upon completion of the ASC-PARAGON SOFTWARE, that they shall jointly take all steps necessary to have the software copyrighted and that they shall jointly own said copyright."  Section Six of the Agreement further created a deadline of 180 days for ASC to complete the development of SCDS or otherwise satisfy the timelines established by ASC[-]Paragon and the Chicago Tribune.
> 6.    Notwithstanding its duty to do so, ASC failed to complete the software within contractually established deadliines.
> 7.    Notwithstanding its duty to do so, ASC failed to create marketable software as required by the Agreement.
> 8.    In direct contravention of the Agreement, ASC has attempted to transfer rights not owned by it to a third party.
> 9.    Notwithstanding its duty to do so, ASC failed to perform consulting services in connection with the completion of the overdue software.
> 11.    Attached hereto as Exhibit B, [sic] is a copy of a Certificate of Registration issued by the United States Copyright Office for the SCDS software.  It designates ASC as author and employer for hire of Edward F. Eaglehouse, Scott D. Evans, and Richard W. Petcher.  ASC wrongfully omitted any reference to Paragon.
> 12.    All of the aforesaid actions constitute material breaches of the Agreement.

Amended Counterclaim at 2-3.

Paragon's claims based on an alleged breach of the Letter Agreement read in

relevant part as follows:

> 13.     ASC and Paragon entered into a Letter Agreement on September 20, 2002 . . . The purpose of the Letter Agreement was to memorialize certain "verbal commitments" relating to "excess" payments that had been made to ASC by Paragon, and to address how future invoicing and payments were to be handled. Among other contractual commitments contained in the Letter Agreement, ASC agreed "to provide [Paragon] unencrypted source code no later that 120 days from September 20, 2002 (January 18th, 2003) or once the 'go-live milestone' has been reached, whichever occurs first."
>
> 14.     Notwithstanding its duty to do so, ASC failed to provide unencrypted source code to Paragon.
>
> 15.     Notwithstanding its duty to do so, ASC failed to provide encrypted source code updates to Paragon[.]
>
> 16.     Notwithstanding its duty to do so, ASC failed to properly invoice the Chicago Tribune.
>
> 17.     Contrary to the terms of the Letter Agreement, ASC attempted to negotiate alternate payment arrangements with the Chicago Tribune.
>
> 18.     Notwithstanding its duty to do so, ASC failed to explain excess hours billed to Paragon.
>
> 19.     At all material times, and in all material respects, Paragon performed its obligations and duties under the Letter Agreement.
>
> 20.     These acts or omissions on the part of ASC constitute material breaches of the Letter Agreement.

Amended Counterclaim at 3-4.

With the exception of the claim stated in paragraph 11 of Paragon's Amended Counterclaim above, all of Paragon's claims for breach of the Agreement were or should have been litigated in the state court action below.  The claim stated in paragraph 11 of Paragon's Amended Counterclaim is not barred by *res judicata* only to the extent that it relies on rights arising from the Agreement that vested in Paragon on or before September 16, 2003.[5]  Otherwise, it, too, is barred by *res judicata*, as the state court determined that Paragon has no rights arising from the Agreement after September 16, 2003.

---

[5]  The court finds it highly unlikely that Paragon can state a copyright claim based in the Agreement given the date of the filing of the copyright.

The claims based on ASC's alleged breach of the Letter Agreement are also barred by *res judicata* to the extent that they should have been litigated by Paragon in the state court case prior to March 15, 2004.  The Letter Agreement was the parties' attempt to settle disputes arising under the Agreement, so any breach of the Letter Agreement occurring while the parties were litigating their rights arising under the Agreement was a compulsory counterclaim under Ohio law.[6]  The state court gave Paragon until March 15, 2004 to file its amended counterclaim.  Thus, any alleged breach of the Letter Agreement arising before March 15, 2004 should have been litigated in the state action and therefore is barred by *res judicata*.

For the reasons given above the magistrate judge recommends that the court grant ASC's motion to dismiss as regards (1) any counterclaim alleging a breach of the Agreement except a claim stating a breach due to an alleged wrongful omission of Paragon as an author of the SCDS software on the Certificate of Registration issued by the United States Copyright Office and except any claim based on rights acquired by and vested in Paragon on or before September 16, 2003 and (2) any counterclaim alleging a breach of the Letter Agreement that could not have been asserted prior to March 15, 2004.

IV.  Declaratory judgment for fraud on the copyright office

ASC moves to dismiss Paragon's second cause of action, a request for a declaratory judgment that ASC committed fraud on the copyright office in asserting in its copyright application that it was the sole author of the SCDS software and that, therefore, ASC's

---

[6] Ohio Civ. R. 13(A) requires litigating parties to raise as a counterclaim "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."

copyright is invalid. ASC contends that this counterclaim is barred by *res judicata* and that any individuals engaged to develop the SCDS software on ASC's behalf contributed to the program as "work made for hire" with ASC as author of the program.[7]

A certificate of copyright registration is *prima facie* evidence of copyright validity. 17 U.S.C.A. § 410(c); *Cannon Grp., Inc. v. Better Bags, Inc.*, 250 F. Supp. 2d 893, 898 (S.D. Ohio 2003). However, "[t]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action." *Cannon Grp.*, 250 F. Supp. 2d at 898 (quoting *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980)). The alleged omission, moreover, must have been knowing or intentional or have prejudiced the defendant or the public. *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956); *Cannon Grp.*, 250 F. Supp. 2d at 898.

Paragon's counterlaim alleges that ASC's application for copyright registration omitted the name of Charlotte Carrino and perhaps others as an author of the work, that

---

[7] ASC also asserts that Paragon has no standing to challenge ASC's copyright. It first makes this argument, however, in its reply brief, thus giving Paragon no opportunity to respond to this assertion. Moreover, ASC does not explain in what respect it believes that Paragon lacks standing. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) ("[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). ASC also fails to cite any law to support its assertion that Paragon lacks standing. Paragon's allegations regarding the injuries it has suffered because ASC is the only entity entitled to sell or license the SCDS software and the allegation that one of its employees was an author of the software would seem, at least on their face, to allege sufficient facts to give Paragon standing to assert a claim that ASC's copyright registration is invalid. The court sees no reason, therefore, to address the matter of standing *sua sponte*.

this omission might have caused the copyright office to reject the application, and that ASC intentionally omitted this information with intent to defraud or mislead the copyright office. This is sufficient to plead an action for fraud on the copyright office.[8]

ASC's arguments in favor of dismissal are not well-taken, as both arguments would require the court to look beyond the pleadings to determine their merits. The state court's judgment in favor of ASC determined who *owned* the SCDS software, not who authored it. Thus, the state court decision does not, on its face, have preclusive effect on the subject of who authored the SCDS software. ASC's proffer of a portion of trial transcript from state court to prove that Paragon acknowledged that Automated exclusively developed the SCDS software introduces evidence that would require the court to convert ASC's motion to dismiss into a motion for summary judgment if the court took that material into consideration. *See* R. 12(B). Similarly, ASC's assertion that any individuals engaged to develop the SCDS software on ASC's behalf contributed to the program as "work made for hire" with ASC as author of the program requires material beyond the pleadings for its support.[9] Restricting itself to the pleadings and to documents which the court may consider in adjudicating a motion to dismiss, the court cannot say that it is clear that no relief could be granted under any set of facts that could be proved consistent with Paragon's claim of fraud on the copyright office. For this reason the magistrate judge recommends that the court overrule ASC's motion to dismiss Paragon's second cause of action for a declaratory

---

[8] While the Sixth Circuit has not definitively recognized this cause of action, recognition of the cause of action as described above is strongly implied by *dicta* in *Advisers*, 238 F.2d at 708.

[9] ASC does not offer any such material.

judgment.

### V.  Copyright infringement for copying SDCS

ASC moves to dismiss Paragon's claim that allowing third parties to copy ASC's SCDS software makes ASC liable for copyright infringement.  ASC alleges that Paragon cannot obtain relief on this claim because it is unable to show that it owns a copyright. Paragon denies that ownership of a copyright is an element of a claim for copyright infringement, citing *Vapac Music Publ'g, Inc. v. Tuff'n'Rumble Mgmt.*, 2000 Lexis 10027 (S.D.N.Y. 2000), in support of this proposition.[10]

To prevail on a copyright infringement claim in the Sixth Circuit, "a plaintiff must show:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Ellis,* 177 F.3d at 506.  Paragon does not allege that it owns a valid copyright to the SCDS software or that ASC, rather than some third party, copied the software.  For this reason the magistrate recommends that the court grant ASC's motion to dismiss Paragon's third claim for relief, copyright infringement for allowing others to copy the SDCS software.

### VI.  Copyright infringement for copying DRACI

---

[10]  The *Vapac* case does not stand for this proposition.  *Vapac* merely asserts that a federal court has jurisdiction over a claim of copyright infringement if a copyright has been registered, even if the plaintiff was not the one who originally filed the copyright. *Vapac* finds, moreover, that only a party claiming an ownership interest in the copyright has standing to bring a claim of copyright infringement.  The cited case, therefore, (1) has nothing to do with the elements of a claim of copyright infringement and (2) makes clear that a plaintiff must have an ownership interest in the copyright at issue to have standing to bring a cause of action for copyright infringement.  Thus, Paragon's assertion to the court that the case should not be dismissed because "Paragon, a co-author of the SCDS software, is not required to show ownership of a valid copyright registration; it must only show the copyright was registered" is proved wrong by the very case Paragon cites.

ASC moves to dismiss Paragon's claim that issuing a subpoena to the Plain Dealer to provide ASC with a copy of Paragon's DRACI software infringed on Paragon's copyright to that software.

To prevail on a copyright infringement claim in the Sixth Circuit, "a plaintiff must show:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Ellis,* 177 F.3d at 506.  Paragon alleges that it holds a valid copyright in DRACI and alleges that ASC copied its protected material.  This is sufficient to state a claim for copyright infringement.[11]  For this reason the magistrate judge recommends that the court overrule ASC's motion to dismiss Paragon's fourth claim for relief, copyright infringement for issuing a subpoena for a copy of the DRACI software.

## VII.  Abuse of process

ASC moves to dismiss Paragon's motion for abuse of process, arguing that inconsistencies and contradictions between Paragon's Complaint and its Amended Complaint demonstrate that this claim is a mere "creature of litigation," Pl. mot. at 16, and that those inconsistencies and contradictions ensure that Paragon would never be able to

---

[11]  ASC argues that Paragon's allegation that ASC infringed Paragon's copyright by issuing a subpoena to the Plain Dealer newspaper for a copy of DRACI is an improper attempt to resolve a discovery dispute by means of legal action rather than challenging the discovery.  The only law ASC cites in support of this proposition is Ohio procedural law, not federal procedural law.  ASC also argues that it could not have copied DRACI because it never had a copy of the DRACI software in its possession.  ASC relies on the parties' Joint Stipulation of July 12, 2005 (Docket #9) in support of this assertion, claiming that in the Joint Stipulation the parties agreed that ASC did not have access to DRACI.  ASC misrepresents, however, the contents of the Joint Stipulation.  In the Joint Stipulation, counsel for ASC *represented* to Paragon that he had opened the materials from the Plain Dealer, examined them, then returned them to the box in which they had arrived and resealed the box without showing the documents to anyone.  The Joint Stipulation did not state that Paragon agreed that this is what ASC's counsel had done.

satisfy the elements of a claim of abuse of process.[12]  Paragon responds that allegations of a lack of good faith is not a sufficient ground for granting a motion to dismiss, as the court must assume the truth of all of Paragon's allegations.  Paragon also notes that ASC cites no caselaw which holds that a claim fails because some of the allegations supporting it were changed on amendment.

Before the court addresses the parties' arguments, it must first point out that at least ASC has erroneously assumed that Ohio law governs an alleged abuse of *federal* process.[13]  This action was removed to federal court on May 31, 2004.  ASC issued its subpoena to the Plain Dealer on July 11, 2005.  Thus, ASC issued its subpoena pursuant to federal process.  To allow state law to determine what constitutes an abuse of federal judicial process would be to give the states a veto over what uses of process are allowable in federal court.

The federal tort of abuse of process consists of a "perversion of lawfully initiated process to illegitimate ends."  *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994) (citations omitted).  "Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion."  *Id.*

---

[12]  ASC also argues that the claim should be dismissed because this court's Protective Order of December 9, 2005 (Docket #80) found that ASC did nothing wrong in issuing the subpoena and because ASC never obtained an electronic copy of the DRACI software.  Because ASC first introduces these arguments in its reply, when Paragon was unable to answer them, the court will ignore the arguments.  Moreover, the latter argument introduces evidence beyond the pleadings which the court must ignore in adjudicating a motion to dismiss.

[13]  *See* Pl. mot. at 14.

In the instant case Paragon alleges that "[t]he proceedings in this matter have been perverted by ASC in an attempt to accomplish an ulterior purpose for which these legal proceedings were not designed and this court has no jurisdiction or authority to order." Amended Counterclaim at 7. Paragon alleges, specifically, the following:

> 52.     Since commencing this case, ASC has further misused legal process and authority by the improperly issuing [sic] a subpoena duces tecum to a third party in complete and utter disregard of Fed. R. Civ. P. 26(d) and further failed properly to serve counsel for Paragon with said subpoena which sought production of documents and materials which are proprietary and confidential to Paragon.
> 53.     As a result of the issuance of the subpoena duces tecum, ASC and its counsel have been able to obtain access to the requested confidential documents and materials and, upon information and belief, ASC has converted same for its own unlawful gain and financial advantage.

*Id.* at 7-8. These allegations are sufficient to plead the federal tort of abuse of process.

In response to these allegations ASC asserts that the inconsistencies and contradictions between Paragon's Complaint and its Amended Complaint ensure that Paragon would never be able to satisfy the elements of a claim of abuse of process. ASC points to Paragon's assertion in its original Counterclaim:

> 57.     The institution of the Complaint and First Amended Complaint by ASC against Paragon was done with malice, hatred and ill will towards Paragon and based upon ASC's improper and ulterior purpose and motive of misusing the judicial process and courts of this state and country in an effort to harass, embarrass, intimidate and to otherwise unlawfully coerce, deter, and suppress Paragon's pursuit of its own legitimate business affairs and interests.

Complaint (Docket #12), pp. 17-18. ASC compares this with the following statement in Paragon's Amended Counterclaim, which it alleges is inconsistent with Paragon's earlier statement:  "The institution of the proceedings by ASC against Paragon was done with probable cause, although many of the allegations in the Complaint and First Amended

Complaint are false."[14]   Amended Complaint at 7.

The two statements are not necessarily inconsistent.  It is entirely possible that an illegitimate purpose was one motivation for ASC's Complaint even though ASC had probable cause to bring the Complaint.  ASC's argument is not well taken.

For these reasons the magistrate judge recommends that the court overrule ASC's motion to dismiss as regards Paragon's fifth claim for relief, abuse of process.

### VIII.  Deceptive trade practices and unjust enrichment

ASC moves to dismiss Paragon's sixth, seventh, and eighth claims for relief, deceptive trade practices in violation of the Lanham Act (15 U.S.C. § 1125), violations of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.02 *et seq.*), and unjust enrichment, on the ground that they are preempted by federal copyright law.  Paragon denies that federal copyright law preempts all claims based on the Lanham Act, the Ohio Deceptive Trade Practices Act, or a state claim of unjust enrichment.

Federal copyright law preempts state laws whose gist in a particular case duplicates rights protected by the Copyright Act:

Section § 301 [17 U.S.C. § 301] of the Copyright Act defines the scope of the Act's preemptive reach.  In pertinent part, it provides:

---

[14]  The amendment of this counterclaim was apparently an attempt to cure what the parties regarded as a defect in Paragon's pleading of the cause of action for abuse of process under Ohio law.  ASC had noted that Paragon failed to plead that the action was initiated with probable cause, a necessary element of the claim under Ohio law.  *See Johnson v. Hayden*, 67 Fed. Appx. 319, 324-25 (6th Cir. 2003) ("Under Ohio law, abuse of process consists of the following three elements:  (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process.") (citing *Yaklevich v. Kemp, Schaeffer & Rowe Co.,* 68 Ohio St. 3d 294, 626 N.E.2d 115, 116 (1994)) (footnote omitted).

(a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether [ . . . ] published or unpublished, are governed exclusively by this title.  Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression;  or [ . . . ]

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the **636** general scope of copyright as specified by section 106.

17 U.S.C. § 301.

As we explained in our recent decision in *Wrench LLC v. Taco Bell,* 256 F.3d 446 (6th Cir. 2001):

[A] state common law or statutory claim is preempted if:  (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102,103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.

*Id.* at 453.

\*       \*       \*       \*       \*

We held in *Taco Bell* that

"[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights.  Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Taco Bell,* 256 F.3d at 456.

*Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 635-36 (6th Cir.

2001).  "[P]reemption . . . is highly dependent upon the facts presented and the claims

actually pled by the parties."  *Id.* at 636.  A claim of unjust enrichment resting only on a

26

claim that a defendant misappropriated plaintiff's intellectual property is preempted by federal copyright law. *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 713-14 (6th Cir. 2004).

Paragon makes the following allegations regarding ASC's alleged deceptive trade practices and unjust enrichment:

## SIXTH CLAIM FOR RELIEF
## Deceptive Trade Practices - SCDS

55.     Paragon realleges Paragraphs 1 through 54 and incorporates them by reference.

56.     ASC has publicly claimed that it holds an exclusive copyright in SCDS.

57.     ASC's claim of exclusive copyright in SCDS is based solely on its application for copyright registration.

58.     ASC has publicly claimed, in its website and elsewhere, that SCDS "can only be rightfully obtained and licensed through Automated Solutions."

59.     ASC has publicly claimed, in its website and elsewhere, that "other companies may have marketed and sold" SCDS.

60.     The "other companies" claimed by ASC to have marketed and sold SCDS without ASC's authorization are, in fact, only Paragon.

61.     ASC's claim that it is exclusively authorized to copy, distribute, and/or sell SCDS is false.

62.     ASC's false statements about the exclusive right to sell and/or copy SCDS constitute deceptive trade practices in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

63.     ASC's acts constitute unfair competition, false or misleading advertising, false or misleading descriptions or representations of fact, and false designations of origin regarding the nature, qualities and characteristics of SCDS, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

64.     ASC's acts of unfair competition, false or misleading advertising, false or misleading descriptions or representations of material fact, and false designation of origin has [sic] been willful and/or committed with the intent to injure and compete unfairly with Paragon, and have caused significant injury in an amount not presently known but can be proved at trial.

65.     As a result of ASC's defective [sic] trade practices, Paragon has been irreparably damaged, and unless ASC is preliminarily and permanently enjoined from continuing its deceptive trade practices, Paragon will continue to suffer irreparable harm for which no adequate remedy exists at law.

## SEVENTH CLAIM FOR RELIEF

**Deceptive Trade Practices - Ohio - SCDS**

66.     Paragon realleges Paragraphs 1 through 65 and incorporates them by reference.

67.     ASC's conduct constitutes unlawful, unfair and fraudulent business practices in violation of the Ohio Deceptive Trade Practices Act, ORC §§ 4165.01 *et seq.*

68.     ASC's false and misleading representations of material fact to the public, customers and potential customers of Paragon, [sic] are in violation of ORC § 4165.02.

69.     The deceptive trade practices of ASC have caused permanent and irreparable harm to Paragon, for which there is no adequate remedy at law, such that Paragon is entitled to an injunction prohibiting ASC from continuing the conduct described above.

70.     By virtue of ASC's deceptive trade practices, Paragon is entitled to the award of actual damages, attorney's fees, costs and expenses, pursuant to ORC § 4165.03.

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**

71.     Paragon realleges Paragraphs 1 through 70 and incorporates them by reference.

72.     As a direct and proximate result of ASC's conduct, ASC has obtained business and earnings from customers or perspective [sic] customers of Paragon, which customers would have either become customers or remained customers of Paragon in the absence of ASC's improper conduct.

73.     As a direct and proximate result of ASC's improper conduct, it has earned money, [sic] from sales, services, royalties, licensing fees, and/or other methods, that Paragon is entitled to.

74.     This conduct constitutes unjust enrichment under Ohio law, and Paragon has been damaged in an amount not yet ascertainable, but can be proven at trial.

Amended Counterclaim at 8-10.

Paragon argues that its counterclaims are not preempted because they are based on the assertion that ASC made false and misleading *statements*, and that is distinct from the rights granted to copyright owners:  reproduction, derivation, distribution, public performance, and public display.  ASC responds that the statements to which Paragon refers were true and cannot be the basis for liability.

28

Paragon is correct that its counterclaims are not preempted by federal copyright law. While the SCDS software is within the scope of the subject matter of copyright, thus satisfying the first prong of the test for preemption, the rights defined by the Lanham Act and Ohio law as pleaded by ASC are not abridged by an act which in and of itself would infringe one of the exclusive rights granted by the Copyright Act. That is, Paragon alleges that it was injured by ASC's false statements, not by an act of infringement.

ASC also argues that Paragon's claims must be dismissed because the assertions which Paragon alleges to be false are, in fact, true. Paragon alleges that ASC made false statements by claiming that ASC holds an exclusive copyright in SCDS; that SCDS can only be rightfully obtained and licensed through ASC; and that ASC is exclusively authorized to copy, distribute, and/or sell SCDS. Because ASC has a registered copyright to the SCDS software, these facts are presumed to be true. Their truth depends, however, upon the validity of ASC's copyright. If, as Paragon alleges, ASC obtained its copyright by fraud on the copyright office, then ASC's assertions regarding rights derived from the copyright are part of a continuing fraud involving its rights to the SCDS program. Under those circumstances, Paragon might be able to make good its claims for deceptive trade practices and unjust enrichment. The court cannot say, therefore, that it is clear that no relief could be granted under any set of facts that could be proved consistent with Paragon's claims of deceptive trade practices and unjust enrichment. For this reason, the magistrate judge recommends that the court overrule ASC's motion to dismiss as regards Paragon's sixth, seventh, and eighth claims for relief.

### IX.  Motion to bifurcate the proceedings and stay discovery

Paragon moves to bifurcate the proceedings and stay discovery on all questions at

issue in this litigation with two exceptions:  (1) whether ASC's copyright for the SCDS software is valid and (2) whether Paragon's DRACI program was copied or improperly derived from the SCDS software.  Paragon contends that bifurcation will prevent waste of time and money and that resolution of the two issues above will resolve most or all of the matters in dispute between ASC and Paragon.  ASC responds that most of the causes of action asserted in its Amended Complaint do not depend on resolving the questions of whether ASC's copyright for the SCDS software is valid and whether Paragon's DRACI program was copied or improperly derived from the SCDS software.

ASC asserts seven causes of action in its Amended Complaint:  (1) copyright infringement for selling or licensing SCDS software or a derivative of it; (2) a violation of the Lanham Act for selling or licensing SCDS software; using the names "SCDS," "Single Copy Distribution System," and "Single Copy Delivery System" in its sale and licensing efforts; and making false statements and creating confusion in the marketplace regarding ASC's and Paragon's software systems; (3) breach of contract for failing to obtain ASC's written consent before selling or licensing the SCDS software or a derivative of it and failing to share any profits derived from sale or licensing of the software; (4) conversion for failing to return copies of the SCDS software source and object codes and for selling and licensing SCDS software or a derivative of it without sharing the profits with ASC; (5) tortious interference with business relationships by Paragon's unauthorized sale or licensing of the SCDS software or a derivative of it; (6) unjust enrichment by Paragon's unauthorized sale or licensing of the SCDS software or a derivative of it; and (7) unfair competition by marketing, selling, or licensing the SCDS software or a derivative of it while the Agreement was still in effect.  The court assumes that in the first six causes of action ASC's references

30

to "the SCDS software or a derivative of it" are references to Paragon's DRACI software.[15]

ASC asserts that the causes of action it asserts in its complaint do not depend upon resolution of the issues of whether ASC's copyright for the SCDS software is valid and whether Paragon's DRACI program was copied or improperly derived from the SCDS software.  That assertion appears to be inaccurate, as those two issues would seem to be at the heart of at least six of the seven causes of action asserted by ASC.  ASC also asserts that Paragon's claims regarding the validity of ASC's copyright to the SCDS software and the independent creation of the DRACI software are "fictitious" and the subject of ASC's motion to dismiss.  But Paragon's request for a declaratory judgment based on the validity of ASC's copyright to the SCDS software survives ASC's motion to dismiss, as do Paragon's claim for copyright infringement for copying Paragon's DRACI software and the related claims for deceptive trade practices and unjust enrichment.  Thus, most of the issues remaining in this cause of action revolve around whether ASC's copyright for the SCDS software is valid and whether Paragon's DRACI program was improperly derived from the SCDS software.

It is for this reason, however, that Paragon's motion to bifurcate the proceedings and stay discovery should *not* be granted.  The  issues remaining in this case other than the issues of whether ASC's copyright for the SCDS software is valid and whether Paragon's

---

[15]    The court makes this assumption because ASC has asserted that DRACI infringes on ASC's rights to the SCDS software and because the Amended Complaint's request for an injunction refers to enjoining Paragon from selling or licensing "SCDS," "Single Copy Distribution System," "Single Copy Delivery System," "DRACI," "D.R.A.C.I.," and "Delivery, Return, and Collection Information."  If this assumption is erroneous, it might have been avoided had ASC chosen to describe Paragon's alleged violations with greater specificity.

31

DRACI program was improperly derived from the SCDS software are not unduly great in number or especially complex.  Thus, there is little justification for the unusual step of bifurcating the proceedings and implementing a partial stay of discovery, particularly as discovery has been progressing for a year already.  The parties should, instead, focus their attention on completing discovery as to the issues remaining in the case.  For this reason the magistrate judge recommends that the court overrule Paragon's motion to bifurcate the proceedings and stay discovery.

### X.  Conclusion

For the reasons given above the magistrate judge recommends that the court:

1. grant ASC's motion to dismiss Paragon's claim for breach of contract as regards (a) any counterclaim alleging a breach of the Agreement except a claim stating a breach due to an alleged wrongful omission of Paragon as an author of the SCDS software on the Certificate of Registration issued by the United States Copyright Office and except any claim based on rights acquired by and vested in Paragon on or before September 16, 2003 and (b) any counterclaim alleging a breach of the Letter Agreement that could not have been asserted prior to March 15, 2004;

5. overrule ASC's motion to dismiss Paragon's second cause of action for a declaratory judgment;

2. grant ASC's motion to dismiss Paragon's third claim for relief, copyright infringement for allowing others to copy the SDCS software;

3. overrule ASC's motion to dismiss Paragon's fourth claim for relief, copyright infringement for copying Paragon's DRACI software;

32

6.      overrule ASC's motion to dismiss Paragon's fifth claim for relief, abuse of

process;

4.      overrule ASC's motion to dismiss Paragon's sixth, seventh, and eighth claims

for relief, deceptive trade practices and unjust enrichment; and

7.      overrule Paragon's motion to bifurcate the proceedings and stay discovery.

Date:  June 30, 2006                    /s/Patricia A. Hemann
                                        Patricia A. Hemann
                                        United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).