IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ------------------------------------------------------ : | |
| AUTOMATED SOLUTIONS | : CASE NO. 1:05 CV 1519 |
| CORPORATION | : |
| | : <u>MEMORANDUM OF OPINION AND</u> |
| Plaintiff | : <u>ORDER REGARDING AUTOMATED'S</u> |
| | : <u>MOTION TO DISMISS PARAGON'S</u> |
| -vs- | : <u>FIRST AMENDED COUNTERCLAIM</u> |
| | : <u>AND OBJECTIONS TO MAGISTRATE</u> |
| PARAGON DATA SYSTEMS, INC., | : <u>JUDGE'S REPORT AND</u> |
| | : <u>RECOMMENDATION</u> |
| Defendant | : |
| | (ECF # 80, 95, 100, 126, 140, 141) |
| ------------------------------------------------------ | |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

In this Memorandum of Opinion and Order  the Court will address the Motion to Dismiss Defendant's Counterclaims made by plaintiff Automated Solutions Corporation ("Automated") (ECF #80), the Opposition to the Motion to Dismiss by defendant Paragon Data Systems, Inc. ("Paragon") (ECF #95), Automated's Reply Memorandum (ECF #100), the Report and Recommendation of Magistrate Judge Hemann (ECF #126), Automated's Objections to the Magistrate Judge's Report and Recommendation (ECF #141),[1] and Paragon's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (ECF #140).

_____

[1]     Automated originally filed objections to the Magistrate Judge's Report and Recommendation which exceeded the page limitation, without obtaining  leave of court. (ECF #131).  Automated re-filed objections conforming with the local rules. (ECF #141).

**I. Factual Background**

Magistrate Judge Hemann's Report and Recommendation ("R & R") includes a thorough and careful statement of facts; the Court will set forth that statement here with minor amendments.

The Court takes all well-pleaded allegations in the Counterclaim as true and construes those allegations in a light most favorable to defendant Paragon. The following facts are alleged or undisputed in the pleadings, presented in the documents attached, incorporated or referenced in the pleadings, or matters of which the Court may take judicial notice.

**A.     Pre-litigation**

On 21 June 2001 Automated and Paragon entered into a Software Development and Ownership Agreement ("SDO Agreement") by which Automated and Paragon were to license and own software for use by The Chicago Tribune, Inc. ("Tribune") and similar companies ("ASC-Paragon software" or "SCDS software"). The SDO Agreement, which refers to Automated as "ASC," included the following relevant preliminary clauses:

> **WHEREAS,** ASC is in the process of developing custom software to be licensed and used by The Chicago Tribune, Inc. and other similar businesses ("ASC-PARAGON SOFTWARE");
>
> **WHEREAS,** Paragon will provide certain equipment, maintenance and support to The Chicago Tribune, Inc. and other similar businesses, in conjunction with the ASC-PARAGON SOFTWARE;
>
> **WHEREAS,** ASC and Paragon agree that the ASC-PARAGON SOFTWARE will be jointly owned by the two companies, including, but not limited to all copyrights to said software and all rights to license and/or sell and/or modify said software;

2

**WHEREAS,** ASC and Paragon acknowledge that Paragon has paid in excess of $150,000.00 as of this date to develop the ASC-PARAGON SOFTWARE;

**WHEREAS,** ASC and Paragon agree that the two companies will jointly market the software and will equally divide all revenues received as a result of the software;

**WHEREAS,** ASC and Paragon desire at this time to formalize their agreement in writing and proceed with the development of the ASC-PARAGON SOFTWARE and the marketing of the same.

SDO Agreement, Amended Counterclaim (ECF  # 56), Ex. A, p. 1.

The SDO Agreement also included the following substantive clauses:

**SECTION ONE**
ASC will devote the time required to complete the development of the ASC-PARAGON SOFTWARE which is required to satisfy each and every term of the Software License Agreement which has been proposed by The Chicago Tribune, Inc.

**SECTION TWO**
PARAGON will continue to pay to ASC the costs directly associated with the development and modification of the ASC-PARAGON SOFTWARE. The additional costs of ASC shall not exceed $200,000.

**SECTION THREE**
ASC and PARAGON will devote the time and resources necessary in order to successfully market and modify the ASC-PARAGON SOFTWARE to The Chicago Tribune, Inc. and other potential customers. No contract for sale, licensure, modifications, etc. of said software will be valid unless signed by both ASC and PARAGON.

**SECTION FOUR**
ASC and PARAGON shall equally divide all revenues received from the ASC-PARAGON SOFTWARE. This shall include all revenues received from the original version of said software and/or any modification of said software less the actual cost of said modifications. This shall further include all revenues from all sources, whether it be from licenses, sales, maintenance, etc.

**SECTION FIVE**
ASC and PARAGON agree that upon the completion of the ASC-PARAGON SOFTWARE, that they shall jointly take all steps necessary to have the software copyrighted and that they shall jointly own said copyright.

**SECTION SIX**

ASC and PARAGON agree that should ASC not complete the development of said software with in [sic] 180 business days from the date of this contract in order; or to satisfy the terms and conditions of contract with The Chicago Tribune, Inc., based upon the timelines agreed upon by The Chicago Tribune and  ASC-PARAGON exclusive of documented delays resulting from the actions of third parties outside of ASC control then the following events shall occur:

1. PARAGON shall become the sole and exclusive owner of the ASC-PARAGON SOFTWARE, the source codes and all rights to said software and all revenues from all sources generated by said software shall become the sole and exclusive property of PARAGON should ASC or its principals not complete the terms of this contract;

2. ASC shall take all steps necessary to transfer ownership of the ASC -PARAGON SOFTWARE and the copyright to PARAGON; and

3. The principals of ASC, Richard Petcher and Edward Eaglehouse, shall perform independent consulting services for Paragon at the hourly rate of $85.00 until the software is completed and operational in accordance with the terms and conditions of the contract with The Chicago Tribune, Inc.  Payment to Richard Petcher and Edward Eaglehouse for said services shall not exceed the balance of the $200,000 less payments already made;

**SECTION SEVEN**

It is agreed and understood that the partes may modify this contract at some point in the future, should it become necessary and that the parties shall negotiate in good faith a modification of this contract and each party will execute any modifications of this contract in order for said modification to become binding.

**SECTION EIGHT**

This instrument contains the entire agreement between the parties, and no statements, promises, or inducements made by either party or agent of either party that are not contained in this written contract shall be binding; this contract may not be enlarged, modified, or altered except in writing signed by the parties and endorsed on this agreement.

**SECTION NINE**

This agreement shall inure to the benefit of and be binding on the heirs, legal representatives, assignees, and successors of the respective parties.

4

**SECTION TEN**
ASC and PARAGON agree that nothing contained in this agreement is intended or shall be deemed to constitute a partnership or joint venture between ASC and PARAGON, or the right to incur credit, debt or other forms of obligation in the name of the other party.

**SECTION ELEVEN**
ASC and PARAGON agree that nothing contained in this agreement is intended or shall be deemed to give ASC or PARAGON the right to contract on the other parties' [sic] behalf.
*Id.* at 1-3.

### B.    The State Trial Court Proceedings

On 23 September 2003 Automated filed a complaint against Paragon in the Cuyahoga County Court of Common Pleas.[2]  The case was denominated Case No. CV-03-511012.  On 17 October 2003 Automated filed an Amended Complaint. In the Common Pleas Court Amended Complaint, Automated asserted claims for declaratory judgment (Count One), breach of contract (Count Two), conversion (Count Three), promissory estoppel (Count Four), unjust enrichment (Count Five), fraud (Count Six), negligent misrepresentation (Count Seven) and interference with business relationships (Count Eight). The Common Pleas Court Amended Complaint sought declaratory relief on Count One, compensatory damages on Counts Two and Five, and compensatory and punitive damages on the remaining counts.

On 30 December 2003 Paragon filed an amended answer and counterclaims against Automated, Richard Petcher and Edward Eaglehouse.  Automated made a motion to strike the pleading and on 2 March 2004 the state  trial court granted the

---

[2]    This Court will take judicial notice of the proceedings in The Court of Common Pleas, Cuyahoga County, Ohio Case No. CV-03-511012 and Ohio Court of Appeals for the Eighth Appellate District Case No. CA-05-086067. <u>Day v. Moscow,</u> 955 F.2d 807,811 (2nd Cir. 1992), Moore's Federal Practice § 12.34.

motion, allowing Paragon until 15 March 2004 to file a counterclaim against Automated only. Paragon missed the filing deadline and the state trial court denied Paragon's 27 April 2004 motion for leave to file the counterclaim instanter.

By Stipulated Partial Dismissal Without Prejudice and Tolling Agreement filed 17 December 2004, the parties agreed to proceed to trial on the declaratory judgment issues.   Automated sought a declaratory judgment regarding its rights under the SDO Agreement after Paragon's alleged termination and breach of the SDO Agreement.

The state trial court entered an opinion in the case on  4 February  2005. (Opinion & Order, attached to First Amended Complaint, ECF #5).  The state trial court, referring to Automated as Plaintiff and Paragon as Defendant, made the following relevant findings of fact and law:[3]

> 1.   The parties entered into a contract on June 21, 2001 that provided for the development of software (Exhibit 3). Pursuant to the contract, the parties jointly owned the software.
>
> 2.   Parties then contracted with The Tribune to provide the software to the Tribune. Plaintiff claims that the Defendant was not a party to the Plaintiff's contract with The Tribune (Exhibit 33, executed August 22, 2001). However, Defendant signed the agreement.  Moreover, The Tribune contract states that both the Plaintiff and the Defendant jointly owned the software.
>
> 3.   Plaintiff alleges that the Defendant failed to make payments required by the June 2001 contract. However, the parties signed a settlement of their monetary obligations on September 20, 2002 (Exhibit 34). Plaintiff cannot now claim that the Defendant failed to make payments under the June 2001 contract, when Plaintiff settled those claims.

---

[3]   This Court quotes from the state court opinions not to evaluate the truth or falsity of the state court's findings but to determine which issues were adjudicated in the state court action.

6

4.      Plaintiff also alleged that the Defendant breached the June 2001 contract
        by marketing the software to third parties without the Plaintiff's written
        consent.  Testimony at trial proves that the Defendant could market the
        software without the Plaintiff's consent, but had to obtain written
        authorization before executing a sale.  Plaintiff presented no evidence of a
        sale.

5.      Defendant asserts counterclaims alleging the Plaintiff failed to timely
        complete the project according to the deadlines outlined in the June 2001
        contract.  It is undisputed that The Tribune requested modifications to the
        software, which resulted in delays and continuances. Continuances due to
        modifications are allowed by the express terms of the June 2001 contract.

6.      Defendant clearly and unambiguously terminated its June 2001 contract
        by letter dated September 16, 2003 (Exhibit 20). At that time, Defendant
        had settled its monetary obligations to the Plaintiff and was awaiting
        Plaintiff's completion of the software. Defendant claims that the Plaintiff
        was in breach of the June 2001 contract, but instead of seeking legal
        remedies for the alleged breach, Defendant "terminated" the agreement.
        Defendant, at that time, had the option to seek a determination in court as
        to whether or not in fact the Plaintiff had breached its duties under the
        contract. At that juncture, the Defendant chose to terminate the contract
        prior to seeking any judicial ruling on the issues between the parties.

7.      In view of this Court's finding that the parties were in fact joint owners of
        the software/code, the Defendant's unilateral termination of the contract
        was a decision made at their own risk. Clearly, the Defendant could have
        sought legal remedies prior to termination of the contract, but it chose not
        to do so. By terminating the contract, Defendant lost any rights under the
        contract as of that date.

8.      The parties were joint owners of the software until September 16, 2003.
        Defendant, however, has no legal rights related to any modifications of the
        software made after the Defendant's unilateral termination of the contract
        on September 16, 2003. As of that date, all obligations between the
        parties were "terminated."

Order & Opinion at 1-2. (ECF #5)

        Twelve days later, upon a joint motion for clarification, Judge Coyne issued a

further Order, a copy of which is attached to the First Amended Complaint (ECF #5).

With respect to the ownership of the code the Order stated:

7

1.      The Court finding that there was a somewhat tumultuous relationship
between these two parties nevertheless found that they were joint owners
of the software/code as of September 16, 2003.

2.      Since the termination of the agreement by Paragon, the ownership of the
code and all modifications made since September 16, 2003 are rightfully
owned by Plaintiff Automated Solutions Corporation.  Defendant Paragon
had a one-half joint ownership over the code as it existed until Paragon
terminated the contract on September 16, 2003. At that time, Plaintiff
Automated Solutions gained exclusive and complete ownership over the
software/code and any modifications.

Order at 1. (ECF #5).

**C.      Subsequent Developments**

On 25 February 2005 Automated obtained a federal registration of its copyright to

the SCDS software. On 4 March 2005 Paragon filed a notice of appeal of the state trial

court's decision finding the SDO Agreement terminated on 16 September 2003, and

ending Paragon's rights to the SCDS software on that date.

**D.      The Federal Court Proceedings, State Appellate Decision and Instant
Motion**

On 26 April 2005 Automated filed the instant action in Cuyahoga County Court of

Common Pleas; the case was denominated  CV-05-561380.  Paragon removed the

case to U.S. District Court on 31 May 2005.  In its First Amended Complaint, Automated

alleges that Paragon has been selling and licensing "Delivery, Return, and Collection

Information" ("DRACI") software and that this software infringes on Automated's

copyright to the SCDS software.  Automated also alleges that Paragon has wrongfully

retained copies of the SCDS software, continues to represent itself as the owner of that

software, has marketed its DRACI software as SCDS software, and has improperly sold

or licensed SCDS software to third parties without Automated's consent.  Automated

8

contends that these alleged wrongful acts have interfered with Automated's relations with present and prospective customers.  Automated asserts federal causes of action for copyright infringement pursuant to 17 U.S.C. §502 and for a violation of the Lanham Act pursuant to 15 U.S.C. § 1125(a).  Automated also asserts state law causes of action for conversion, tortious interference with business relationships, unjust enrichment, and unfair competition.  Automated seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs.

Paragon filed an Answer and Counterclaims on 14 July 2005, and on 6 October 2005 Paragon filed an Amended Counterclaim. Paragon alleges that Automated breached the SDO Agreement by failing to complete the SCDS software by specified deadlines, failing to create marketable software, attempting to transfer rights not exclusive to it, failing to provide consulting services to Paragon, failing to provide hardware to The Tribune, and failing to include reference to Paragon on its registration of the SCDS software with the Copyright Office. Paragon also alleges that Automated and Paragon entered into a Letter Agreement on 20 September  2002 ("the Letter Agreement") regarding  payments made to Automated by Paragon,  a revised time schedule for code delivery, and the handling of future invoicing to and payments by The Tribune. Paragon then alleges that Automated breached the Letter Agreement and that one consequence of this breach is that Paragon is the sole owner of the SCDS software and of profits derived from its sale. Paragon avers that Automated's copyright registration of the SCDS software should be declared invalid because Automated committed fraud on the Copyright Office by failing to list other authors of the SCDS code on the copyright registration. Paragon further alleges that Automated's service of a

subpoena duces tecum to the Cleveland Plain Dealer to produce copies of Paragon's DRACI code without properly serving Paragon with a copy of the subpoena infringed on Paragon's copyright to the DRACI software and constituted an abuse of process. Paragon asserts federal causes of action for declaratory judgment, copyright infringement, violations of the Lanham Act, and abuse of process. Paragon also asserts state causes of action for breach of contract, deceptive trade practices, and unjust enrichment.  Paragon seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs.

On 19 December 2005 Automated moved pursuant to Fed. R. Civ. P. 12 (B)(6) for dismissal of Paragon's Amended Counterclaims ("Motion to Dismiss") (ECF #80). Paragon opposed Automated's motion ("Opposition to Dismissal") (ECF #95). On 30 June  2006 Magistrate Judge Hemann issued her Report and Recommendation recommending that the Court grant in part and deny in part Automated's motion (ECF #126).

Less than a week later, on 6 July 2006, the Ohio Court of Appeals for the Eighth District affirmed the state trial court's decision in case number CV-03-511012, in which Judge Coyne issued his decision regarding the parties' respective rights as owners of the SCDS code.  Appellate Judge Diane Karpinsky authored an opinion; Presiding Judge Colleen Cooley and Judge Sean Gallagher concurred in the judgment only. Presiding Judge Cooley issued a separate concurrence. (On appeal  before the Ohio Court of Appeals the case was denominated  CA-05-086067.)

Automated filed Objections to Magistrate Judge Hemann's Report and Recommendation ("Objections") (ECF #141); Paragon, while not filing separate

10

objections, filed a response to Automated's Objections ("Response to Objections") (ECF #140).

## II. APPLICABLE STANDARDS

Two standards are implicated in this Court's review of a magistrate  judge's report and recommendation on a motion to dismiss: the standard for determination for a motion to dismiss and the standard of review for a report and recommendation.[4]

In deciding a motion to dismiss under Rule 12(b)(6), the court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.  Gausmann v. City of Ashland, 926 F. Supp. 635, 638 (N.D. Ohio 1996)(citations omitted). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements.  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) ("more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements"), citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE §1357 at 596 (1969). The court may also consider documents attached to or incorporated in the pleadings and matters of which the court may take judicial notice. Fed. R. Civ. P. 10 (c) (documents attached to pleadings are part of pleadings). On a motion to dismiss, a court considering an affirmative defense of res judicata, as here, may take judicial notice of public records including judicial proceedings.  Day v. Moscow, 955 F.2d 807, 811 (2nd Cir. 1992), Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping

---

[4]     Magistrate Judge Hemann's Report and Recommendation ably states the standard for a Motion to Dismiss and this Court will integrate portions of that opinion in setting forth the standard here.

11

Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999), 2 Moore's Federal Practice §12.34.

See Rushford v. Firstar Bank, N.A., 50 Fed. Appx. 202, 205 (6th Cir. 2002).

The court is to dismiss a claim "only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." Gausmann,

926 F. Supp. at 638, citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). While

the complaint must give the defendant fair notice of the plaintiff's claim and the grounds

upon which it rests, it need not set down in detail all the particularities of the claim.

Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994); Allard v. Weitzman (In re

DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993).

Under this standard, "[a] plaintiff will not be thrown out of court for failing to plead

facts in support of every arcane element of his claim. But when a complaint omits facts

that, if they existed, would clearly dominate the case, it seems fair to assume that those

facts do not exist." Scheid, 859 F.2d at 436 (quoting O'Brien v. DiGrazia, 544 F.2d 543,

546 n.3 (1st Cir. 1976) cert. denied, 431 U.S. 914 (1977)).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de

novo those portions of the magistrate judge's report and recommendation to which

specific objections are made.

> The district judge to whom the case is assigned shall make a de novo
> determination upon the record, or after additional evidence, of any portion
> of the magistrate's disposition to which specific written objection has been
> made in accordance with this rule.  The district judge may accept, reject or
> modify the recommended decision, receive further evidence or recommit
> the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72 (b)

## III. LEGAL ANALYSIS

In her Report and Recommendation, Magistrate Judge Hemann recommended that this Court:

1.  GRANT Automated's motion to dismiss Paragon's claim for breach of contract as regards (a) any counterclaim alleging a breach of the Agreement except a claim stating a breach due to the alleged wrongful omission of Paragon as an author of the SCDS software on the Certificate of Registration issued by the United States Copyright Office and except any claim based on rights acquired and vested in Paragon on or before September 16, 2003 and (b) any counterclaim alleging a breach of the Letter Agreement that could not have been asserted prior to March 15, 2004;

2.  DENY Automated's motion to dismiss Paragon's second cause of action for a declaratory judgment;

3.  GRANT Automated's motion to dismiss Paragon's third claim for relief, of copyright infringement for allowing others to copy the SDCS software.

4.  DENY Automated's motion to dismiss Paragon's fourth claim for relief, of copyright infringement for copying Paragon's DRACI software;

5.  DENY Automated's motion to dismiss Paragon's fifth claim for relief, abuse of process.

6 .  DENY Automated's motion to dismiss Paragon's sixth, seventh, and eighth claims for relief, deceptive trade practices and unjust enrichment; and

7.  DENY Paragon's motion to bifurcate the proceedings and stay discovery.

ECF #126, p.33

Automated filed objections to Items #1, 2, 4, 5 and 6, which will be considered in turn.[5]

1.  Paragon's First Claim for Relief: Breach of Contract.

_____

[5]  The Motion to Bifurcate has already been ruled on by this Court. (ECF #166).

Paragon's first claim for breach of contract alleges Automated's breach of the

SDO Agreement and Letter Agreement.  In the Amended Counterclaim (ECF # 56)

Paragon claims that Automated, in breach of contract:

- failed to complete the SCDS software within contractually established deadlines (¶ 6);

- failed to create marketable software (¶ 7);

- attempted to transfer rights not owned by it to a third party (¶ 8);

- failed to perform consulting services (¶ 9);

- failed to provide sufficient hardware to the Tribune (¶ 10);

- wrongfully omitted any reference to Paragon in the Certificate of Registration issued for SCDS software (¶ 11);

- failed to provide encrypted source code updates (¶ 14);

- failed to properly invoice the Tribune (¶ 16);

- attempted to negotiate alternative payment arrangements with the Tribune (¶ 17); and

- failed to explain excess hours billed to Paragon (¶ 18).

Paragon requests a declaration that it is the sole owner of the SCDS software.

The legal principle of claim preclusion, also known as res judicata, was set forth

by the United States Supreme Court more than a hundred years ago in Cromwell v.

County of Sac:

> [T]he judgment, if rendered on the merits, constitutes an absolute bar to subsequent action.  It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

14

Cromwell v. Sac County, 94 U.S. 351, 352 (1876); see also 18 Moore's Federal Practice-Civil §13.01.

Under full faith and credit, federal courts must give the same preclusive effect to a state's judicial proceedings as would the court of the state rendering the judgment. Thomas v. Washington Gas Light Co., 448 U.S. 261, 270 (1980).

As  Magistrate Judge Hemann fully explained, under Ohio law, a final judgment on the merits by a court of competent jurisdiction bars any subsequent actions on a claim between the parties, or their privies, arising out of the transaction or occurrence which was the subject of the action.  Hapgood v. City of Warren, 127 F.3d 490,493 (6th Cir. 1997).  An existing final judgment is conclusive as to all claims which were or might have been litigated in the first lawsuit.  Grava v. Parkman Twp., 73 Ohio 3d 379, 381, 381 (1995).

Giving effect to the doctrine of claim preclusion, the magistrate judge barred all of Paragon's First Count except : (1) a breach due to the omission of Paragon as an author of the SCDS software on the copyright registration, (2) claims based on rights acquired and vested in Paragon on or before 16 September 2003, and (3) any counterclaim alleging a breach of the Letter Agreement that could not have been asserted prior to 15 March 2004.

Under the state trial court decision, Paragon remained a contracting party and joint owner of the SCDS code until its termination of the SDO Agreement and Letter Agreement on 15 September 2003.  It is correct that, under that ruling, Paragon has such rights as accrued from its contract rights up to 16 September 2003.  However, Paragon can only now assert claims based on those contract rights for breaches which

15

could not have been litigated in the state court action, that is, for breaches which post-date the state trial court proceedings.[6]

That Paragon was denied leave to file a counterclaim in the state court case has no effect on whether this Court should apply res judicata to those claims that Paragon *could* have brought as counterclaims. Paragon had an opportunity in the state court action to raise counterclaims related to its rights under the Agreement and failed timely to avail itself of its opportunity. Any claim that Paragon could have raised will be barred by res judicata if the claim would have been barred had Paragon actually raised it in the state court.

As  Magistrate Judge Hemann noted, this leaves only Paragon's allegation in paragraph 11 of an breach of the SDO Agreement by Automated's omission of Paragon from the federal copyright registration for the SCDS code filed 25 February 2005. The magistrate judge's R & R allows this averment to stand and on this basis overrules the motion to dismiss on the First Claim for Relief.

There are two manners in which Paragon could have been listed on the federal copyright registration, either as an author or as a claimant. Paragon's right to be listed as an author or co-author is determined by the creative contribution toward the copyrighted material made by Paragon, or those who performed "work for hire" for Paragon. 17 U.S. C. § 201 (a).  As the United States Supreme Court stated, "the author is the party who actually creates the work, that is, the person who translates an idea into

---

[6]     As a matter which has no significant consequences to the present ruling, the appropriate cut-off is not 15 March 2004, the deadline for Paragon to file an amended counterclaim, but 22 December 2004, when the state court trial case closed. See Kane v. Magna Mixer Co. 71 F. 3d 555, 560 (6th Cir. 1995).

a fixed, tangible expression entitled to copyright protection." <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 737 (1989). See also: <u>Lakedreams v. Taylor</u>, 932 F.2d 1103 (5th Cir. 1991); <u>S.O.S. Inc. v.</u> <u>Payday Inc.</u>, 886 F.2d 1081, 1086-87 (9th Cir. 1989); <u>Kyjen Co., Inc. v. Vo-Toys, Inc</u>., 223 F. Supp 2d 1065, 1068 (C.D. Cal. 2002). While there is ongoing debate as to whether each contribution must be separately copyrightable, it is certainly settled that, "[t]he contribution must be one of authorship in order to constitute the contributor a joint author." 1 <u>Nimmer on Copyright</u> § 6.07. (For discussion regarding the contribution variations <u>see Childress v. Taylor</u> 945 F.2d 500,506 (2nd Cir. 1991)).  Paragon makes no allegation in the First Claim for Relief, or anywhere in the Counterclaim, that it has either authored the SCDS code, or that it is entitled to attribution by "work for hire" for the contribution made by another.  If Paragon has any rights as an author of the SCDS code such rights are not alleged in the Counterclaim and they do not arise from the SDO Agreement.

However, under 37 C.F.R. § 202.3, which prescribes the conditions for registration under 17 U.S.C. § 409, a copyright claimant may be either the author of a work or "a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author." § 202.3 (a) (3) (I) (ii).  Construing Paragon's allegations in the manner most favorable to Paragon, the Court will treat the allegation of a right to listing on the federal copyright registration as an allegation of a right to be listed as a claimant.  As so construed, by claiming breach of contract for failure to list Paragon on the registration, Paragon is asserting it obtained, by the SDO Agreement, the right to be a co-claimant on the registration and that Automated breached the SDO Agreement by failing to list Paragon.

17

Section Five of the SDO Agreement states:

> Automated and Paragon agree that upon the completion of the ASC-PARAGON SOFTWARE, that they shall jointly take all steps necessary to have the software  copyrighted and that they shall jointly own said copyright.

Under Judge Coyne's Order & Opinion and Order, Paragon's right to enforce this contractual obligation ended 16 September 2003 with its termination of the SDO Agreement and Letter Agreement.  ("As of that date, all obligations between the parties were 'terminated.'" Order & Opinion, ¶ 8, ECF #5.) Therefore, to the extent that Paragon's right to be named as an claimant is predicated upon the rights created in the SDO Agreement and Letter Agreement, that right was extinguished <u>before</u> the application for copyright registration.

The issue of the parties' rights under the SDO Agreement was actually litigated between the parties to this action in a prior action.  <u>Res</u> <u>judicata</u> operates in such an instance as issue preclusion.  The Ohio Supreme Court recently re-affirmed that, "Issue preclusion..serves to prevent re-litigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. [citation omitted]." <u>O'Nesti v. DeBartolo Realty Corporation</u>, 113 Ohio St. 3d 59 (2007). Under the issue preclusion aspect of <u>res</u> <u>judicata</u> Paragon is now collaterally estopped from arguing in this action that it had the right to enforce the terms of the SDO Agreement after 16 September 2003.

Because by the ruling of the state trial court that all of Paragon's rights under the SDO Agreement and Letter Agreement terminated 16 September 2003, including the right to require joint steps to acquire a copyright or joint ownership of the copyright, the

18

allegations of ¶ 11 of the First Amended Counterclaim are also barred by <u>res judicata</u>

and this Court will grant Automated's motion to dismiss the First Claim for Relief.

      2.    <u>Paragon's Second Claim for Relief: Declaratory Judgment of Invalid Copyright</u>.

      In the Second Claim for Relief Paragon asserts that Automated's copyright of the

SCDS code is invalid because  Automated engaged in a fraud upon the Copyright

Office. Specifically, Paragon alleges that Automated intentionally omitted Charlotte

Carino as an author of the SCDS code and that this omission "might have caused the

Copyright Office to reject" Automated's application. 2 <u>Nimmer on Copyright</u> § 7.20

      Many courts have opined that inadvertent and immaterial mistakes on a federal

copyright registration do not invalidate the copyright.  See, e.g. <u>Adviser, Inc. v. Wiesen-

Hart, Inc.</u>, 238 F.2d 706, 708 (6th Cir, 1956); <u>Masquerade Novelty, Inc. v. Unique Indus.,

Inc.</u>, 912 F.2d 663, 667 93D Cir. 1990); <u>Data General Corporation v. Grumman Systems

Support Corporation</u>, 36 F.3d. 1147 (1st Cir. 1994); <u>One Treasure Ltd., v. Richardson</u>,

202 Fed. Appx. 658 (5th Cir. 2006).  From this, some courts and commentators have

concluded that deliberate, material mistakes on a registration may invalidate the

copyright.  See <u>Russ Berrie & Co. v. Jerry Elsner Co.</u>, 482 F. Supp 980 (S.D. N. Y

1980); <u>2 Nimmer on Copyright</u> §7.20 ("If the claimant wilfully misstates or fails to state a

fact that, if known, might have caused the Copyright Office to reject the application, then

the registration may be ruled invalid.") The contours of the required showing are not set.

As the First Circuit explained:

                Some courts have suggested that a defendant must show that it was
                <u>prejudiced</u> by a fraudulent misstatement or omission in a registration
                application, <u>see, e.g. Harris v. Emus Records Corp.</u>, 734 F.2d 1329 at
                1335(9th Cir. 1984)("Absent intent to defraud and prejudice, inaccuracies

in copyright registrations do not bar actions for infringement."), whereas others merely require proof that an intentional error, if discovered by the Copyright Office, would have been <u>material</u> to the registration decision, <u>see, e.g. Eckes</u> <u>v. Card Prices Update</u>, 736 F.2d 859 at 861-862 (2d Cir. 1084).

<u>Data General Corporation v. Grumman Systems Support Corporation</u>, 36 F.3d at 1161, n.24 (1st Cir. 1994). (partial citations completed)

The Sixth Circuit has not ruled upon the availability of this affirmative defense to a copyright violation.  As Paragon has adequately pleaded the required elements of a version of this affirmative defense, and there is support for the defense in other circuits and commentary, this Court will accept the magistrate judge's recommendation and deny Automated's motion for judgment on the pleadings with respect to the Second Claim for Relief.

      3.    <u>Third Claim for Relief: Copyright Infringement -SCDS.</u>

The magistrate judge's recommendation on the Third Claim for Relief, to which no objection was made, will be accepted. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of Health and Human Services</u>, 932 F.2d 505 (6th Cir. 1991). This Court will grant Automated's motion for judgment on the pleadings with respect to the claims asserted by Paragon under the SCDS copyright.

      4.    <u>Paragon's Fourth Claim for Relief: Copyright Infringement By Automated for Copying DRACI</u>.

The allegations required to state a claim of copyright infringement are plaintiff's ownership of a valid copyright and the defendant's unauthorized copying of original elements of the work. <u>Ellis v. Diffie</u>, 177 F.3d 503, 506 (6th Cir. 1999). In objecting to Magistrate Judge Hemann's recommendation regarding the Fourth Claim, Automated relies upon material outside the scope of the pleadings, including references to an e-

mail exchange.  The standard on a motion to dismiss does not allow consideration of

such materials. Since Paragon has adequately pleaded the cause of action, the Court

will accept the magistrate's recommendation and deny Automated's motion to dismiss

the Fourth Claim for Copyright Infringement.

     5.     <u>Paragon's Fifth Claim for Relief: Abuse of Process</u>.

     The federal tort of abuse of process consists of a "perversion of lawfully initiated

process to illegitimate ends."  <u>Heck v. Humphrey</u>, 512 U.S. 477, 486, n.5

(1994)(citations omitted). In the Amended Counterclaim, Paragon alleges that

Automated has misused the legal process to obtain access to confidential documents

and materials and "converted the same for its own unlawful gain and financial

advantage."  (Amended Counterclaims, ECF #56,  ¶ 52,53).  These allegations are

sufficient to state the elements of the claim.  The Court will accept the recommendation

of Magistrate Judge Hemann with respect to Paragon's Fifth Claim for Relief and deny

Automated's motion to dismiss.

     6.     <u>Paragon's Sixth, Seventh and Eighth Claims for Relief: Deceptive Trade
Practices (Lanham Act 15 U.S.C. § 1125), Deceptive Trade Practices
(Ohio Rev. Code §4165.02 et seq.) and Unjust Enrichment</u>

    Magistrate Judge Hemann recommended that Automated's motion to dismiss

these causes of action be denied on the theory that <u>if</u> a fraud on the Copyright Office

were established, this fraud could provide a basis for relief under the various deceptive

trade and interference theories. Having allowed the Second Claim for Relief alleging the

fraud to survive, this Court will accept the recommendation of the magistrate judge, with

the caveat  to Paragon that the Court will not re-litigate the entitlement to the SCDS

code as declared by the Ohio state courts or established by claim or issue preclusion based on the state court proceedings.

## IV. CONCLUSION

Based on the foregoing analysis, this Court will grant Automated's motion to dismiss Paragon's First Claim for Relief; accept Magistrate Judge Hemann's recommendation and deny Automated's motion to dismiss Paragon's Second Claim for Relief; accept Magistrate Judge Hemann's recommendation and grant Automated's motion to dismiss on Paragon's Third Claim for Relief; accept  Magistrate Judge Hemann's recommendation and deny Automated's motion to dismiss the Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief.

IT IS SO ORDERED.


Date: <u>11 June 2008</u>                      <u>   /s/Lesley Wells              </u>
                                               UNITED STATES DISTRICT JUDGE