IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

----------------------------------------------------

AUTOMATED SOLUTIONS
CORPORATION

                          Plaintiff

            -vs-

PARAGON DATA SYSTEMS, INC.,

                          Defendant

----------------------------------------------------

: CASE NO. 1:05 CV 1519
:
: MEMORANDUM OF OPINION AND
: ORDERS ON AUTOMATED SOLUTIONS
: CORPORATION'S AND PARAGON
: DATA SYSTEMS, INC.'S MOTIONS FOR
: PARTIAL SUMMARY JUDGMENT AND
: AUTOMATED'S MOTION FOR
: SUMMARY JUDGMENT ON
: PARAGON'S COUNTERCLAIM
:
: (ECF #137,145,149,156,160,189,
: 198, 203, 204, 205, 206)

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        This Memorandum of Opinion and Orders will rule upon Automated Solutions

Corporation's ("Automated") motion for summary judgment on Paragon Data Systems,

Inc.'s ("Paragon") Counterclaim (ECF # 189) and the parties' cross motions for partial

summary judgment (ECF #137, 145, 149).

        After stating the general law applicable to summary judgment (Section I), and the

background facts of this lawsuit (Section II), the Court will address the Motion for Partial

Summary Judgment filed by defendant Paragon (ECF #137), and the related

subsequent filings, plaintiff Automated's Opposition and Cross-Motion for Summary

Judgment (ECF # 145, 148, 149),  Paragon's Opposition and Reply (ECF #156),

Automated's Reply (ECF # 160), Automated's Supplemental Filing (ECF #198),

Paragon's Motion to Strike (ECF #204) and Paragon's Response(ECF #205) (Section

III). This set of motions will be referred to as "The Cross-Motions for Partial Summary

Judgment on the Complaint."

Section IV will consider Automated's Motion for Summary Judgment on

Paragon's Amended Counterclaim (ECF #189), Paragon's Opposition to Automated's

Motion for Summary Judgment (ECF #203), and Automated's Reply (ECF # 206). This

set of motions will be referred to as "Automated's Motion for Summary Judgment on the

Counterclaim." All of the Court's rulings in this Memorandum of Opinion and Orders are

set forth in Section V.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the
> basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving

party has the "burden of showing that the pleadings, depositions, answers to

interrogatories, admissions and affidavits in the record, construed favorably to the

nonmoving party, do not raise a genuine issue of material fact for trial") (quoting

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting

2

Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 56.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  The opposing party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id. (quoting in part Anderson, 477 U.S. at 257); see Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).  The nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment."   Moore v. Philip Morris Co., 8 F.3d 335, 339-40 (6th Cir. 1993).

Consequently, a party opposing summary judgment must do more than raise some doubt as to the existence of a fact; the opponent must produce evidence that

would be sufficient to require submission to the jury of the dispute over the fact.  See Anderson 477 U.S. at 248.  If the party opposing fails to present such affirmative evidence, then there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact."  Anderson, 477 U.S. at 247-48; see Celotex, 477 U.S. at 322-23.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). A court may grant judgment in favor of a non-moving party where that party is entitled to judgment under Rule 56 and the parties were on notice to present evidence on the matter at issue.  QSI Holdings, Inc. v. Alford, 382 B.R. 731, 737 (W.D. Mich. 2007), Moore v. United States of America, 1970 WL 398 *8 (N.D. Ohio 1970), Farmers Insurance Exch. v. Allstate Insurance Co., 143 F. Supp 213 ( E.D. Mich 1956); Salehpour v. University of Tennessee, 159 F.3d 199 (6th Cir. 1998)

Under Rule 56 (d), if summary judgment is not rendered on the whole action, a court is empowered to determine what material facts are not genuinely at issue and enter an order specifying such facts. At trial on the remaining issues, facts determined under Rule 56 (d) are deemed established in the action.  Fed. R. Civ. P. 56 (d); Lytle v.

4

Freedom International Carrier, 519 F.3d 129, 133 (6th Cir. 1975),8  Wright & Miller,

Federal Practice and Procedure,  §2737.

    In ruling upon a summary judgment motion a federal court  "may take judicial

notice of proceedings both within and without the federal judicial system, if the

proceedings have a direct relation to the matters at issue. [citations omitted]."  St. Louis

Baptist Temple, Inc. v. Federal Deposit Insurance Corp., 605 F.2d 1169 (10th Cir. 1979);

11 Moore's Federal Practice § 56.14.  Pursuant to this authority, this Court has taken

judicial notice of the proceedings in this action and, in particular, has reviewed ECF # 5,

7, 9, 14, 16, 21, 22,32, 56, 65, 80, 95, 100, 126, 137, 140, 141 ,145, 148, 149,

156,160,189, 198, 203, 204, 205 , 206 and the transcripts of the discovery hearings

held before Magistrate Judge Hemann on 8 December 2005 (ECF #96) and

19 September 2007 (ECF #181). The Court has also taken judicial notice of the record

in prior proceedings involving the same parties in the Court of Common Pleas,

Cuyahoga County, Ohio Case Nos. CV 03-511012 , CV 05-561380 and in the Court of

Appeals, Eighth Appellate District, Cuyahoga County, Ohio Case No. CA-05-086067.

## II. BACKGROUND FACTS OF THE LAWSUIT

### A.  The Parties' Pre-Litigation History

    Automated and Paragon are both Ohio corporations.  Automated is primarily

engaged in the business of developing custom software; Paragon is primarily engaged

in providing hardware, equipment and maintenance support services for the automatic

data collection industry.  In 1999 Paragon became aware of a business opportunity with

the Chicago Tribune ("the Tribune").  (ECF #5, p. 4).  Paragon approached Automated

with a proposal to work together to bid for the custom software and hardware system for the Tribune.  (Id. at ¶2).

On  21 June 2001 Automated and Paragon entered into a Software Development and Ownership Agreement ("SDO Agreement") by which Automated and Paragon agreed to jointly own and license software for use by the Tribune and by similar companies (the "SCDS software" or "SCDS code").

The SDO Agreement, which refers to Automated as "ASC, " included the following relevant preliminary clauses:

> **WHEREAS,** ASC and Paragon agree that the ASC-PARAGON SOFTWARE will be jointly owned by the two companies, including, but not limited to all copyrights to said software and all rights to license and/or sell and/or modify said software;
>
> **WHEREAS,** ASC and Paragon acknowledge that Paragon has paid in excess of $150,000.00 as of this date to develop the ASC-PARAGON SOFTWARE;
>
> **WHEREAS,** ASC and Paragon agree that the two companies will jointly market the software and will equally divide all revenues received as a result of the software;

ECF #56, Ex. A., SDO Agreement, Amended Counterclaim.

The SDO Agreement included the following relevant substantive clauses:

### SECTION ONE

> ASC will devote the time required to complete the development of the ASC-PARAGON SOFTWARE which is required to satisfy each and every term of the Software License Agreement which has been proposed by The Chicago Tribune, Inc.

## SECTION TWO

PARAGON will continue to pay to ASC the costs directly associated with the development and modification of the ASC-PARAGON SOFTWARE. The additional costs of ASC shall not exceed $200,000.

## SECTION THREE

ASC and PARAGON will devote the time and resources necessary in order to successfully market and modify the ASC-PARAGON SOFTWARE to The Chicago Tribune, Inc. and other potential customers. No contract for sale, licensure, modifications, etc. of said software will be valid unless signed by both ASC and PARAGON.

## SECTION FOUR

ASC and PARAGON shall equally divide all revenues received from the ASC-PARAGON SOFTWARE. This shall include all revenues received from the original version of said software and/or any modification of said software less the actual cost of said modifications. This shall further include all revenues from all sources, whether it be from licenses, sales, maintenance, etc.

## SECTION FIVE

ASC and PARAGON agree that upon the completion of the ASC-PARAGON SOFTWARE, that they shall jointly take all steps necessary to have the software copyrighted and that they shall jointly own said copyright.

## SECTION SEVEN

It is agreed and understood that the parties may modify this contract at some point in the future, should it become necessary and that the parties shall negotiate in good faith a modification of this contract and each party will execute any modifications of this contract in order for said modification to become binding.

ECF #56, Ex. A.

7

The SDO Agreement contained only one section dealing with the ownership of the SCDS code upon the event of a breach of the SDO Agreement, and that section only discussed the possibility of breach by Automated:

**SECTION SIX**

ASC and PARAGON agree that should ASC not complete the development of said software with in [sic] 180 business days from the date of this contract in order; or to satisfy the terms and conditions of contract with The Chicago Tribune Inc., based upon the timelines agreed upon by The Chicago Tribune and ASC-PARAGON exclusive of documented delays resulting from the actions of third parties outside of ASC control then the following events shall occur:

1.  PARAGON shall become the sole and exclusive owner of the ASC-PARAGON SOFTWARE, the source codes and all rights to said software and all revenues from all sources generated by said software shall become the sole and exclusive property of PARAGON should ASC or its principals not complete the terms of this contract;

2.  ASC shall take all steps necessary to transfer ownership of the ASC-PARAGON SOFTWARE and the copyright to PARAGON; and

3.  The principals of ASC, Richard Petcher and Edward Eaglehouse, shall perform independent consulting services for Paragon at the hourly rate of $85.00 until the software is completed and operational in accordance with the terms and conditions of the contract with The Chicago Tribune, Inc. Payment to Richard Petcher and Edward Eaglehouse for said services shall not exceed the balance of the $200,000 less payments already made.

Id.

On 21 August 2001 Automated  and the Tribune entered into a Software License Agreement; Paragon also signed the document. (ECF #145, Ex. A Part I, p. 16.)  The

8

Software License Agreement, in which the Tribune is referred to as "Licensee" and

Automated as "ASC," stated in relevant part:

**BACKGROUND**

A.   Licensee desires that ASC develop custom software (as
     more fully defined herein, the "Software") based upon the
     attached Handheld Functional Requirements document (See
     Exhibit D) and the SCDS to DISCUS Interface Agreement
     (Exhibit E) which has been agreed upon and signed by the
     parties (the "Specifications").

B.   ASC desires to develop such Software, which will reside on
     equipment defined by the attached server configuration.
     (See Exhibit F).

**ARTICLE 3:  RESTRICTIONS ON USE OF
SOFTWARE AND DOCUMENTATION**

The rights granted to Licensee hereunder are only the rights
of a licensee.  Licensee acknowledges that the Software, the
Documentation, and the Specifications are not works for hire
and that title to the Copyrights, the Software, the
Documentation and the Specifications are the JOINT
property of ASC, Paragon Data Systems and the TRIBUNE.
Except as expressly permitted in this Agreement, Licensee
shall not use, sublicense, sell, assign, convey, transfer,
disclose, publish, display, copy, duplicate, examine, adapt,
merge, embed, decompile, disassemble, reverse engineer,
"un-lock" or otherwise deal with any of the Software, the
Documentation or the Specifications, as may be applicable.
Licensee acknowledges that ASC possesses the right to re-
use, re-sell and otherwise use or deal in any of the Software,
the Documentation, the Specifications, and the source code
routines for the Software or any portion of the foregoing in
any manner it determines.

(ECF #145, Ex. A, Part I, p. 18).

As initially designed, the relationship between Automated, Paragon and the

Tribune called for all billing to be prepared by, and payments to be made to, Paragon.

9

Paragon had responsibility to bill the Tribune for Automated's work and remit payment

to Automated from the Tribune.  Disputes arose regarding Paragon's billing of

Automated's invoices and remittance of payment to Automated.  (Amended Complaint

in Cuyahoga County Court of Common Pleas Case CV-03-511012, ¶¶ 11-14;

hereinafter "Common Pleas Amended Complaint.") (ECF #189, Att. 4).  Amidst a

deteriorating relationship between Automated and Paragon, the parties executed a

letter agreement dated 20 September 2002, formalizing verbal commitments reached in

conjunction with the Tribune. ("Letter Agreement") (ECF #145, Ex. A, Part I, p. 11).

        The Letter Agreement set forth agreements with regard to payments,

reimbursements and credits and established a revised payment schedule which

directed the Tribune to make payment directly to both Automated and Paragon. The

Letter Agreement also set new dates for delivery of the unencrypted source code and

code updates. Under the Letter Agreement, Automated committed to provide

unencrypted source code to Paragon no later than 120 days after 20 September 2002

(18 January 2003) "or once the 'go-live-milestone' has been reached, whichever occurs

first." Id.  Automated was also to provide code updates twice per month, starting in

November of 2002.  Id.

        On 9 September 2003, Paragon wrote Automated complaining of Automated's

failure to provide either encrypted or unencrypted code according to the schedule

established in the Letter Agreement.  Paragon gave Automated until 15 September

2003 to respond. On 16 September 2003, after the deadline went unmet, counsel for

Paragon terminated the contractual relationships between the parties by

correspondence stating, "This letter is to formally notify you that, effective immediately

[the SDO Agreement] modified by letter agreement dated September 20, 2002 is hereby

10

terminated." (The 9 September 2003 and 16 September 2003 letters are attached to this Memorandum of Opinion and Orders as Attachment 1 and Attachment 2).

**B.**     **The Initial State Action: Cuyahoga County Court of Common Pleas Case No.  CV-03-511012.**

On 23 September 2003 Automated filed suit in Cuyahoga County Court of Common Pleas. This case was denominated CV-03-511012.  On 17 October 2003 Automated filed an Amended Complaint.  In the Common Pleas Amended Complaint, Automated asserted claims for declaratory judgment (Count One), breach of contract (Count Two), conversion (Count Three), promissory estoppel (Count Four), unjust enrichment (Count Five), fraud (Count Six), negligent misrepresentation (Count Seven) and interference with business relationships (Count Eight).  The Common Pleas Amended Complaint sought declaratory relief on Count One, compensatory damages on Counts Two and Five, and compensatory and punitive damages on the remaining counts.  (ECF #189, Ex. A).

On 30 December 2003 Paragon filed an amended answer and counterclaims against Automated, Richard Petcher and Edward Eaglehouse. Automated made a motion to strike the pleading and on 2 March 2004 the state  trial court granted the motion, allowing Paragon until 15 March 2004 to file a counterclaim against Automated only. (Paragon's State Appellate Brief, p. 24, 25, a copy of which is attached to this Memorandum of Opinion and Orders as Attachment 3). Paragon missed the filing deadline and the state trial court denied Paragon's 27 April 2004 motion for leave to file the counterclaim instanter. (Id.)

The parties agreed to proceed to trial on Count One of Automated's Common Pleas Complaint, which prayed:

> ...for an order declaring (1) ASC no longer has any obligations to Paragon under the agreements between the parties; (2) that ASC is the sole owner of the SCDC System software; and (3) for an order enjoining Paragon from claiming an ownership interest in the SCDS System software, enjoining Paragon from interfering with ASC's ownership interest in the SCDS System software and enjoining Paragon from interfering with ASC's prospective and actual business relationships.

(ECF #189, Att. 4).

Documenting this agreement, Automated and Paragon entered into a Stipulated Partial Dismissal Without Prejudice and Tolling Agreement, filed in the state trial court on 17 December 2004, in which the parties stipulated that the matters submitted included, but were not limited to, Automated's claim that it was entitled to ownership of the software as a consequence of Paragon's contractual breach.  Automated dismissed the remaining counts in the Common Pleas Complaint, without prejudice, and Paragon agreed that, in future actions, it would not raise the defense of statute of limitation or repose, "or other time-based defenses," to the counts dismissed. (ECF #145, Ex. A, Part I, p. 31).

The parties entered into Joint Stipulations of Fact, waived a jury and, beginning 22 December 2004, tried the case to Judge William J. Coyne, Jr.   Judge Coyne entered his Opinion & Order on 2 February 2005.   (ECF #145, Ex. A, Part II)  "According to the applicable law and findings of th[e] Court," Judge Coyne entered judgment as follows:[1]

---

[1]     For the purposes of consistency and clarity, the Court will indicate [SDO Agreement]  [Letter Agreement], and [Software License Agreement] throughout the opinion.

1.   The parties entered into a contract on June 21, 2001 [SDO Agreement] that provided for the development of software (Exhibit 3). Pursuant to the [SDO Agreement], the parties jointly owned the software.

2.   Parties then contracted with the Chicago Tribune to provide the software to the Tribune. Plaintiff claims that the Defendant was not a party to the Plaintiff's [Software License Agreement] with the Chicago Tribune (Exhibit 33, executed August 22, 2001).  However, Defendant signed the [Software License Agreement].  Moreover, the Chicago Tribune contract states that both the Plaintiff and the Defendant jointly owned the software.

3.   Plaintiff alleges that the Defendant failed to make payments required by the June 2001 [SDO Agreement].  However, the parties signed a settlement of their monetary obligations on September 20, 2002 [the Letter Agreement] (Exhibit 34). Plaintiff cannot now claim that the Defendants failed to make payments under the June 2001 [SDO Agreement], when Plaintiff settled those claims.

4.   Plaintiff also alleged that the Defendant breached the June 2001 [SDO Agreement] by marketing the software to third parties without the Plaintiff's written consent. Testimony at trial proves that the Defendant could market the software without the Plaintiff's consent, but had to obtain written authorization before executing a sale. Plaintiff presented no evidence of a sale.

5.   Defendant asserts counterclaims alleging the Plaintiff failed to timely complete the project according to the deadlines outlined in the June 2001 [SDO Agreement]. It is undisputed that the Chicago Tribune requested modifications to the software, which resulted in delays and continuances. Continuances due to modifications are allowed by the express terms of the June 2001 [SDO Agreement].

6. Defendant clearly and unambiguously terminated its June 2001 contract by letter dated September 16, 2003 (Exhibit 20). At that time, Defendant had settled its monetary obligations to the Plaintiff and was awaiting Plaintiff's completion of the software. Defendant claims that the Plaintiff was in breach of the June 2001 [SDO Agreement], but instead of seeking legal remedies for the alleged breach, Defendant "terminated" the agreement. Defendant, at that time, had the option to seek a determination in court as to whether or not in fact the Plaintiff had breached its duties under the contract. At that juncture, the Defendant chose to terminate the contract prior to seeking any judicial ruling on the issues between the parties.

7. In view of this Court's finding that the parties were in fact joint owners of the software/code, the Defendant's unilateral termination of the contract was a decision made at their own risk. Clearly, the Defendant could have sought legal remedies prior to termination of the contract, but it chose not to do so. By terminating the contract, Defendant lost any rights under the contract as of that date.

8. The parties were joint owners of the software until September 16, 2003.  Defendant, however, has no legal rights related to any modifications of the software made after the Defendant's unilateral termination of the contract on September 16, 2003. As of that date, all obligations between the parties were "terminated."

ECF #145, Ex. A Part II.

Twelve days later, on 14 February 2005, upon a joint motion for clarification, Judge Coyne issued a further order.  With respect to the ownership of the code the Order stated:

i. The Court finding that there was a somewhat tumultuous relationship between these two

14

> parties nevertheless found that they were joint owners of the software/code as of September 16, 2003.
>
> ii.   Since the termination of the agreement by Paragon, the ownership of the code and all modifications made since September 16, 2003 are rightfully owned by Plaintiff Automated Solutions Corporation.  Defendant Paragon had a one-half joint ownership over the code as it existed until Paragon terminated the contract on September 16, 2003. At that time, Plaintiff Automated Solutions gained exclusive and complete ownership over the software/code and any modifications.

ECF #145, Ex. A Part II, pp.7-8.

### C.  Additional Developments Relating to the Contract and Software

On 17 February 2005 Automated, through its counsel, demanded return of copies of the SCDS code. Paragon refused to return the SCDS code.  (ECF #145, Ex. A, Part II, p. 44). On 25 February 2005 Automated obtained a federal copyright registration in and to the SCDS code.  (ECF #145, Ex. A, Part II, pp. 10-11).

### D.  Appeal of the Initial State Suit: Ohio Court of Appeal Case No. 86067

On 3 August 2005, Paragon appealed Judge Coyne's rulings of 2 February 2005 and 14 February 2005, challenging the state trial court's subject matter jurisdiction and assigning as errors the state trial court's rulings regarding contract interpretation and breach, and the declaration of software ownership rights after 16 September 2003, as well as the denial of leave to file a counterclaim. (See Attachment 1, p. vi).  Opposing the appeal, Automated argued the state trial court had subject matter jurisdiction, correctly found that Automated had not materially breached the Agreement, did not err in contract interpretation, and "properly found that Automated was entitled to rescind the parties' agreement." (Automated's State Appellate Brief, p.27, a copy of which is

15

attached to this Memorandum of Opinion and Orders as Attachment 4.)  Automated further argued that the trial court properly denied Paragon leave to file a counterclaim. Id. at 32.

In a Cross-Assignment of Error, Automated argued that the state trial court erred in finding that the Letter Agreement relieved Paragon's funding obligations under the SDO Agreement.  Automated argued that it never relinquished the right to a $200,000 payment for costs of development under the SDO Agreement and that the state trial court's finding that the Letter Agreement superceded the SDO Agreement was against the weight of the evidence.  (Attachment 4, pp.36, 37).

In reply, Paragon pointed out  that Automated did not seek rescission in its complaint or at trial and by election of remedies had waived its right to do so; Paragon also argued that the benefit conferred upon Automated –  the relationship with the Tribune – was retained by Automated and a party is not permitted to both retain the benefits of a contract and repudiate it.  (Paragon Reply Brief, a copy of which is attached to this Memorandum of Opinion and Orders as Attachment 5).  Paragon further argued that Automated's "Cross-Assignment of Error" sought a change in the judgment entry and therefore should have been the subject of a cross-appeal.

On 6 July 2006 the Court of Appeals of Ohio, Eighth District, announced its decision.  The state appellate court affirmed Judge Coyne's decision.  Judge Diane Karpinski authored an opinion. The other two judges on the panel, Presiding Judge Colleen Cooney and Judge Sean Gallagher, did not join Judge Karpinski's opinion; these judges concurred in the judgment of affirmance only. Presiding Judge Cooney filed a separate concurring opinion. Judge Gallagher filed no opinion. (ECF # 145, Ex. A, Part II, pp. 12-43).

16

Judge Karpinski's opinion referred repeatedly to the "terminated contract" or Paragon's action in "terminating" the contract.  Judge Karpinski also stated that the repudiation of a contract authorizes a plaintiff to treat the contract as rescinded, and that the state trial court had ruled that the SDO Agreement had been "essentially rescinded." (ECF #145, Ex. A, Part II, p. 36).  Judge Karpinski did not modify the declaration of rights or remedies under the SDO Agreement provided in Judge Coyne's orders. Judge Karpinski did not consider Automated's claim for damages under the SDO Agreement and Letter Agreement on the grounds that Automated did not properly prepare a cross-appeal.  Id. at 29

Presiding Judge Cooney emphasized that she wrote her opinion to address several areas of disagreement.   She affirmed the trial court's judgment regarding the contract rights on the grounds that, since the Tribune was satisfied with Automated's performance, the only condition precedent to the option to terminate had not been met, and  "Paragon had no right to terminate the agreement."  Id. at 30.

### E.    The Present Action: Cuyahoga County Court of Common Pleas CV 05-561380/United States Federal District Court 1:05 CV 1519

On 26 April 2005 Automated filed suit against Paragon in Cuyahoga County Court of Common Pleas. On 31 May 2005 Paragon filed a Notice of Removal, removing this action to the federal district court. (ECF #1).

On 17 June 2005 Automated filed a First Amended Complaint for Preliminary Injunction, Permanent Injunction, Money Damages, an Accounting and Other Relief ("First Amended Complaint," ECF #5).  The First Amended Complaint alleges that Paragon, in disregard of the state trial court's judgment, and Automated's copyright, has

17

continued marketing, selling, licensing and "otherwise monetizing" SCDS software or an unauthorized derivative created by copying SCDS software.  The First Amended Complaint further avers that Paragon has not shared with Automated the profits from its unauthorized sales, licensing and other monetization and that the creation of a derivative based, in whole or in part, on SCDS software infringed Automated's copyright and rights in and to the SCDS code.

Based upon these allegations, Automated set forth seven counts. Count One of the First Amended Complaint is for copyright infringement for copying, selling or licensing software derived from the SCDS software.  Count Two alleges a violation of the Lanham Act for sales and marketing of the software with false and misleading representations, including false designation as to the creator of the SCDS software, creating confusion in the marketplace regarding Automated's and Paragon's respective software systems.  The Third Count alleges a breach of contract for Paragon's failure to obtain written consent prior to selling or licensing software derivative of SCDS software, and for failing to share with Automated profits received from sale of derivative software. The Fourth Count alleges conversion for Paragon's failure to return copies of the SCDS software source and object codes and failure to provide payments to Automated for amounts received from third parties for sales, licenses and other monetizations of the SCDS software. The Fifth Count avers Paragon's tortious interference with Automated's existing and prospective business relationships by the marketing, selling, licensing and monetizing of the SCDS software and unauthorized derivatives. The Sixth Count alleges unjust enrichment based upon Paragon's unauthorized sale of software derived from the SCDS software.  The Seventh Count alleges unfair competition by the marketing,

18

licensing and other monetizing of the SCDS software, or unauthorized derivatives, while the SDO Agreement was still in effect. (ECF # 5).

Paragon filed an Answer and Counterclaim to the First Amended Complaint on 14 July 2005 (ECF #12). Paragon filed an Amended Counterclaim on 6 October 2005 (ECF #56). Paragon made a motion for leave to amend its answer which was granted on 18 July 2007, and filed an Amended Answer and Counterclaim on 19 July 2007. (ECF # 169, 170).  Paragon was subsequently granted a motion to withdraw the Counterclaim inadvertently appended to the Amended Answer. (ECF # 194). The result is that Paragon's operative Amended Answer is set forth in ECF #170 and its operative Counterclaim in ECF #56. (ECF #56 will be referred to as the "Federal Counterclaim.")

### III.   THE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON THE COMPLAINT

On 11 August 2006 Paragon moved the Court for partial summary judgment ("Paragon's Partial Summary Judgment Motion").  Paragon filed with respect to all claims made by Automated that Paragon's Deliver, Return and Collection ("DRACI") software system infringes upon, or is derived from, the SCDS software. Thus, Paragon moved for a judgment in its favor on all claims by Automated with regard to copyright infringement and all state law claims contingent upon the allegations that DRACI software infringes upon or is derived from SCDS. (ECF #137,138).

After various skirmishes (ECF #142,143), Automated filed a combined memorandum in opposition to defendant Paragon's motion and in support of its own motion for partial summary judgment ("Automated's Partial Summary Judgment Motion"). (ECF145,146,147, 148, 149; ECF #149 is a duplicate of ECF #145). In its

19

motion, Automated sought summary judgment on its federal law copyright infringement claim and state law contract and conversion claims.

Paragon filed a combined reply brief in support of the Paragon Motion for Partial Summary Judgment and opposition to Automated's Motion for Partial Summary Judgment (ECF #156) and Automated filed a reply memorandum in support of its own motion (ECF #160). By order dated 5 May 2008, this Court lifted the outstanding stay on briefing to allow supplemental briefing on the cross-motions. (ECF # 196). Automated made a Supplemental Filing (ECF #198); Paragon submitted both a Motion to Strike (ECF #204) and a Supplemental Filing (ECF #205).

**A.  Automated's Motions for Partial Summary Judgment on Its State Law Claims for Conversion, Rescission and Breach of Contract**

Automated argues that it is entitled to summary judgment on its conversion claim on the basis that the state appellate court decision entitled Automated to rescind the parties' SDO agreement, and that therefore Paragon is no longer entitled to possession of disks containing SCDS source code. Similarly, Automated argues that it is entitled to summary judgment on its contract claim based upon a right of rescission; Automated contends that all monies received by Paragon under the SDO Agreement should be paid to Automated since the SDO Agreement is now rescinded.

Automated mischaracterizes the state trial court's judgment and declaration of rights and misconstrues the effect of Judge Karpinski's appellate decision. The state trial court did not find that the SDO Agreement was rescinded; the state trial court did not declare the rights of the parties in a manner consistent with a finding of rescission. The state trial court found that Paragon's actions terminated the contract and ordered an allocation of rights between the parties under the contract consistent with contract

20

termination.  The language of Appellate Judge Karpinski's opinion – in which no other judge on the panel joined – did not alter the appellate judgment. The final and only judgment of a  majority of  the Court of Appeals was to affirm Judge Coyne's judgment.


### 1.      The State Trial and Appellate Proceedings and Opinions

Despite the statements re-characterizing reality set forth in the declaration of its Chief Executive Officer, Richard Petcher, Automated did not sue or argue for rescission in the state trial court.  Seven days after receiving Paragon's termination notice, Automated filed suit for declaratory relief and breach of contract. The Common Pleas Amended Complaint sought declaratory relief, compensatory and punitive damages; the Common Pleas Amended Complaint did not include a count or prayer for rescission.

At the time of the state court trial, Automated did not argue for rescission.[2] Automated's trial brief asked the Court to "find that Paragon materially breached the [SDO Agreement] ending Automated's obligations to Paragon..." (Trial Brief, p.16, a copy of which is attached to this Memorandum of Opinion and Orders as Attachment 6.) In his opening statement, Drew Carson, counsel for Automated, told the court the case was "for declaratory relief and breach of contract." (State Trial Transcript, p.14. Copies of all pages referenced in the State Trial Transcript are collectively attached to this Memorandum of Opinion and Orders as Attachment 7).  Referring to Paragon's actions, Mr. Carson repeatedly referred to their "termination" of the SDO Agreement.

---

[2]      In evaluating what issues were determined in a prior action, the court may go beyond the judgment roll to look at pleadings and evidence in the prior action. <u>James Talcott. Inc. v. Allahabad Bank, Ltd.</u>, 444 F.2d 451, 459 n.7 (5th Cir.), <u>cert. denied</u>, 404 U.S. 940 (1971), <u>Brewer v. Dupree</u>, 2003 U.S. Dist. Lexis 25327 *14 (M.D. Ala. 2003).

(Attachment 7, pp.16,17). The only counsel who referenced rescission in the opening statements was Mr. Dattilo, counsel for Paragon, who said to the court, "the point... is they haven't sued for rescission." (Attachment 7, p.41).[3]

There is no evidence that state trial Judge Coyne found that the SDO Agreement was rescinded. The plain language of his ruling states, repeatedly, that the contract was terminated. The trial court declared that the "Defendant clearly and unambiguously terminated its June 2001 contract."  The opinion referred to "Defendant's unilateral termination of the contract." Judge Coyne nowhere uses the words rescind, rescinded or rescission in his Opinion & Order. (Opinion & Order, ECF #145, Ex. A, Part II).

The state trial court's Opinion & Order and Order are inconsistent with rescission. Under the doctrine of rescission, a contract is void ab initio, and the parties have no rights under or from the contract.  Rolling v. Ohio State Home Servs., Inc., 1993 WL 261568 (Ohio App. 9 Dist. 1993).  The state trial court's finding that the parties had joint ownership rights under the SDO Agreement until the termination date could not have been made based on a rescinded contract.  In addition, to accomplish rescission both parties must be restored to status quo ante, that is, the situation that existed prior to contracting.  Sabbatis v. Burkey, 853 N.E. 2d 329 (Ohio App. 5 2006). There is nothing

---

[3]     Under Ohio law, upon termination or material breach, a party has an election to either sue for rescission or sue for damages for breach of contract. Wilson v. Wilson, 30 Ohio St. 365 (1876); Fireproof Construction, Inc. v. Brenner-Bell, Inc., 87 N.E.2d 174,176 (Ohio App. 2 Dist. 1949), rev'd on other grounds, 90 NE 2d 472 (Ohio 1949); Trajcevsky v. Bell, 115 Ohio App. 3d 289, 292 (Ohio App. 9. Dist. 1996);18 Ohio Jurisprudence, 3d § 271. There is a strong argument that Automated's conduct in the state court proceedings waived any right Automated may have had to rescind based upon Paragon's conduct.

in the state trial court's Opinion & Order which requires the restoration of compensation or goods to effectuate rescission.[4]

The declaration of rights in the state trial court Opinion & Order and Order is consistent, however, with the allocation of rights which results when a contract is terminated.  Termination occurs when a party puts an end to a contract when there is no uncured material breach by the other party. In that instance, all executory obligations are discharged, but rights based in the contract prior to breach survive.  Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc., 390 F.3d 336, 340 (5th Cir. 2004); Premier Corp. v. Economic Research Analysts, Inc., 578 F.2d 551, 553-54 (4th Cir. 1978); Standard Oil Co. v. Perkins, 347 F.2d 379. 383-384 (9th Cir.1965); Insurdata Marketing Services, LLC  v. Healthplan Services, Inc., 352 F. Supp 2d 1252 (M.D. Fl, 2005); O.R.C. § 1302.01(A) (13); Murray on Contracts 4th Ed., §145 (e). This is exactly what Judge Coyne ordered: that the rights under the contract prior to the date of the termination survive, but all executory obligations are discharged.

This is also the outcome for which Automated argued.  In his closing argument, Drew Carson, counsel for Automated, did not mention rescission. He did, however, argue that Paragon's actions should be considered a "termination" rather than a "cancellation."  (State Trial Transcript, p. 380).  While Judge Coyne did not enter a

_____

[4]     If the parties cannot be restored, rescission is unavailable. Schulz v. Sullivan, 634 N.E.2d 680 (Ohio App. 1 Dist. 1993); Hannah v. Pixley, 9 Ohio Law Abs 526 (Ohio App. 4 Dist. 1930); Cincinnatti Rubber Mfg. Co. v. John T. Towsley Mfg., Inc., 32 Ohio N. P. (N.S.) 435, 1933 WL 1732 *2 (Ohio Com. Pl. Hamilton). Given that the Tribune business opportunity benefit received by Automated under the SDO Agreement cannot be undone, the parties cannot be returned to status quo ante in this case and an order of rescission would have been improper

finding with regard to the applicability of the Ohio version of the Uniform Commercial Code, the judge clearly and explicitly used the concept of termination and the allocation of retroactive and prospective rights urged by Automated in his Opinion & Order. See Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 408 (1960), Insurdata Marketing Services, LLC., v Healthplan Services, Inc., 352 F. Supp. 2d 1252, 1257 (M.D. Fl. 2005) (applying termination to contracts not subject to the UCC).

Assuming good faith, Automated's argument regarding its right to rescind is founded upon a fundamental misunderstanding of the nature and effect of Judge Coyne's ruling.  Judge Coyne not only determined what Paragon did – unilaterally terminate the contract – but the consequences of that conduct.  The declaration of the rights of the parties as a consequence of Paragon's termination was part and parcel of the finding of termination.  Automated cannot now take the finding of termination and try to use it to obtain different rights. Judge Coyne's Opinion & Order is all of a piece and is determinative as a declaration of the rights of the parties.

**2**.    **Automated's Conversion Claim**

Automated asserts that it is entitled to summary judgment on its conversion claim on the theory that Paragon received copies of the SCDS code prior to 16 September 2003 and has failed to return them, despite Automated's demand.  In light of Judge Coyne's ruling that Automated and Paragon jointly owned the code prior to 16 September 2003 Paragon's possession of pre-16 September 2003 code is not the wrongful exercise of control over the property of another; Paragon is a lawful co-owner of the code.  Therefore, under Fed. R. Civ. P. 56 (d) (1) this Court will find in favor of Paragon on Automated's conversion claim predicated upon possession of the pre-16

September 2003 code and specify that Paragon's possession of the pre-16 September 2003 code is lawful and not genuinely at issue.[5]

Automated's Count Four for conversion also references unspecified "payments from third parties for sales" prior to the termination of the SDO Agreement. (¶¶ 69-71, ECF #5).  The reasoning for that portion of Automated's conversion claim is unclear; to the extent it is predicated upon a rescission theory, or was previously submitted for consideration and decision by Judge Coyne (ECF #145, Ex. A Part II), the discussion which follows in Section III (A)(3) is applicable.

### 3.    Automated's Rescission and Breach of Contract Claims

Arguing that the state appellate court awarded Automated the right to rescind, Automated seeks the return of all monies paid to Paragon by the Tribune. As noted above, the controlling declaration of the parties' rights does not allow or call for rescission of the contract.  Where Automated predicates a claim for monies upon a rescission theory, the Court will, hereby, enter summary judgment in favor of Paragon.

Automated's argument is unclear, however. As explained in Rolling v. Ohio State Home Services, Inc., 1993 WL 261568, *2, (Ohio App. 9 Dist.), a rescinded contract, ineffective ab initio, cannot be the predicate for contractual rights or contractual recovery. Yet, despite its reliance upon a rescission theory, Automated sometimes states in its moving papers that the demand for amounts received by Paragon from the

---

[5]    The Court is aware this may leave Paragon with developmental versions of Automated's subsequently copyrighted SCDS code. While there may be appropriate remedies or means to restrict future use of the code, a conversion theory is not one of them, given the prior state court rulings which bind this Court.

25

Tribune is a claim for contract recovery. If so, the claim is subject to limitation by the doctrine of collateral estoppel or issue preclusion.

As a part of the full faith and credit doctrine, federal courts considering the preclusive effect of a prior state court judgment must apply the law of the state which rendered the judgment. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996). Thus, Ohio law governs this issue. The Ohio Supreme Court recently re-affirmed that, "Issue preclusion..serves to prevent re-litigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. [citation omitted]." O'Nesti v. DeBartolo Realty Corporation, 113 Ohio St. 3d 59, 61 (2007).

Automated tries to avoid the consequences of collateral estoppel by arguing that it reserved claims regarding contract breach through the Stipulated Partial Dismissal Without Prejudice and Tolling Agreement prior to trial before Judge Coyne.  (ECF #145, Ex. A. p. 31). By this agreement the parties stipulated that Automated would dismiss without prejudice all counts except Count One of its complaint.  Since one of the counts so dismissed was Count Two, a breach of contract claim, Automated argues it is not precluded from litigating breach of the SDO Agreement in the present action.

Automated's argument misses the point.  Paragon is raising the defense of collateral estoppel, which is governed by the matters submitted and decided in the state court. For these purposes, and as to this defense, the Stipulated Partial Dismissal is irrelevant.

What is relevant is what was actually and directly at issue in the prior action. Despite the parties' agreement that the state trial would be limited to a declaratory relief action regarding the ownership of the code and Automated's future responsibilities

26

under the SDO Agreement, review of the state trial transcript shows that Automated

argued breach of contract as well.

Specifically, Automated and Paragon submitted to Judge Coyne issues regarding

amounts owing to Automated for work performed under the SDO Agreement and for the

Tribune.  Paragon argued that all claims regarding payment under the SDO Agreement

and with respect to the Tribune  were settled by the Letter Agreement, signed by both

parties, which Paragon argued, superceded and modified the SDO Agreement on these

issues.  Automated argued that the Letter Agreement dealt only with payments relating

to the Tribune, and not more global rights to payment under the SDO Agreement;

Automated contended it was due an additional $200,000 under Section Two of the SDO

Agreement. (State Trial Transcript, p. 20, 21, 366, 368).  Judge Coyne resolved the

dispute, finding:

> Plaintiff alleges that the Defendant failed to make payments
> required by the June 2001 [SDO Agreement]. However, the
> parties signed a settlement of their monetary obligations on
> September 20, 2002 (exhibit 34) [Letter Agreement]. Plaintiff
> cannot now claim that the Defendant failed to make
> payments under the June 2001 [SDO Agreement], when the
> Plaintiff settled these claims.

ECF #145, Ex. A Part II.

As the Ohio Supreme Court stated:

> A point of fact that was actually and directly at issue in a
> former action and was passed upon and determined by a
> court of competent jurisdiction may not be drawn into
> question in any future action between the same parties or
> their privies, whether the cause of action in the two actions
> be identical or different.

Norwood v. McDonald, 142 Ohio St. 299 (1943) (¶ 3 syllabus).

Judge Coyne found that the parties settled their disputes with respect to payments and

27

set-offs in connection with the SDO Agreement by the execution of the Letter Agreement and made no award of damages to Automated. The issue of money owing to Automated for or on account of the SDO Agreement was actually and directly at issue in the former action and was determined by a court of competent jurisdiction and may not be reconsidered here. Therefore, this Court will enter summary judgment in favor of Paragon with respect to any claim by Automated for breach of the SDO Agreement.

**B.**     **Paragon's Motion for Partial Summary Judgment Regarding "Fair Use" Copying on or about March 15, 2005, PDSI 000981**

On 25 February 2005 Automated obtained a federal registration of a copyright in and to the SCDS software.[6] On or about 15 March 2005 Paragon made a copy of a code which was produced in discovery and marked Bates PDSI 000981. According to Automated's expert, Wolfgang Pelz, PhD, the code is not an exact copy of the material registered with the copyright office, because the code does not include comments, but it is substantially the same. (ECF #156, p.5). Automated has asserted a copyright violation for Paragon's 15 March 2005 copying of the SCDS code. Paragon has moved for partial summary judgment on this issue; the Court will treat this as a request under Fed. R. Civ. P. 56 (d) (1) for the establishment of a fact in the action

Paragon has put forth credible, uncontradicted evidence that on or about 15 March 2005, it made a single copy of the code already in its possession for use by copyright counsel. The particulars are set forth in the Affidavits of Giles Manias and Cynthia Murphy, Esq. (ECF #156, Ex. A and C).

---

[6]     For the purposes of this motion only, Paragon is not contesting the validity of the copyright.

28

In March of 2003, pursuant to the terms of the SDO Agreement, Automated provided Paragon with copies of the SCDS code in process.  After the state trial court ruling, Paragon gave all of the SCDS source disks in its possession, custody and control to its attorneys, Gallagher Sharp. In March of 2005 Paragon planned to attend a newspaper trade show to exhibit its product, DRACI.  In anticipation of this, Automated filed an order to show cause before the state trial judge seeking to bar Paragon's exhibition of the product; a hearing on the order was scheduled for 16 March 2005. (Id.)

The uncontradicted evidence is that on 15 March 2005, Mr. Manias attended a meeting at Gallagher Sharp and made a copy of the source code provided to Paragon by Automated during the term of the SDO Agreement. The disk was made for the purpose of examination by copyright counsel Cynthia Murphy. The disk was delivered by Gallagher Sharp to Cynthia Murphy, who confirmed she had received the disk on 16 March 2006.  Ms. Murphy was asked to render an opinion as to whether or not DRACI infringed upon Automated's copyrighted SCDS code. Ms. Murphy gave the opinion that DRACI did not infringe on Automated's copyright. Her office did not make any copies or print any data from the disk, and returned the disk to Gallagher Sharp. (Id.)

Paragon's moving papers state the matter correctly:

> The sole question remaining is an issue of law: whether the single act of copying an ASC disk that is substantially similar but not identical to ASC's copyrighted software on March 15, 2005, for use by Paragon's copyright attorneys in order to render a legal opinion, constitutes non-infringing fair use, or whether this act constitutes copyright infringement.

ECF #156, p.7

The Copyright Act grants an owner exclusive rights in the copyrighted works, but contains a "fair use" privilege which allows others to use the material without consent.

17 U.S.C. § §106, 107.  The burden of establishing "fair use" is upon the party asserting the statutory defense.  Princeton University Press v. Michigan Doc. Services, Inc., 99 F.3d 1381, 1386 (6th Cir. 1996).

There are four factors to be considered in evaluating fair use: the purpose and character of the use; the nature of the copyrighted work; the amount and substantiality of the portion used; and the effect of the use on the potential market for or value of the copyrighted work .17 U.S.C. § 07 .  The four statutory factors are to be weighed and explored together. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994). The governing principle is that of an "equitable rule of reason;" the defense requires a case-by-case analysis and determination of whether a particular use is fair. Sony Corp of America v. University City Studios, Inc., 464 U.S. 417, 488 n.31 (1984); Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 549 (1985).  As the Ninth Circuit stated in Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1163 (9th Cir. 2007):

> We must be flexible in applying a fair use analysis; it "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.... Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." Campbell, 510 U.S. at 577-78, 114 S.Ct. 1164; see also Kelly, 336 F.3d at 817-18.

The first factor is "the purpose and character of the use."  Paragon did not copy the code for commercial purposes and did not use the code to perform its marketable function of  tracking sales and delivery at a newspaper or other publication. Rather, the undisputed evidence is that Paragon copied the code to obtain an opinion as to whether or not  its own product, DRACI, violated Automated's copyright. The copyright attorney could not form an opinion with regard to infringement without comparing the codes. Similar use of copyrighted material to obtain expert opinion relating to existing or

threatened litigation has been held "fair use."  Religious Technology Center v. Larry Wollesheim, 971 F.2d 364, 367 (9th Cir. 1992).

The second statutory factor, "the nature of the copyrighted work," looks to whether the work is "closer to the core of intended copyright protection" which the Supreme Court has held to be original creative expression intended for public dissemination. Campbell v. Acuff-Rose Music, Inc. 510 U.S. 569, 586 (1994); Steward v. Abend, 395, U.S. 207, 237 (1990).  Under this factor, the Court has extended narrower "fair use" privileges for works which are fictional, an issue which is not relevant here.

As to the third statutory factor, the copying did involve the full copyrighted work, but it was necessary to copy the entire code for the legitimate purpose of comparison. Moreover, since there was no distribution or publication, this factor carries little weight. Sega Enterprises v. Accolade, 977 F.2d 1510, 1526 (9th Cir. 1992).

The fourth statutory factor is the most important : "the effect of the use upon the potential market for or value of the copyrighted work."  Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 547, n.2 (1985). Since the copying on 15 March 2005 for the purpose of obtaining an expert opinion does not impact the marketability or market value of the SCDS code, this should be "fair use." This result is consistent with the purposes of copyright. As the Ninth Circuit stated, "use that has no demonstrable effect on the market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." Hustler Magazine v. Moral Majority, Inc., 796 F.2d 1148, 1155 (9th Cir. 1986).

Automated's argument against this analysis consists of its assertion that, because of its claimed  rescission of the SDO Agreement, Paragon did not have the

right to possession of the SCDS code at the time of the copying. As explained above, the state trial court specifically found that Paragon was a one-half owner of the code up to 16 September 2003.  The undisputed evidence is that the SCDS code copied on 15 March 2005 was code delivered to Paragon by Automated in March 2003 pursuant to the SDO Agreement and was, therefore, code in which Paragon had a joint ownership interest pursuant to the SDO Agreement.

Based upon the above, the Court will find that Paragon's copying on or about 15 March 2005 of the SCDS code already in its possession, delivered by Automated to Paragon pursuant to the terms of the SDO Agreement, only for the limited purpose of obtaining counsel's expert opinion regarding copyright infringement is "fair use." Pursuant to Fed. R. Civ. P. 56 (d) (1) this fact will be established against Automated in this action. This ruling does not immunize any additional copying or other or further use of any copy made on or about 15 March 2005.

### C.  Paragon's Motion For Partial Summary Judgment: Sale and Licensing of DRACI

Paragon moved the Court for a finding that  there is no substantial similarity between the DRACI software system and the SCDS software system and that the DRACI system is not derived from the SCDS system. (ECF #138, p.1, 2). In its 27 October 2006 opposition to this issue, Automated submitted arguments and affidavits contending it could not present facts essential to its opposition; Automated also argued for denial of summary judgment on infringement, or summary judgment in its favor on infringement, on the ground that Paragon had withheld, omitted or destroyed evidence critical to that determination. (ECF # 145, p. 8-10; ECF #145 Ex. B Part I,¶¶23-25).

On 12 September 2007 multiple discovery matters, including those raised in Automated's opposition, were referred to Magistrate Judge Hemann. At  the same time, the Court set a discovery deadline in this case of 1 January 2008. (ECF #177).

On 5 May 2008, the Court established a briefing schedule to allow new or supplemental evidence with regard to the Cross-Motions for Partial Summary Judgment and asked the parties in particular to provide further information with respect to the discovery disputes referenced in Automated's opposition. (ECF #196). Automated made a supplemental filing of argument and evidence (ECF #198); Paragon submitted both a motion to strike and a supplemental filing. (ECF # 204, 205).

**1. The September 2007 Hearing Before Magistrate Judge Hemann**

Both parties have submitted transcripts of the hearing before Magistrate Judge Hemann for this Court's review. The transcript shows that during the September hearing, consistent with the position taken in their opposition to summary judgment, Automated repeatedly argued that  Paragon had refused or failed to produce any documents reflecting the development of the DRACI source code during 2004 and 2005. (ECF #205, Ex. B, pp. 7,8, 14). Automated contended that, without such material, Automated's expert could not meaningfully determine if the SCDS and DRACI codes are substantially similar, or if the DRACI code is derivative of SCDS.  Automated requested the magistrate judge compel production of  various identified documents which had not been produced; Automated also requested the magistrate judge compel production of forensic images of hard disk drives, e-mail servers and storage drives used to develop or store versions of the software at issue. (Pursuant to instructions from Magistrate Judge Hemann, the parties did not file motions, but prepared letters outlining their issues. The letter at issue in the September 2007 hearing is ECF #198, Ex. A-6).

Throughout the proceeding before Magistrate Judge Hemann, counsel for Paragon represented there are no copies of the DRACI code other than those already provided to Automated in discovery; both Paragon's counsel and a client representative further represented that the process of code development did not begin until 2005. (ECF #205, Ex. B, p. 10). Based in part upon such representations,  Paragon successfully resisted Automated's request to compel discovery of a forensic mirror image of electronic storage media, which Automated's counsel argued might reveal the development history of the DRACI code. (ECF # 198, Ex. A-2; ECF #205, Ex. B, pp. 6, 12).

Although Magistrate Judge Hemann did not issue a formal written order, she declined to order further discovery. The magistrate judge stated in the hearing that if testimony contrary to the representations made in the proceedings came forward, the matter of development materials could be revisited. (ECF #205, Ex. B, p. 44). Magistrate Judge Hemann also stated that discovery issues and spoliation claims could be raised again with this Court. (ECF #205, Ex. B, pp. 24, 44, 45).

### 2. Fed. R. Civ. P. 56(f) and Subsequent Filings

Consideration of the proceedings before Magistrate Judge Hemann, and other filings submitted in connection with these motions, has persuaded this Court that the proper disposition of this portion of the summary judgment motion is to treat Automated's submission as a Rule 56(f) opposition, deny summary judgment on infringement and authorize additional discovery in order to properly determine contentions and issues regarding the derivation of the DRACI code.

In its motion, declarations, and "letter motion" before the magistrate judge, Automated has specified the materials it seeks in discovery and the manner in which

34

the materials may provide evidence relevant to the summary judgment motion. (ECF #145; ECF#145. Ex. B, Part II;  Declaration of David Kunselman, ECF #198; ECF #198 Ex. A; and ECF #198 Ex. A-6). This showing sets forth the required elements of Rule 56(f) opposition and is a sufficient basis to deny the motion for summary judgment. Short v. Oaks Correctional Facility, 129 Fed. Appx. 278,**14 n.2; Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, 280 F.3d 619, 627-28 (6th Cir. 2002) (showing need not be made in summary judgment opposition).

Automated argues in its Supplemental Filing that it has additional evidence which contradicts the representations made by Paragon's counsel in the September 2007 hearing before Magistrate Judge Hemann, justifying an alternate outcome and establishing additional evidence of spoliation.  (ECF #198). Even at the time of the September 2007 hearing before Magistrate Judge Hemann, counsel for Automated had and attempted to present evidence showing that the development process for the disputed code began in 2004.  Automated cited evidence that:

1.    According to testimony in the state court proceeding, Paragon began in-house development of a "different version" of the SCDS code in January of 2004 (Manias Deposition Transcript, ECF #198, Ex. A-5, p. 96; Kunselman Declaration, ECF # 198, Ex. A);

2.    Paragon was demonstrating and field testing a form of software to and with The Plain Dealer  in April of 2004 (PD 000265, ECF #198, Ex. A-3; Kunselman Declaration, ECF #198, Ex. A); and

3.    The Plain Dealer used a handheld device with software provided by Paragon in June of 2004 (PD 0000262, ECF #198, Ex. A-4; Kunselman Declaration, ECF #198, Ex. A).

At the September 2007 hearing, Magistrate Judge Hemann limited argument on this issue based upon her policy that she will not order the production of material if a

counsel represents the material does not exist. Satisfying this, Paragon's counsel represented that development of the code at issue did not begin until 2005 and that Paragon had produced all copies of "the DRACI code."  Counsel for Automated correctly pointed out that  Paragon's counsel was careful to state that Paragon had produced all copies of "the DRACI code," but avoided any representation regarding the development materials for the DRACI code, or any predecessor "different version" of the SCDS code.

Paragon counsel's limited representations regarding production of "the DRACI code" are insufficient.  Paragon proposes that the DRACI code somehow appeared, fully formed and operational, one day in 2005.  Yet, something appears to have been provided by Paragon to The Plain Dealer in 2004. Paragon had a responsibility to preserve material relating to the software code from its notice of pending or probable litigation, in this case from 16 September 2003. Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co., 2008 WL 6628267 *3 (N.D. Ohio). Paragon's failure to produce any developmental code from 2004 is suspect, given that  Paragon had the SCDS code in 2004. A key question in this litigation is whether the DRACI code is derived from SCDS, and this question can only be definitely answered if the development materials for DRACI are provided by Paragon.

In its Supplemental Filing, Automated provides a transcript and tape of an interview with a former employee of Paragon, Brent Anderson.[7] (Declaration of Dave

---

[7] Paragon made a Motion to Strike the Declaration of Dave Buchholzer and the tape of the interview of Brent Anderson on the grounds that these are hearsay and thus not competent evidence for consideration in opposition to a motion for summary judgment. Since this Court has elected to treat the declaration as matter submitted in support of a

Buchholzer, ECF #198, Ex. B; tape, ECF #200).  In the interview, Mr. Anderson, who states that he was employed by Paragon from 27 January 2003 to 10 March 2004, describes undertaking a process of "reverse engineering" the SCDS code. (Declaration of Dave Bucholzer, ECF #198, Ex. B, pp. 4,10, 19).  Mr. Anderson states that the SCDS software was stored on a Sun server and a Windows workstation. Id. at 12.  Mr. Anderson understood that Paragon was "looking into redoing it with their own, with a different technology."  (Id. at 14). He  describes giving verbal and oral reports on his progress to his supervisor, Brian Atkins, and the principal owners of Paragon,  and maintaining an electronic notebook with documentation regarding the project, consisting of information which he created and which he found on the discs containing the SCDS code. Id. At 15, 11.  No copies of the SCDS code, written progress reports or electronic documentation referenced by Mr. Anderson were produced by Paragon.

Automated has made a compelling showing that there is material, responsive to its requests for production, which has not been produced and which is relevant to the preparation of an opposition to Paragon's motion for partial summary judgment. Pursuant to the broad authority granted this Court under Fed. R. Civ. P. 56(f)(3) to fashion a just order, this Court will require both enhanced traditional discovery, and electronic discovery, to address this issue. The Court will open discovery in this case, previously closed as of January 2008, solely for the purpose of the completion of the discovery required and allowed by this Memorandum of Opinion and Orders.

_____

Rule 56(f) opposition, which only requires demonstration that the party cannot present facts essential to its opposition, a showing which necessarily anticipates  presentation of material outside of personal knowledge, the motion to strike is denied as moot.

### 3. Enhanced Traditional Discovery

Paragon shall make supplemental responses to Automated's Requests for Productions Nos. 2, 3, 4, 5. (Declaration of David Kunselman, ECF #198, Ex. A-2). These responses shall be signed by the client under penalty of perjury and shall identify, for each request, the documents or other material produced in response to the request.  If the material has already been produced, and Paragon does not wish to produce it again, the material may be referenced by Bates number.  If no documents or material are produced in response to a given request, the response must so state.  The supplemental response shall be due thirty (30) days after entry of this Memorandum of Opinion and Orders.

### 4. Electronic Discovery: The Mirror Image of Electronic Storage Media

In its Request for Production No. 85 Automated requested:

A forensic mirror image (aka clone) of all electronic storage media, including, but not limited to, hard drives, backup tapes, CD's, DVD's, and other electronic storage media, used in conjunction with computers, workstations servers and other machines that Defendant allegedly used to develop and/or store any and all versions/builds of the Software and any and all documents that pertain, refer or relate thereto.

(Declaration of David Kunselman, ECF #198, Ex. A-2).

When appearing before Magistrate Judge Hemann, Automated simplified its request to a forensic image of hard disk drives, email servers and storage drives " that Paragon allegedly used to develop and/or store any and all versions/builds of the software at issue in this case." (Declaration of David Kunselman, ECF #198, Ex. A-6, p. 7).

Even assuming that a party has demonstrated discovery of electronically stored information is not readily accessible due to burden or cost, a court may

38

nonetheless order discovery if the likely benefit outweighs the expense considering "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(C)(iii); Thielen v. Buongiorno, 2007 WL 465680 ( W.D. Mich.)  Here, as in Ferron v. Search Cactus, L.L.C., 2008 WL 1902499 (S.D. Ohio), and for much the same cause, the Court concludes there are "qualifying reasons" sufficient to warrant access to a party's computer system. Specifically, Paragon appears to have failed in its duty to preserve information because of pending or reasonably anticipated litigation, Smith v. Howard Johnson Co., 67 Ohio St. 3d 28, 29 (1993); Drawl v. Cornicelli, 124 Ohio App. 3d 562, 566; Nye v. CSX Trans. Inc., 437 F. 3d 556, 569 (6th Cir. 2006), and has not otherwise produced the relevant information.  Ferron v. Search Cactus, LLC, 2008 WL 1902499 *2.  Paragon's computers contain the only available documentary evidence of the code development.  As noted above, the derivation of the DRACI code is a central issue to the determination of copyright infringement.

Accordingly, Automated may inspect Paragon's computers, but subject to the following limitations:

- Automated shall select a qualified and experienced forensic examiner to conduct a forensic examination of Paragon's computers by creating a mirror image of the hard disk drives, email servers and storage drives;

- The examination shall review the mirror image and identify all material which reflects or pertains to the development or storage of any and all versions/builds of the software at issue in this case, as defined in ¶ 3 of Plaintiff Automated Solutions Corporation's First Request for Production of Documents (Declaration of David Kunselman, ECF #198, Ex. A-2);

- The examination shall also identify what, if any, information reflecting or pertaining to the development or storage of any and all the versions/builds of the software at issue was subsequently deleted;

- The forensic examiner shall conduct the examination in confidence and outside the presence of the parties or their attorneys;

- When the forensic examiner has completed his or her examination, he or she shall provide a hard copy of the proposed findings to Paragon's counsel for prior review and shall notify Automated's counsel of the delivery of the hard copy to Paragon's counsel;

- Paragon's counsel shall have ten (10) days from receipt of the hard copy from the forensic examiner to file a motion for protective order preventing disclosure of material;

- If a motion for protective order is not filed by Paragon within ten (10) days of receipt of the hard copy, the findings, or any portion thereof which are not subject to the motion for protective order, shall be delivered by the forensic examiner to counsel for Automated;

- All costs for the forensic examiner shall be borne by Automated;

- The imaging of the computers shall be undertaken no later than 15 September 2008; Paragon shall make its computers available at a mutually agreed upon time; Automated is expected to be considerate in scheduling times that are less inconvenient to Paragon's business;

- The forensic expert shall act as an officer of this Court;

- The forensic expert shall read the Protective Order and sign the Confidentiality Agreement established in this case (ECF #75);

- All discovery pursuant to this examination is subject to and controlled by the Protective Order (ECF #75);

- The parties may work out further details of this examination within the limitations imposed by this Order.

Ferron v. Search Cactus, 2008 WL 1902499 (S.D. Ohio), Thielen v. Buongiorno, 2007 WL 465680 (W.D. Mich.)

Automated is not required by this Order to undertake the forensic examination of Paragon's computers.  However, if Automated decides to go forward with this discovery, Paragon shall comply fully with the inspection.

## IV:    AUTOMATED'S MOTION FOR SUMMARY JUDGMENT ON PARAGON'S COUNTERCLAIM

On 6 October 2005 Paragon filed its Federal Counterclaim.  (ECF #56). Automated filed a Motion to Dismiss Defendant's Counterclaims on 19 December 2005.  (ECF #80). On 6 February 2006 Paragon submitted an Opposition to the Motion to Dismiss (ECF #95), and thereafter Automated filed a Reply Memorandum. (ECF #100). The motion was referred to Magistrate Judge Hemann on 3 March 2006; the Magistrate Judge issued her Report and Recommendation 05 July 2006 (ECF #126). Automated filed Objections to the Magistrate Judge's Report and Recommendation (ECF #141)[8], and Paragon filed a Response to Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (ECF #140).[9]  While Automated's Motion to Dismiss was pending, Automated filed a

_____

[8]    Automated initially filed objections in excess of the page limit, without prior leave of court. (ECF #131). Automated re-filed its objections as ECF #141.

[9]    Paragon subsequently filed another First Amended Counterclaim (ECF #170); Automated also moved to dismiss this Amended Counterclaim (ECF #172),

41

Motion for Summary Judgment on Paragon's Amended Counterclaim (ECF #189),

Paragon filed a Brief in Opposition to the Motion for Summary Judgment. (ECF

#203), and Automated filed a Reply Brief in Support of the Motion for Summary

Judgment (ECF # 206).

This Court ruled on the objections to the Magistrate's Report and

Recommendation (ECF # 207).  The Court granted Automated's motion to dismiss

with respect to Paragon's First Claim for Relief and Third Claim for Relief.

Therefore, in considering this motion for summary judgment, the Court will consider

whether or not Paragon has demonstrated a jury issue regarding the Second,

Fourth, Fifth, Sixth, Seventh and Eighth Claims for Relief.

**A.    Paragon's Second Claim for Relief: Declaratory Judgment of
Copyright Invalidity Based on Fraud on the Copyright Office**

Because of the presumption of copyright validity, a party seeking to establish

a fraud on the Copyright Office bears a "heavy burden." Lennon v. Seamon, 84 F.

Supp 2d 522, 525; 2 Nimmer on Copyright §7.20 (B). The essential elements of the

claim are not well established. All courts agree that the party asserting fraud must

establish factual inaccuracies in the copyright registration which are willful or

deliberate and that the Copyright Office relied upon these misrepresentations in

issuing the copyright. Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d

452,455 (2nd Cir. 1989), Data General Corporation v. Grumman Systems Support

Corporation, 36 F.3d 1147 (1st Cir. 1994), One Treasure Ltd. v. Richardson, 202 Fed.

Appx. 658 (5th Cir. 2006). Some courts require that the party charging fraud allege it

whereupon Paragon filed a Notice of Withdrawal of Counterclaim Filed in Error
(ECF #174) which the Court treated as a Request for Leave to Withdraw
Counterclaim, which it granted (ECF #194).

was prejudiced by the fraud. <u>See Harris v. Emus Records Corp.</u>, 734 F.2d 1329 at 1335 (9th Cir. 1984). Other courts require the presentation of all of the elements of common law fraud, <u>see Kelly v. L. L. Cool J.,</u> 145 F.R.D. 32, 38.n.8. (For discussion of the varying requirements of the courts <u>see Data General Corporation v. Grumman Systems Support Corporation</u>, 36 F.3d 1147, 1161, n. 24 (1st Cir. 1994),  <u>Lennon v. Seaman</u>, 84 F. Supp 2d 522, 526 (S.D. N. Y. 2000)).

The Sixth Circuit has not spoken.  For the purposes of this analysis, the Court will require Paragon to establish a triable issue based on the minimum required showing: (1) intentional factual inaccuracies on the copyright registration, (2) which, if known to the Copyright Office, would have caused the office not to issue the copyright.

### 1.      Alleged Factual Inaccuracies on the Copyright Registration

Paragon argues that Charlotte Carrino, the Tribune and Paragon were improperly omitted from the copyright registration by Automated. There are two manners in which these parties could have been listed on the federal copyright registration, either as an author or as a claimant.  At varying places in its papers, Paragon takes differing positions regarding the proper categorization. (Opposition, ECF #203, pp. 4, 16).  To clarify, the Court will consider each designation and each party in turn to determine if Paragon has raised a triable issue of fact regarding the accuracy of the copyright registration.

### (a)      "Authorship" for Copyright Registration

The right to be listed as an author of a copyrighted work derives from performance of the work of authorship.   As the United States Supreme Court stated, "the author is the party who actually creates the work, that is, the person who

translates an idea into a fixed, tangible expression entitled to copyright protection."
Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989). Thus,"[t]he
contribution must be one of authorship in order to constitute the contributor a joint
author." 1 Nimmer on Copyright § 6.07.

> (I)  *Paragon's and the Tribune's Right to Claim Authorship*

Paragon puts forth no evidence that the Tribune engaged in the actual work of
authoring the SCDS code.  With respect to its own contribution, Paragon asserts that
it provided "capital and services" by hiring  consultant Charlotte Carrino. (Brief in
Opposition, ECF #203, p.4; Affidavit of Giles Manias, ECF #203, ¶ 22; State Trial
Testimony of Larry Laurenzi, President of Paragon, ECF #80, Att. 1).  There are
several reasons such contribution does not create authorship. First, Paragon did not
hire the consultant; rather, Ms.  Carrino was hired as a sub-contractor by a separate
corporate entity, Paragon Consulting, Inc., which is not a party to this action.
(Affidavit of Larry Laurenzi, ECF #203, Ex. B, ¶4; Declaration of Len Bolden, ECF
#189, Ex. D, ¶ 4).  Since Paragon does not contend that the work of Paragon
Consulting, Inc.'s sub-contractor is attributable to Paragon under the "work for hire"
doctrine, Ms. Carrino's contribution to the SCDS code, even if sufficient to create
authorship, does not create authorship in Paragon.  As for the contribution of
"capital," the provision of funds does not create authorship.  Baker v. Robert I.
Lappin Charitable Found., 415 F. Supp. 2d 473, 487 (S.D.N.Y 2006), 1 Nimmer on
Copyright § 6.07.

Thus, Paragon has not set forth sufficient evidence to establish a triable issue
of fact regarding the Tribune's or Paragon's authorship of the SCDS code.

> (ii)  *Proof of Charlotte Carrino's Right to Authorship*

44

Automated argues that testimony in the state trial proceedings, and the statements in the state court appellate decision, establish that Automated is the sole author of the SCDS code. Automated further argues that Ms. Carrino's contribution was done on a "work for hire" basis attributable to Automated. Paragon counters, arguing Ms. Carrino's efforts cannot be classified as "work for hire" and challenging Automated's claim to sole authorship by citing evidence of Ms. Carrino's work on tasks relating to the SCDS code.  Paragon argues that Ms. Carrino, as an independent contractor, is entitled to any ownership interest created by her work, and that since Ms. Carrino did work on the code, she is entitled to be listed as an author of the SCDS code on the federal copyright registration.

In support of its position that it is the sole author, Automated quotes language from testimony in the trial court proceedings showing a concession by Paragon that Automated "did the hard programming."  (Testimony of Larry Laurenzi, President of Paragon, State Trial Transcript, ECF #80, Att. 1, p. 235.) This, and similar deposition testimony by Gerri Boyle of the Tribune, is insufficient to establish sole authorship.

Automated's primary argument is that language in Judge Diane Karpinski's state appellate opinion establishes Automated as the sole author SCDS code.  The Court will not rely upon the statements in Judge Karpinski's opinion in determining authorship in this action.  The issue of authorship under the federal Copyright Act has not been determined by the state court action.

Paragon is correct that Automated cannot claim authorship of Ms. Carrino's work under the" work for hire" doctrine.  Under 17 U.S.C. § 101 a "work made for hire" is either "prepared by an employee within the scope of his or her employment" or one of a statutorily specified set of commissioned works. All parties agree that

45

Ms. Carrino was an independent contractor rather than an employee. (Declaration of Len Bolden, ECF #189, Ex. D, ¶ 5; Opposition, ECF #203, pp.14-16).  While "work for hire" is not limited to formal employment, Gaiman v. McFarlane, 360 F. 3d 644, 650 (7th Cir. 2004), there is nothing in this record to suggest Ms. Carrino was a de facto employee of Paragon Consulting, Inc. Indeed, the evidence is to the contrary since she did not receive benefits. (Affidavit of Larry Laurenzi, ECF #203, Ex. B, ¶ 7). Therefore, no other person or entity can claim authorship based upon any  work performed by Ms. Carrino.

To establish Ms. Carrino's authorship, Paragon quotes deposition testimony from the state court action in which principals of Paragon acknowledge her work on the project. (Opposition, ECF #203, pp. 4, 5).  Paragon also provides copies of some of Ms. Carrino's work status reports reflecting the completion of tasks. (Affidavit of Larry Laurenzi, ECF #203, Ex. B).  However, not all persons who contribute to a work qualify as an author under 17 U.S.C. § 201 (a). So, while this showing is necessary, it is not sufficient to raise a triable issue of fact as to whether or not Ms. Carrino is an author of the SCDS code under the Copyright Act.

To establish joint authorship, a party must demonstrate significant original creative contribution. The weight of authority requires that each party contribute work which would be separately copyrightable.   See Childress v. Taylor, 945 F.2d 500, 506 (2nd Cir. 1991); Ashton-Tate Corp. v. Ross (9th Cir. 1990).

As a consequence of this principle, it is well established that," [t]he creator of a work at another's direction, without contributing intellectual modification, is not an author." JCW Investments, Inc. v. Novelty, Inc., 289 F. Supp 2d 1023, 1032 (N.D. Ill. 2003) (citing Lakedreams v. Taylor, 932 F.2d 1103, 1108 (5th Cir. 1991)). Thus,

46

those who perform mechanical, translation, secretarial, editorial, research or manufacturing tasks do not become authors of the work.  See Lakedreams v. Taylor, id., (upholding authorship, despite variances in final product, upon finding original design created by copyright holder was executed by defendant under author's direction with insufficient creative contribution by defendant); The Kyjen Company, Inc. v. Vo-Toys, Inc., 223 F. Supp. 2d 1065 (C.D. Cal. 2002) (upholding authorship upon finding  that toys generally reflected author's original design, despite showing of computer and language translation and foreign manufacture, since process remained under author's direction and supervision).

Because originality is both a constitutional and statutory requirement for copyright, Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. at 347, under every standard for co-authorship, a party must  make an independent, original contribution to achieve authorship status.  Paragon has put forth no evidence that Ms. Carrino provided any original contribution to the SCDS code.  The only description of her work is of "database administration support" which required "highly technical skills." (Affidavit of Larry Laurenzi, ECF #203, Ex. B, ¶ ¶ 4, 6). Her status reports, appended to the Affidavit of Larry Laurenzi, provide no evidence of independent, creative contribution to the work which would be separately copyrightable.  On the evidence presented, no jury could reasonably find that Ms. Carrino was a co-author of the SCDS code under 17 U.S.C. §201.

(b)    Claimant Status for Copyright Registration

An author may transfer ownership of a copyright in whole or in part.  See

17 U.S.C. §201. Those who obtain ownership rights from an author may be listed on

an application for copyright registration as a copyright claimant.  See 17 U.S.C. §

409.  Paragon argues that Paragon and the Tribune were improperly omitted from

the copyright registration as claimants based on ownership rights in the SCDS code

created in the SDO Agreement and Software License Agreement.  The Court will

consider each party and agreement separately.

*(i)    Paragon's Right to Claimant Status*

This Court has already ruled on Paragon's claim that the SDO Agreement

creates a right for Paragon to be listed as a co-claimant on the copyright registration.

As the Court previously explained, any right which Paragon had under Section 5 of

the SDO Agreement to joint ownership of the copyright ended with the termination of

the SDO Agreement on 16 September 2003. (ECF #207).

Nor does Paragon possess rights to be listed as a claimant based on the

Software License Agreement.  First, the Software License Agreement is not intended

to create or define the rights between Automated and Paragon. The Software

License Agreement  is "made and entered into by and between Automated Solutions

Corporation...and Chicago Tribune Company." (Software License Agreement, ECF #

203, Ex. A, p.1).[10]  The Software License Agreement was plainly for the purpose of

_____

[10]

It is not at all clear Paragon was a party to the Software License Agreement.
While Paragon signed off on the contract, Automated insists Paragon was not
a party to the Software License Agreement and Paragon alleged in the state
court that it was not a party to the contract. (ECF #206, p.8;  State Court
Amended Counterclaim, ECF # 198, Ex. 9, ¶, 34).

48

creating a licensing agreement for the SCDS software with the Tribune.  The Software License Agreement was entered into after the SDO Agreement specifying the rights in the software as between Automated and Paragon; the only reference to ownership is a requirement that the Tribune acknowledge that the software rights are the "joint property of ASC, Paragon Data Systems and the Tribune"–a statement which was true at the time, since under the terms of the SDO Agreement, Automated and Paragon were joint owners of the code.

Second, any rights which Paragon had to the SCDS code under the Software License Agreement were related to the same transaction or occurrence which was the subject of the prior state court proceedings. Indeed, Paragon's Amended Answer and Counterclaims filed in the Court of Common Pleas, Case No. CV-03-511912 attached the Software License Agreement and directly raised the issue of the distribution of rights under the contract. (State Court Amended Counterclaim, ECF # 198, Ex. A-9, ¶¶ 33-42). Moreover, Judge Coyne specifically considered the Software License Agreement, and its impact on ownership. Judge Coyne's Opinion & Order acknowledged the Software License Agreement's recital of joint ownership, but ruled that all of Paragon's rights in the SCDS code terminated on 16 September 2003. (Order & Opinion, ECF #145, Ex. B, Part I, ¶ 5). Thus, Paragon is now barred from litigating the issue of its rights, if any, under the Software License Agreement by both the claim and issue preclusion doctrines of res judicata.

Thus, as a matter of law, Paragon may not assert in this action any claim of a right to be listed on the SCDS code copyright registration which arises from the Software License Agreement.

   *(ii)*  *The Tribune's Right to Claimant Status*

To argue that the Tribune is an owner of the SCDS code eligible for claimant status, Paragon relies upon a single phrase in the Software License Agreement: "the Copyrights, the Software, the Documentation and the Specifications are JOINT property of ASC, Paragon Data Systems, and the TRIBUNE." (Software License Agreement, ECF #203, Ex. A, p.3). This phrase is taken out of context. The full paragraph and the document in which it occurs make plain that Automated is not granting the Tribune full joint ownership rights.  The document considered as a whole creates in the Tribune the ownership rights of a licensee and nothing more.

This excision of rights makes the Tribune ineligible to be listed as a claimant on the copyright registration. Under 37 C.F.R. §202.3, which prescribes conditions for the application to be made for copyright registration, a copyright claimant is either the author of the work or:

> A person or organization that has obtained <u>ownership of all rights</u> under the under the copyright initially belonging to the author.

37 C.F.R. §202.3 (a)(3)(ii) (emphasis added).  Plainly, the Tribune did not receive ownership of all of the author's rights in the Software License Agreement.

To exhaust this issue, there is a footnote to the regulation which suggests one alternative manner to be listed as a claimant: An organization may be listed if it has specifically obtained from the author "the contractual right to claim legal title to the copyright in an application for copyright registration." 37 C.F.R. § 202.3 (a)(3) ii n.1. No such language occurs in the Software License Agreement.

Thus, as a matter of law, the Tribune has no right arising from the Software License Agreement to be listed as a claimant on the SCDS code copyright registration.

50

## 2.      Materiality of the Representations

As set forth fully above, the Court concludes that Paragon has not created a triable issue of fact regarding Paragon's, the Tribune's, or Ms. Carrino's right to be listed as an author or claimant on the copyright registration for the SCDS code.  The failure of this required element alone is sufficient to allow summary judgment in favor of Automated on Paragon's claim for fraud on the Copyright Office.

The Court will also consider the independent issue of whether, even assuming mistaken information was provided, any inaccuracies regarding co-authorship or co-claimants would have caused denial of the copyright.

To succeed in a claim for fraud on the Copyright Office, a party must establish that the information the registrant failed to disclose would have precluded copyright registration. The Cannon Group, Inc. v. Better Bags, Inc., 250 F. Supp 2d 893,898,899 (S.D. Ohio 2003); Data General Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161 (1st Cir. 1994).

The Copyright Office, in considering an application, seeks to identify the work that is to be copyrighted and whether the work is copyrightable. This is a limited inspection and determination. Under the Copyright Act, the Register of Copyrights must register a copyright claim and issue a registration certificate "[w]hen, after examination, the Register...determines that...the material deposited constitutes copyrightable subject matter," 17 U.S.C. § 410 (a).  As the court stated in Gallup. Inc. v. Kenexa Corp.

> Significantly, the Register reviews applications only to determine whether "the material deposited constitutes copyrightable subject matter and [whether] the other legal and formal requirements have been met." 17 U.S. C. § 410 (a); see also 2 Nimmer & Nimmer, §7.21 [A].  In practice, therefore, a

51

> misrepresentation is likely to affect the Register's decision only if
> it concerns the copyrightability of the work. E.g., <u>Whimsicality,
> Inc v. Rubie's Costume Co.</u>, 891 F.2d 452, 456 (2d Cir. 1989)

<u>Gallup. Inc. v. Kenexa Corp.</u>, 149 Fed. Appx. 94 (3rd Cir. 2005).

Consistent with this, the majority of courts who have considered claims predicated on the omission of co-authors have found the issue immaterial.  <u>See</u> <u>Torres-Negron v. J & N. Records, LLC,</u> 504 F.2d 151, 158 (1St Cir. 2007) ("Mistakes such as ...failure to list all co-authors easily qualify as immaterial because the Copyright Office decision to issue a certificate would not be affected by them."); <u>One Treasure Ltd. v. Richardson</u>, 202 Fed. Appx. 658, 660 (5th Cir. 2006).

The Court has considered the countervailing authority cited by Paragon.  In all three cases the opinions, while referencing materiality, do not analyze whether the omitted or misrepresented information would have prevented copyright registration. <u>Zitz v. Pereira</u>, 119 F. Supp. 2d 133 (E.D. N.Y. 1999), aff'd 225 F. 3d 646 (2nd Cir. 2000) (unpublished table opinion); <u>Medforms, Inc. v. Healthcare Management Solutions, Inc. v. Healthcare Management Solutions, Inc.</u>, 290 F.3d 98 (2d. Cir 2002) (relying on <u>Ziti</u>). These cases go beyond the recognized formulation of a fraud on the Copyright Office defense, eliminating the fundamental second element of reliance and causation. This Court will not abandon the required showing and, consistent with more established and well-reasoned precedent, finds the omission of a co-author or claimant immaterial, since the failure to list additional parties would not have changed the Copyright Office's determination of whether the SCDS code was copyrightable.

**B.** **Paragon's Sixth, Seventh and Eighth Claims for Relief: Deceptive Practices and Unjust Enrichment**

Paragon avers federal and state deceptive trade practices (§43 (A) of the Lanham Act, 15 U.S.C. § 1125 (a), O.R.C. §4165.02) as well as unjust enrichment. All three claims are predicated upon Automated's public claim that it holds the exclusive copyright in the SCDS code and the exclusive right to market the SCDS code. (First Amended Counterclaim, ECF #5, ¶ 56-61; Opposition, ECF #203, pp. 22-24).

There are two bases for Automated's claim to hold the exclusive right to market the SCDS code. The first is the state court determination that Paragon lost all rights in the code when it wrongfully terminated the SDO Agreement.

Second, Automated holds a copyright on the SCDS code. As set forth above, Paragon's claim of fraud on the Copyright Office does not raise a jury issue; therefore, there is nothing to overcome the presumptive validity of the copyright.

Both the federal Lanham Act and the Ohio deceptive trade practices statute require misrepresentation or deceptive representation to create liability.  See15 U.S.C. § 1125 (a)(1) ("Any person who...in connection with any goods or services. . .uses any false designation of origin, false or misleading description of fact, or false or misleading representation of fact.."); O.R.C. §4165.02 ("(A) A person engages in a deceptive trade practice when. . .the person. . .(2) causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services,. . . (4) uses deceptive representations. . .(10) disparages the goods. . .of another by false representations of fact.")  Based upon the rights created by the state court ruling and the federal copyright registration,

Automated's claims of exclusive copyright, and the exclusive right to copy, distribute and sell SCDS, are truthful.  Since a claim for either federal or state deceptive practices requires a false statement, and none exists here, summary judgment will be granted in favor of Automated on Paragon's Sixth and Seventh claims.

Paragon further alleges Automated obtained business and earnings from customers or prospective customers of Paragon based upon the representations of copyright and the sole right to distribute SCDS.  This unjust enrichment claim must also be eliminated: Any customers obtained by the truthful representation of Automated's rights did not result in unjust enrichment to Automated. Therefore, the Court will grant Automated's motion for summary judgment with respect to Paragon's Sixth, Seventh and Eighth Claims for Relief.

###    C.    Paragon's Fourth and Fifth Claims for Relief: Copyright Infringement And Abuse of Process

Paragon's claim for abuse of process alleges that the service of a federal subpoena duces tecum on The Plain Dealer on 11 July 2005, for delivery of materials the next day, was undertaken for an ulterior purpose, specifically, to obtain and allow conversion of proprietary and confidential information for Automated's financial gain.  The claim for abuse of process is linked to the DRACI copyright infringement claim, as Paragon contends that the The Plain Dealer's response to the subpoena provided Automated "access," creating a required element for an inferential showing of copying for copyright infringement. Automated has moved for summary judgment on both causes of action arguing that Paragon cannot establish The Plain Dealer production resulted in disclosure of the DRACI code to, or copying of the DRACI code by, Automated.

**1.      The Factual Background of The Plain Dealer Production**

The issue of The Plain Dealer subpoena has already been the subject of multiple filings in this Court. (ECF # 7, 9, 13, 14, 16, 21, 22, 32).   Contrary to the assertions by Paragon in its Opposition, Paragon and its counsel were well aware, for a long period of time, that Automated had served a subpoena upon The Plain Dealer requiring production of the DRACI code.

The following facts, available in the record of this Court, are not in dispute: On 26 April 2005, Automated filed the complaint in the Cuyahoga County Court of Common Pleas which, when removed, became the basis for the instant action. (ECF #21).  On 10 May 2005, while this matter was still pending in state court, Automated served Paragon with a set of interrogatories and request for production of documents; on 17 May 2005, again while this matter was still pending in state court, Automated served The Plain Dealer with a subpoena for documents and a copy of the DRACI software it held under license from Paragon. Id.  Proof of service of the subpoena duces tecum upon The Plain Dealer was docketed in Cuyahoga County Court of Common Pleas on 18 May 2005. (ECF #14, Ex. F).

On 31 May 2005, Paragon removed the state court case to this Court. (ECF #1).  After removal, Paragon requested, and Automated granted, an extension of time to respond to the discovery requests until 10 July 2005. (ECF # 32, Ex. C). On 2 June 2005, The Plain Dealer requested, and Automated granted, an extension of time to respond to the subpoena. (ECF #32, Ex. B). The Plain Dealer received an extension through 29 June 2005. Id.

On 8 July 2005, more than a week after expiration of its extension of time to respond to Automated's subpoena – and almost two months after the subpoena was

55

served – Neil Rosenhouse, counsel for The Plain Dealer, contacted counsel for

Paragon asking if Paragon had yet filed a motion to quash to subpoena:

> Though I have been hearing for weeks that your firm will be filing
> a motion to quash the subpoena to the Plain Dealer in the
> Automated Solutions v. Paragon Data Systems case, I have yet
> to receive a copy of the filed motion.  At this point, unless your
> motion has already been filed, The Plain Dealer has no choice
> but to honor the subpoena it has received.  If you have already
> filed such a motion, please fax it to me immediately at the
> number below.

(ECF #32, Ex. D).

Thomas Fitzgerald of Gallagher Sharp responded to Mr. Rosenhouse stating

Paragon's position that  because of the removal to federal court, the subpoena

issued by the state court was invalid, and discovery could not proceed until the

parties had conferred pursuant to Fed. R. Civ. P. 26 (d). Id.

Mr. Rosenhouse requested counsel for Automated arrange for issuance of a

federal subpoena. Drew Carson, on behalf of Automated, agreed to do so, while

reserving Automated's position that the original subpoena was valid and The Plain

Dealer's response to the subpoena overdue. (ECF #21, p. 3).  The subpoena issued

on 11 July 2005, requiring production by overnight mail on 12 July 2005. Id.

On the morning of 12 July, Mr. Fitzgerald learned that The Plain Dealer

materials had been sent out by overnight mail and were to be produced on that

morning.  Mr. Fitzgerald contacted counsel for Automated at 11:00 a.m. and

informed them of Paragon's intention to file an emergency motion to prevent any

Automated representative, including counsel, from reviewing, copying or

disseminating The Plain Dealer materials. (Affidavit of Timothy J. Fitzgerald,

ECF #13, Ex. B). To avoid the necessity of an emergency hearing, the parties

entered into a Joint Stipulation Asking the Court Take Custody of All Materials and

Documents Produced in Response to Subpoena Duces Tecum Served Upon The

Plain Dealer Publishing Co. ("Joint Stipulation regarding custody") (ECF #9).

Paragraph 4 of the Joint Stipulation regarding custody states:

> Counsel for plaintiff, Drew A. Carson, hereby represents that the
> package containing the materials and documents from the Plain
> Dealer was  received in his office on the morning of July 12,
> 2005, via overnight mail, and that the box containing those
> materials was opened.  Mr. Carson has represented to counsel
> for PDS [Paragon] that the materials and documents have not
> been disseminated to anyone else (including the plaintiff and its
> representatives) and that all documents and materials produced
> by the Plain Dealer (as well as any copies, both paper and
> electronic) have been placed back into the box in which the
> originals were received and that the box has been sealed shut
> with tape.

Joint Stipulation regarding custody, ECF #9, ¶ 4.

Counsel for Paragon represented it would file a motion to quash and both

parties agreed to have the Court take custody and control of the box pending the

outcome of the hearing.  Id. Drew Carson signed the Joint Stipulation regarding

custody for Automated and Thomas Fitzgerald signed for Paragon.  Id at 5.

### 2.    "Access" for Proof of Copying

"[W]here there is no direct evidence of copying, a plaintiff may establish 'an

inference of copying by showing (1) access to the allegedly-infringed work by the

defendant(s) and (2) a substantial similarity between the two works at issue.'" Kohus

v. Mariol, 328 F.3d 848, 853-854 (6th Cir. 2003) quoting Ellis v. Diffie, 177 F.3d 503,

506 (6th Cir. 1999); see also Murray Hill Publications. Inc. v. Twentieth Century Fox

Film Corporation, 361 F.3d 312, 316 (6th Cir. 2004).  In this case, Paragon does not

allege direct evidence of copying.  Paragon argues, rather, that The Plain Dealer

production created "access" supporting an inference of copying and consequent exploitation of confidential, privileged material.

"[A]ccess may not be inferred through mere speculation or conjecture." Ellis v. Diffie, 177 F. 3d 503, 506 (6th Cir. 1999), quoting 4 Nimmer § 13.02 [A]. As the Sixth Circuit explained in Murray Hill:

> "A mere assertion of access, unsupported by probative evidence is inadequate."  "Nor is a 'bare possibility' of access sufficient. A plaintiff must establish that defendant(s) had a 'reasonable' possibility to view plaintiff's work."

Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corporation, at 316. Citation omitted.  In fact, "plaintiffs must show 'significant, affirmative and probative evidence' of a chain of access to survive a summary judgment motion by the defendants."  Raum v. Norwood, 93 Fed. Appx. 693, 696, quoting Tisi v. Patrick, 97 F. Supp. 2d 539, 547 (S.D. N. Y 2000).

Paragon has not shown "'significant, affirmative and probative evidence' of a chain of access."  Paragon has shown only that the DRACI code was produced by The Plain Dealer to Goodman Weiss Miller.  Paragon has made no showing that counsel for Automated viewed the code or copied the DRACI code on 12 July 2005, or that anyone from Automated viewed or copied the DRACI code on 12 July 2005. The Affidavit of Larry Laurenzi, which states  that a copy "could have been produced in a matter of minutes" establishes nothing.

While the Sixth Circuit has cited with approval the general proposition that evidence that a third party with whom both plaintiff and defendant were dealing had possession of plaintiff's work may be sufficient to establish access by the defendant, Winfield Collection, Ltd. v. Gemmy Industries, Corp., 147 Fed. Appx. 547 663 (6th Cir

58

2005), Paragon has identified no apposite case applying this rule in this circuit, or anywhere.

The facts of the instant case are highly unusual: the third party who received possession of the work is an attorney, who received the work as a consequence of a subpoena duces tecum, and, on the day of production, delivered the material to the court in a sealed box for custody accompanied by a stipulated representation that no one had viewed or copied the material.  As such, there is a representation by an officer of the court, based on personal knowledge, that no disclosure of the work had been made to the party accused of infringement.

The "chain of access" demonstrated by Paragon stops at counsel for Automated; there is not a shred of evidence the material produced by The Plain Dealer was shown to or copied by Automated.  Paragon's speculation is not enough to establish a material issue.

This Court will specify that Paragon has not established a genuine issue of fact regarding Automated's access to the copyrighted material as a result of The Plain Dealer's  production of the code pursuant to subpoena duces tecum.  Pursuant to  Fed. R. Civ. P. 56(d)(1), this issue is established against Paragon in this action.

### 3.      Paragon's Count Five: Abuse of Process

Paragon states that Automated abused federal process by failing to give prior or contemporaneous notice of the issuance subpoena and issuing the subpoena prior to the Local Rule 26(f) planning conference. Paragon argues there is "clearly an inference" that Automated was trying to obtain the DRACI code before Paragon had an opportunity to act. (Opposition, ECF #203, p. 21).

59

There are two responses to this.  First, Paragon had been aware of the subpoena duces tecum requiring production of the DRACI code for almost two months. If Paragon was truly alarmed by the possibility of the production of the code, there was an obvious way to ensure it would not be produced: a motion to quash. Paragon did not bring a motion to quash, even after being advised by counsel for The Plain Dealer that in the absence of a motion, The Plain Dealer would produce the code. Second, Paragon has already argued the issue of Automated counsel's conduct in relation to this production before this Court.  In an Order dated 9 November 2005 this Court stated: "Upon review of the correspondence and affidavits submitted to this Court in support of and in opposition to Paragon's motion for sanctions, it is clear that Automated engaged in no conduct which would justify an award of sanctions in favor of Paragon."  (ECF #65).

Finally, a cause of action for abuse of process must show that the process has been used for an illegitimate end.  Heck v. Humphrey, 512 U.S. 477, 486, n 5 (1994).  The illegitimate end Paragon has relied upon is Automated's conversion of confidential material obtained in response to the subpoena.  Since, as set forth above, this Court has found that The Plain Dealer production did not result in Automated gaining access to confidential material, the abuse of process claim fails. This Court will grant Automated's motion for summary judgment on Paragon's Fifth Count for Abuse of Process.

### 4.    Paragon's Count Four: Copyright Infringement DRACI

As Paragon correctly notes in its Opposition, a finding that Automated did not obtain access to DRACI through The Plain Dealer production does not allow entry of summary judgment against Paragon on the issue of copyright infringement.  Instead,

the effect of the finding is that, unless Paragon establishes Automated had alternate

access to the DRACI code, Paragon will be required to prove a higher level of

similarity between DRACI and any SCDS code which it claims infringes the DRACI

copyright.  As the Sixth Circuit explained in Murray Hill Publications, Inc. v. Twentieth

Century Fox Film Corporation, 361 F.3d 312 (6th Cir. 2004):

> Where the plaintiff cannot prove access, the copyright infringement claim can
> still succeed, but only by proof of a higher level of similarity than merely
> substantial. See Ellis v. Diffie, 177 F.3d 503 at 507 (noting that '[s]ome case
> law indicates that the stronger the similarity between the two works in
> question, the less compelling the proof of access needs to be" (citing Nimmer
> § 13.02 [B])).  The quantum of similarity that will substitute for proof of access
> is "striking similarity." Such striking similarity "preclude[s] the possibility of
> independent creation. " Glanzmann v. King, 8 U.S. P. Q 2d 1594 at 1595
> [citation omitted]. Of course, even in a striking similarity case, "[a]bsent
> copying, there can be no infringement." Mazer v. Stein, 347 U. S. 20, 218
> (1954). However, striking similarity carries the burdens of proof that the
> infringing work is sufficient (sic) similar as to intrude into the copyrighted
> work's protection and that the defendant must have had access to the
> copyrighted work, even if the plaintiff can provide no extrinsic proof of that
> fact.

Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corporation, at 317. See

also Sherman v. Jones, 457 F. Supp 2d 793, 799 (E.D. Mich. 2006). This Court will

enter an Order reflecting the requirement of an enhanced level of proof predicated

upon an absence of access.

## V. Conclusion

### The First Amended Complaint

Based on the foregoing discussion, and pursuant to Fed. R. Civ. P. 56(1) this

Court specifies the following regarding the claims asserted by Automated in the First

Amended Complaint (ECF #5) :

(1)     In the prior state court action, Cuyahoga County Court of Common

Pleas CV-03-511012 (the "prior state action"), Paragon was found to be a joint

owner of the SCDS code until 16 September 2003. Paragon therefore lawfully possesses SCDS code obtained from Automated prior to 16 September 2003 and Automated may not recover possession of such code upon a theory of conversion.

(2)     The rulings in the prior state action did not rescind or authorize rescission of  the SDO Agreement between the parties.

(3)     Automated may not recover in this action on any claim against Paragon predicated upon either rescission or breach of the SDO Agreement.

(4)     Paragon's copying, on or about 15 March 2005, of SCDS code delivered by Automated to Paragon pursuant to the terms of the SDO Agreement, which copying was only for the purpose of obtaining counsel's expert opinion regarding copyright infringement, is "fair use."

(5)     Paragon's motion for summary judgment on issues regarding DRACI's infringement of the SCDS copyright is denied and discovery shall be opened  to require and allow the following:

(a)     To require Paragon to make supplemental responses to Automated's Requests for Productions Nos. 2, 3, 4, 5. (Declaration of David Kunselman, ECF #198, Ex. A-2). These responses shall be signed by the client under penalty of perjury and shall identify, for each request, the documents or other material produced in response to the request.  If the material has already been produced, and Paragon does not wish to produce it again, the material may be referenced by Bates number.  If no documents or material are produced in response to a given request, the response must so state.  The

62

supplemental response shall be due thirty (30) days after entry of this Order.

(b)    To allow Automated to inspect Paragon's computers, under the following limitations:

- Automated shall select a qualified and experienced forensic examiner to conduct a forensic examination of Paragon's computers by creating a mirror image of the hard disk drives, email servers and storage drives;

- The examination shall review the mirror image and identify all material which reflects or pertains to the development or storage of any and all versions/builds of the software at issue in this case, as defined in ¶ 3 of Plaintiff Automated Solutions Corporation's First Request for Production of Documents (Declaration of David Kunselman, ECF #198, Ex. A-2);

- The examination shall also identify what, if any, information reflecting or pertaining to the development or storage of any and all the versions/builds of the software at issue was subsequently deleted;

- The forensic examiner shall conduct the examination in confidence and outside the presence of the parties or their attorneys;

- When the forensic examiner has completed his or her examination, he or she shall provide a hard copy of the proposed findings to Paragon's counsel for prior review and shall notify Automated's counsel of the delivery of the hard copy to Paragon's counsel;

- Paragon's counsel shall have ten (10) days from receipt of the hard copy from the forensic examiner to file a motion for protective order preventing disclosure of material;

- If a motion for protective order is not filed by Paragon within ten (10) days of receipt of the hard copy, the findings, or any portion thereof which are not subject to the motion for protective order, shall be delivered by the forensic examiner to counsel for Automated;

- All costs for the forensic examiner shall be borne by Automated;

- The imaging of the computers shall be undertaken no later than 15 September 2008; Paragon shall make its computers available at a mutually agreed upon time; Automated is expected to be considerate in scheduling times that are less inconvenient to Paragon's business;

- The forensic expert shall act as an officer of this Court;

- The forensic expert shall read the Protective Order and sign the Confidentiality Agreement established in this case (ECF #75);

- All discovery pursuant to this examination is subject to and controlled by the Protective Order (ECF #75);

- The parties may work out further details of this examination within the limitations imposed by this order.

### The First Amended Counterclaim

Further based on the foregoing discussion, this Court grants summary judgment in favor of Automated and against Paragon on the Second, Fifth, Sixth, Seventh and Eighth Claims for Relief in the First Amended Counterclaim (ECF #56).

Pursuant to Fed. R. Civ. P. 56(d)(1) this Court specifies the following regarding the claims asserted by Paragon in the Fourth Claim for Relief for Copyright Infringement of DRACI: Paragon has not established a triable issue of fact regarding

64

Automated's access to the copyrighted material as a result of The Plain Dealer's production of the code pursuant to subpoena duces tecum.  It is established against Paragon in this action that the production of the DRACI code by The Plain Dealer to counsel for Automated pursuant to subpoena duces tecum did not create access by Automated to the copyrighted  DRACI code for the purposes of a copyright infringement action.  Unless Paragon establishes alternate access, Paragon must meet the higher proof of similarity standard of "striking similarity" sufficient to "preclude the possibility of independent creation" in order to establish copyright infringement of the DRACI code. Murray Hill Publications, Inc. v. Twentieth Century Fox Film, 361 F. 3d 312, 317 (6th Cir. 2004), quoting Glanzmann v. King, 8 U.S. P. Q 2d 1594, 1595 (E.D.  Mich. 1988).


IT IS SO ORDERED.

/s/Lesley Wells_____
UNITED STATES DISTRICT JUDGE


Dated: 27 June 2008