IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AUTOMATED SOLUTIONS CORPORATION, | ) | CASE NO. 1:05 CV 1519 |
| | ) | |
| | ) | JUDGE LESLEY WELLS |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| PARAGON DATA SYSTEMS, INC. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] in this matter involving a claim of copyright infringement[2] is a motion for summary judgment, including supporting exhibits,[3] filed by defendant Paragon Data Systems, Inc. (Paragon). Plaintiff Automated Solutions Corporation (ASC) has filed, under seal, its opposition to the motion, including exhibits.[4] Paragon, in turn, has replied to that opposition.[5]

For the reasons that follow, I recommend that Paragon's motion be granted in part and denied in part.

---

[1] ECF # 303.

[2] ECF # 5.

[3] ECF # 315.

[4] ECF # 316.

[5] ECF # 318.

## Facts

**A.     Overview**

Recommending an adjudication of the present motion requires that the recommendation be properly set within the context of the larger proceedings.[6] That context, in turn, involves understanding a matter which ranges over related state court proceedings as well as more than 300 filings submitted in this case since May of 2005 to four separate federal judicial officers by – at one time or another – nearly 30 attorneys and was described by United States District Judge Lesley Wells as "this contentious and long-standing copyright infringement matter."[7] Accordingly, I will here make no attempt at extensive detailing (which has already substantially been set forth in an exhaustive earlier order by Judge Wells)[8] but will seek to present only the necessarily relevant facts to the motion.

**B.     Original relationship between ASC and Paragon/first state court action**

Essentially, as noted in Judge Wells' prior order, this case arises from a 2001 agreement between ASC and Paragon to jointly develop, own, and license Single Copy Distribution System (SCDS) computer software for use by the Chicago Tribune.[9] However,

---

[6] I also note that the present motion is being adjudicated separately from and simultaneous to consideration of a motion for sanctions filed by ASC (ECF # 309), which motion is also part of the referral. *See*, ECF # 303. The report and recommendation on the motion for sanctions is filed separately and contemporaneously.

[7] ECF # 274 at 1.

[8] ECF # 214.

[9] *Id*. at 5-6.

-2-

disputes soon arose between the parties and, "[a]midst a deteriorating relationship," the parties executed a letter agreement in 2002 which provided, among other things, that ASC was to provide Paragon with the unencrypted source code for the SCDS software by January of 2003.[10] In September, 2003, after Paragon complained that ASC had not provided either encrypted or non-encrypted code according the agreement, Paragon terminated the contract between the parties.[11]

As a result of Paragon's action, ASC promptly filed a multi-count complaint against Paragon in state court.[12] By agreement, the parties partially dismissed large portions of the complaint, waived a jury, and went to trial before the court on a single count of the complaint.[13] That count sought an order declaring that: (1) ASC has no further obligations to Paragon under the prior agreements; (2) ASC is the sole owner of the SCDS software at issue; and (3) Paragon is enjoined from interfering with that ownership and with ASC's actual and prospective business relationships.[14] In a series of findings in February, 2005, the state court trial judge determined that: (1) despite a  "tumultuous relationship," the parties were joint owners of the software and the computer code for that software until Paragon "unilaterally" terminated the contract on September 16, 2003; and (2) since that termination

---

[10] *Id.* at 10.

[11] *Id*. at 10-11.

[12] *Id*. at 11.

[13] *Id*.

[14] *Id*.

by Paragon, the "exclusive and complete" ownership of the software code, including all modifications to the code made since September 16, 2003, belongs to ASC.[15]

## C.    Present action/federal case discovery

Immediately, ASC, through counsel, demanded that Paragon return copies of the computer code and obtained federal copyright registration of the code.[16] Paragon refused to return the code.[17] It also appealed the decision of the state trial judge.[18] Upon review, the Ohio appeals court in July, 2006, affirmed the judgment of the trial court.[19]

While the state appeal was pending, ASC filed the present action in state court against Paragon, which filed an answer and counterclaim.[20] After that action was removed to this Court, a series of motions were then filed, including cross motions for partial summary judgment by each party.[21] Substantial discovery disputes arising from those motions then ensued, which disputes, in turn, were referred to United States Magistrate Judge Patricia Hemann for a report and recommendation as to resolution.[22]

---

[15] *Id*. at 14-15.

[16] *Id*. at 15.

[17] *Id*.

[18] *Id*.

[19] *Id*. at 16-17.

[20] *Id*. at 17-19.

[21] *Id*. at 19-20.

[22] *Id.* at 33.

ASC argued to Magistrate Judge Hemann that Paragon had failed or refused to produce any documents related to Paragon's development in 2004 and 2005 of a computer code for its Delivery, Return and Collection Information (DRACI) software – a product Paragon developed and sold to the Plain Dealer and that ASC contended was derived from the SCDS code it owns by virtue of the state court judgment.[23] Paragon, for its part, asserted to Magistrate Judge Hemann that there were no copies of the DRACI code other than those already provided to ASC and that development of the code for DRACI did not begin until 2005.[24]

As Judge Wells noted, Paragon was thus able to successfully resist ASC's request to compel additional discovery that ASC maintained might have revealed more details about the development of DRACI.[25] However, as Judge Wells also noted, Magistrate Judge Hemann's decision left open the possibility of authorizing additional discovery in the future on ASC's claims of spoilation.[26]

## D.    Judge Wells' order/spoliation claim

To that end, Judge Wells, *inter alia*, converted a portion of ASC's then-pending motion for partial summary judgment into a Rule 56(f) opposition to Paragon's motion for partial summary judgment and a motion to authorize additional discovery on the "contentions

---

[23] *Id*. at 33.

[24] *Id.* at 34.

[25] *Id*.

[26] *Id*.

and issues regarding the derivation of the DRACI code." While Judge Wells observed that counsel for Paragon had made "limited representations" to Magistrate Judge Hemann concerning how the DRACI code came to be produced, Judge Wells concluded, after consideration of evidence provided by ASC, that those representations were "insufficient."[27]

Specifically, Judge Wells stated that a "key question in this litigation is whether the DRACI code is derived from SCDS, and [that] this question can only be answered if the developmental materials for DRACI are provided by Paragon."[28] Accordingly, Judge Wells ordered that additional discovery be conducted.[29]

## E.    Paragon's motion for summary judgment

After discovery was conducted under terms of that order, ASC sought sanctions against Paragon on grounds arising from the discovery.[30] While that motion, as well as a motion for partial summary judgment filed by Paragon,[31] were pending, this matter was referred to me in March, 2011, for the purpose of hearing any dispositive motions.[32] Upon receiving the referral, I convened a status conference.[33] As a consequence of that conference,

---

[27] *Id*. at 36.

[28] *Id*.

[29] *Id*. at 37.

[30] ECF # 270.

[31] ECF # 137.

[32] ECF # 303.

[33] ECF # 306.

among other things, Paragon's previous motion for partial summary judgment[34] was denied without prejudice to it being refiled as a motion for summary judgment as to all remaining claims, and ASC was granted leave to refile its prior motion for sanctions[35] as a motion for default judgment.[36]

Pursuant to my order, the parties have filed the motions indicated above.[37]

### 1.    *Paragon's argument*

Paragon in its present motion for summary judgment initially states that ASC asserts two major bases for relief in the amended complaint. First, Paragon states, ASC raises federal claims that Paragon's DRACI software unlawfully infringes its copyright for the SCDS software and that the sale of DRACI violates the Lanham Act by creating confusion in the marketplace.[38] In addition, Paragon notes, ASC asserts that Paragon's sale of DRACI also raises state law claims for tortious interference with business relationships, unjust enrichment, and unfair competition.[39]

---

[34] ECF # 137.

[35] ECF # 270.

[36] ECF # 306.

[37] ECF # 309 (motion for sanctions/default judgment); ECF # 315 (motion for summary judgment).

[38] ECF # 315 at 3.

[39] *Id*.

Paragon then contends that all the above claims are contingent upon ASC showing "that the DRACI software infringes upon the SCDS copyright, or that DRACI was copied from, or is substantially similar to SCDS."[40] Paragon argues that it can show that there is no similarity between the two systems and that, therefore, it is entitled to summary judgment on all claims.[41] In particular, Paragon offers the report and affidavit of David Brumbaugh, technical principal at Boundless Flight, Inc., to state that, because under eight observable criteria, DRACI is not substantially similar to SCDS, it is "impossible for any reasonably competent technical observer to think that DRACI was copied from SCDS."[42]

## 2.    *ASC's response*

ASC, in a sealed filing, opposes Paragon's motion for summary judgment.[43] First, ASC disputes the assertion that the case can be reduced to the single fact issue of whether Paragon's DRACI software program was derived from ASC's SCDS software.[44] Rather, it argues, the case involves "multiple discrete infringement's on ASC's copyrights" by Paragon, as well as the issues of Paragon's "utter failure to produce DRACI development

---

[40] *Id*. at 4.

[41] *Id*.

[42] *Id*. at 7 (quoting declaration of David Brumbaugh, ECF # 315, Ex. 1 at 6).

[43] ECF # 316.

[44] *Id*. at 6.

materials and other versions of DRACI known to exist"[45] and the matters related to the Lanham Act claim of false and misleading sales and marketing practices.[46]

In addition, as to the copyright infringement claim itself, ASC raises two arguments: (1) that, in addition to any similarity between DRACI and SCDS, there are other distinct acts of copying that could support a finding of infringement and so preclude summary judgment on a finding that DRACI is not similar to SCDS; and (2) that the expert testimony of Dr. Wolfgang Pelz, emeritus professor of computer science at the University of Akron, establishes that Paragon's DRACI computer code is "substantially similar" to the original aspects of ASC's SCDS code.[47]

### 3.    *Paragon's reply*

In its reply, Paragon initially reiterates the argument that all of ASC's claims asserted in the complaint "are predicated upon the allegation that DRACI is derived from SCDS. If Automated cannot prove [this], then all of its claims must fail."[48] In that regard, Paragon then contends that since the Pelz declaration rests on an allegedly faulty factual premise, that declaration – which Paragon states is the only "proper Rule 56 evidence [from ASC] in support of its position on [copying and similarity]" – is "entirely irrelevant to the issue of

---

[45] *Id.*

[46] *Id.* at 10.

[47] *Id.* at 22 (citing affidavit of Dr. Wolfgang Pelz, ECF # 316, Ex. 1 at ¶¶ 13-17, 19-22, and 28).

[48] ECF # 318 at 5.

whether DRACI was derived from SCDS," and so cannot create an issue of fact in that regard.[49]

In addition, Paragon then claims that ASC is now "attempting to recast the [infringement] claims in its complaint" from the single claim that Paragon improperly developed, marketed, and sold DRACI to the Plain Dealer in 2004[50] to include instances of Paragon's use of the SCDS code that occurred while the parties were still litigating ownership of that code in state court prior to that court's rulings in 2005.[51] Paragon, *inter alia*, maintains that such arguments are precluded by "law of the case" rulings by Magistrate Judge Hemann to which ASC did not object, and by *res judicata* because they could have been raised, but weren't, in the state court proceedings.[52] Paragon further argues, for the first time in the reply brief, that all the non-infringement claims should be decided in its favor as a consequence of *res judicata*.[53]

**F.    Summary**

After setting forth the applicable law, I will discuss the arguments mentioned above in greater detail and then recommend that Paragon's motion for summary judgment be granted in part and denied in part. I will discuss first the copyright infringement claim and

---

[49] *Id.*

[50] *See*, ECF # 214 (Judge Wells' opinion of June 27, 2008) at 35-36.

[51] ECF # 318 at 6-7.

[52] *Id*.

[53] *Id*. at 8-13.

then address the non-infringement claims, with particular attention in that regard to the propriety and implications of seeking to raise new arguments in a summary judgment reply brief.

## Analysis

**A.**   **Applicable law**

*1.*   ***Summary judgment***

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[54] The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[55]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[56] Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[54] Fed. R. Civ. P. 56(c).

[55] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[56] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

evidentiary standards.[57] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[58]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[59] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[60] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[61]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[62] However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[63]

---

[57] *Id.* at 252.

[58] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[59] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[60] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[61] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[62] *Id.* at 252.

[63] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[64] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[65] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[66]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[67] Rule 56(e) also has certain, more specific requirements:

> [It] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

---

[64] *Anderson*, 477 U.S. at 256.

[65] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[66] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[67] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

> Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[68]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect.  The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[69]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[70] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[71] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[72]

---

[68] *Id.* at 225-26 (citations omitted).

[69] *Id.* at 226 (citations omitted).

[70] *Anderson*, 477 U.S. at 248.

[71] *Id.* at 249.

[72] *Id.*

In sum, proper summary judgment analysis entails:

[T]he threshold inquiry of determining whether there is the need for a trial –
whether, in other words, there are any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably be resolved
in favor of either party.[73]

## 2.    *Copyright infringement*

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original.[74] Those two

areas will be addressed separately.

### a.    *The existence of a valid copyright*

The first element requires courts to consider the "copyrightability" of the work.[75]

Essentially, this step requires that the court, in turn, address two concepts: originality and the

fact that a copyright only protects the expression of ideas, not the ideas themselves.[76]

Originality, as that term is used in copyright law, "means only that the work was

independently created by the author (as opposed to copied from some other works) and that

it possesses at least some minimal degree of creativity. To be sure, the requisite degree of

---

[73] *Id.* at 250.

[74] *Feist Publ'ns, Inv. v. Rural Te. Serv. Co.*, 499 U.S. 340, 361 (1991).

[75] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 538-39
(6th Cir. 2004).

[76] *Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*, 348 F. Supp. 2d 845, 853 (E.D. Mich.
2004).

creativity is extremely low; even a slight amount will suffice."[77] As to distinguishing between a non-protectable idea and a protected expression of an idea, courts recognize that a bright-line test is not possible but, rather, have developed a series of mechanisms by which a work at issue can be located on the spectrum between idea and expression in order to ascertain if it is protected or not.[78]

In that regard, the "merger doctrine" recognizes that when there is essentially only one way to express an idea, the idea and its expression become merged; therefore, copyrighting the expression will not be allowed on the grounds that it would be an impermissible copyrighting of the idea itself.[79] This doctrine has been invoked, for example, to preclude copyright protection for a map showing the location of a proposed pipeline[80] and to preclude protection for instructions for a sweepstakes contest.[81]

---

[77] *Feist*, 499 U.S. at 345.

[78] *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 319 (6th Cir. 2004).

[79] *See, Kohus v. Mariol*, 328 F.3d 848, 856 (6th Cir. 2003). The Sixth Circuit in *Kohus* analyzed the merger doctrine as part of a discussion of the substantial similarity defense.

[80] *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458, 1464-65 (5th Cir. 1990). Because a map was the only way to express the idea of the location of the pipeline, the idea and the expression of the idea merged such that the maps were not subject to copyright protection.

[81] *Morrisey v. Proctor & Gamble Co.*, 379 F.2d 675, 678-79 (1st Cir. 1967). Where the subject matter is very narrow and thus necessarily requires only at best a limited number of forms of expression, to permit one party to copyright those forms would foreclose all possibilities of future use of such necessary forms by others.

Similarly, none of the elements dictated by necessity or function can be copyrighted.[82] Relatedly, the "scenes a faire" doctrine precludes copyright protection for "scenes" that "must be done" within a given work.[83] In the computer software context, this doctrine, as applied by the Sixth Circuit in *Lexmark*, means that:

> [T]he elements of a program dictated by practical realities – *e.g*., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices – may not obtain protection.[84]

*b.* *Copying*

As the Sixth Circuit recently stated in *R.C. Olmstead, Inc. v. CU Interface LLC*,[85] a plaintiff can show copying by two ways, either through direct evidence of copying or by indirect.[86]

In the first instance, even where there is direct evidence of copying, such evidence is not sufficient of itself to prove infringement. As the courts have clearly stated, "it is axiomatic that '[n]ot all copying is actionable.'"[87] Rather, as was discussed above, copyright

---

[82] *Kohus*, 328 F.3d at 856.

[83] *Lexmark*, 387 F.3d at 534.

[84] *Id*.

[85] *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010) (rehearing and rehearing *en banc* denied).

[86] *Id*. at 274 (citing *Kohus*, 328 F.3d at 853-54).

[87] *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 890 (N.D. Ohio 2009) (quoting Kohus, 328 F.3d at 853).

only protects from copying that which is original and protectable. Thus, even when a plaintiff can provide direct evidence that a defendant copied its work, if that plaintiff cannot also establish that the copied elements were "original protectable constituent elements" of its work, it "cannot recover under a direct evidence theory of copyright infringement."[88]

Where there is no direct evidence of copying, "a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'"[89]

As the court in *Lexis/Nexis* explained, in establishing the inference of copying there is first a factual question of whether the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration.[90] If the answer is "yes," then it may be concluded that, as a factual proposition, copying may have occurred. But "the question still remains at this step of the analysis of whether such copying is actionable."[91]

As the recent Sixth Circuit opinion in *R.C. Olmstead, Inc*. makes clear, the analysis required to determine if any copying is actionable requires that the court employ a two-step approach: first, it must "'identify and eliminate those elements [in the copyrighted work] that

---

[88] *Id.* at 893.

[89] *R.C. Olmstead*, 606 F.3d at 274 (quoting *Kohus*, 328 F.3d at 853-54 (quoting *Ellis v. Duffie*, 177 F.3d 503, 506 (6th Cir. 1999)).

[90] *Id*.

[91] *Id*.

-18-

are unoriginal and therefore unprotected,'"[92] and then it "asks whether the second [or copied] work involves elements that are substantially similar to the protected elements of the original work."[93]

Thus, a plaintiff alleging copyright infringement of computer software under either a theory of direct copying or by an inference of copying must initially "identify those elements of its software that are original" and thus entitled to protection, thereby filtering out those elements of the purportedly copied software "that would be expected to be common to any [industry] software, those dictated by the particular business practices [of that industry]."[94]

Failure of a plaintiff to provide sufficient evidence on summary judgment for the court to determine precisely what elements of the plaintiff's software were protected and what other elements would be expected to be common to any software for that industry will result in the granting of a motion for summary judgment by the defendant on the grounds that no triable issue of fact exists as to whether the defendant infringed the copyright by copying such protected elements.[95]

---

[92] *R.C. Olmstead*, 606 F.3d at 274 (quoting *Kohus*, 328 F.3d at 853).

[93] *Id.* at 275 (citing *Kohus*, 328 F.3d at 855).

[94] *Id.*

[95] *Id.* at 275-76.

**B.    Application of standards – Paragon's motion for summary judgment should be granted in part as to the federal copyright infringement claim(s).**

I note initially that despite a published decision in March, 2009, by United States District Judge Sara Lioi in the matter of *R.C. Olmstead, Inc. v. CU Interface, LLC*,[96] – a decision that was later affirmed by the Sixth Circuit in 2010[97] and which is highly analogous to the present motion – neither party, in all the extensive argumentative briefings, cited this Court to that authority[98] nor framed its arguments with reference thereto. Such a conspicuous failing by both sides made resolution of this matter more time-consuming and cumbersome than it needed to be.

That said, and using Judge Lioi's opinion in *R.C. Olmstead* as a template, I recommend finding that Paragon is entitled to summary judgment in part as to the Federal copyright infringement claim. In essence, I recommend finding that ASC has not presented sufficient admissible evidence from which a jury issue would exist as to whether Paragon impermissibly copied original, protected elements of ASC's SCDS software.

I note first that ASC argues that evidence exists to support both: (1) a finding from direct evidence that Paragon copied ASC's SCDS code, and (2) that an inference may be

---

[96] *R.C. Olmstead*, 657 F. Supp. 2d 878.

[97] *R.C. Olmstead*, 606 F.3d 262 (rehearing and rehearing en banc denied).

[98] I note that Paragon does make a single citation to the district court opinion in *R.C. Olmstead* in its brief in opposition to ASC's motion for sanctions. *See*, ECF # 311 at 20.

drawn from (a) Paragon's access to the code, and (b) a resulting substantial similarity between ASC's work and Paragon's that Paragon copied the code.[99]

As regards direct evidence of copying, ASC points to Paragon's purported admissions that it copied the SCDS code on multiple occasions after September 16, 2003, and the report of a private investigator who witnessed Paragon demonstrating a program at an industry trade show "which appeared to be identical" to ASC's software.[100] As to the argument that copying may be inferred by access and inference, ASC relies on: (1) work purportedly documented in reports by Paragon employee Brent Anderson; (2) a computer file created by Paragon in 2004 that purportedly shows work being done on a similar program; and (3) a computer disk which ASC's expert contends contains Paragon's version of a substantially similar code.[101]

Although this is the essence of ASC's infringement case, I note that all such arguments – whether arising from a theory of direct evidence of copying or from the position that copying may be inferred – are not overly probative since they do not begin by even attempting to specify exactly what portions of the SCDS software are protectable, original elements and which are unprotectable because they are "'dictated by efficiency ... and external factors such as particular business practices.'"[102] In that regard, as Judge Lioi observed, the first step toward establishing what elements can pass through the filter as

---

[99] ECF # 316 at 14-16.

[100] *Id.*

[101] *Id.* at 16-18.

[102] *R.C. Olmstead*, 657 F. Supp. 2d at 894 (quoting *Kohus*, 328 F.3d at 855-56).

original, protectable components of the SCDS software should have been expert testimony "'to establish what elements, if any, are necessary to the function'" of tracking single copy deliveries of newspapers.[103] Then, once the unprotected elements have been filtered out, the second step of determining if Paragon's software infringed on SCDS's software, minus the non-protected parts, would have required additional expert testimony to educate the trier of fact as to whether the intended audience for such software would find Paragon's software, absent non-protected elements, "substantially similar."[104]

Here, as stated, although ASC has extensively argued its *conclusion* that Paragon's software is substantially similar to its SCDS code when that code is reduced to only its original, protectable elements, it has offered no evidence as described above by which a jury could arrive at that conclusion.[105] Stated differently, ASC appears to assume that because Paragon has not contested the validity of its copyright,[106] the only thing it needed to prove to establish infringement by Paragon is that copying occurred.[107] It appeared to have recognized no need to establish, as a predicate matter and through Rule 56 evidence, which specific elements of its software "constitute protectable original constituent elements

---

[103] *Id.* (quoting *Kohus*, 328 F.3d at 856).

[104] *Id.* (quoting *Kohus,* 328 F.3d at 857).

[105] ECF # 316 (sealed) at 16-18; *see also*, ECF # 316, Attachment (Pelz declaration) at ¶ 21.

[106] *See*, *id.* at 12 n.5.

[107] *Id.* at 12.

-22-

protected by the Copyright Act" that would then trigger a finding of infringement if Paragon were shown to have copied them.[108]

In fact, as noted above and in both the district court opinion in *R.C. Olmstead* and the opinion of the Sixth Circuit in affirming that decision, infringement occurs only when original, protected elements of a copyrighted work are copied.  ASC's failure to provide evidence of what was original and protectable in its software thus failed to provide any basis by which a jury could determine that Paragon infringed on anything. As the district court in *R.C. Olmstead* noted in a similar situation, that failure "has left this Court hamstrung and unable to engage in the necessary first step of analysis demanded under *Kohus*"[109] and is, therefore, fatal to ASC's attempt to deny Paragon summary judgment.[110]

That said, assuming *arguendo* that this Court somehow could overcome that fatal defect "and divine *a priori* original protected elements of [ASC's] code,"[111] I would recommend finding, after viewing the evidence most favorably to ASC, that ASC has arguably offered barely sufficient, admissible and probative evidence to create a genuine issue of material fact as to whether Paragon's software was substantially similar to the original parts of its own software so as to satisfy the second prong of the infringement analysis.

---

[108] *R.C. Olmstead*, 657 F. Supp. 2d at 893.

[109] *Id*. 894.

[110] *See*, *id*. at 893.

[111] *Id*.

-23-

As was discussed by the district court in *R.C. Olmstead*, "[t]hese protectable elements may be found in the literal program code, internal structures controlling operation of the program, or audiovisual displays."[112] Here, as to program code, Dr. Peltz, ASC's expert, states in his affidavit that the Paragon-created code is "substantially similar" to ASC's code, with such similarity being evidenced by "field names, field types, field lengths, and the order of fields within the data structure."[113] Also, although this evidence is markedly less probative,[114] ASC includes images from the display screen of its product and Paragon's that it contends show similarities.[115]

Giving the benefit of the doubt to ASC as to whether all this evidence is truly probative, and recognizing that ASC cannot defeat Paragon's motion because of the already

---

[112] *Id.* at 894 (citations omitted).

[113] ECF # 316 (sealed), Attachment (Pelz declaration) at ¶ 20.

[114] I note in particular that the form on both images consists of columns headed by the beginning date of a week, followed by lines for each day of that week where the number of copies drawn from the delivery truck and number returned to the truck can be entered – identical except for minor details such as type size. However, this ledger form is very much like the ledger form that was denied copyright protection by the Supreme Court in *Baker v. Selden*, 101 U.S. 99 (1879). There, the Court ruled that a competing bookkeeping system that also used, in common with the allegedly protected system, columns but with slightly different headings, and the arrangement of the columns did not infringe a copyright because ledgers were necessary to the function of bookkeeping and so not entitled to protection. *Id.* at 102-04, *see also*, *Feist Publ'ns*, 499 U.S. at 361-64 (phone directory not protected by copyright). Here, it seems doubtful that there can be any protection for an electronic ledger used to record daily deliveries and returns of individual newspapers where such protection would have to be sought on the basis that each work visually displays ledger information necessary for the function. However, once again, this issue was not raised or briefed by the parties and the motion may be adjudicated without deciding it.

[115] ECF # 316 (sealed) at 17-18.

-24-

mentioned defects in the first prong of the analysis required by *R.C. Olmstead* and *Kohus*, I would, nonetheless, recommend finding that ASC has barely presented enough evidence to potentially raise a jury question as to whether Paragon's software is substantially similar. However, as discussed, that conclusion is not relevant where ASC has not first shown which elements of its software are original and protected, and thus constitute the elements that should then be subject to review for substantial similarity with Paragon's software.

Further, because I recommend finding that there is no basis for finding Paragon liable for federal copyright infringement, I also recommend finding that ASC's contention that infringement can be based on multiple instances of copying does nothing to alter that conclusion.

## C.  Application of standards – Paragon's motion should be denied as to all other claims asserted by ASC.

As regards all other extant claims asserted by ASC,[116] Paragon acknowledges[117] that, in addition to the copyright infringement claim addressed above (count one),[118] ASC has four remaining causes of action against Paragon: (1) a federal law claim alleging violation of the Lanham Act[119] for false, misleading, and confusing advertising (count two);[120] and state law

---

[116] Counts three and four of the amended complaint here have already been dismissed. *See*, ECF ## 214, 215.

[117] ECF # 315 at 4.

[118] *See*, ECF # 5, Attachment at ¶¶ 21-22; 38-47.

[119] 15 U.S.C. § 1125(A).

[120] *See*, ECF # 5, Attachment at ¶¶ 48-59.

claims for (2) tortious interference with existing and prospective business relationships (count five),[121] (3) unjust enrichment (count six),[122] and (4) unfair competition (count seven).[123]

Paragon, in its reply memorandum, argues that all of ASC's remaining claims are barred from adjudication here by the doctrine of *res judicata* or claims preclusion because they could have been raised or actually were raised and decided in the state court action between these parties in 2003.[124] I note, however, that this argument substantially differs from the grounds originally set forth by Paragon in its motion for summary judgment and brief in support. There, as detailed earlier, Paragon asserts that ASC's non-copyright infringement claims are entirely "contingent" on the infringement claim and so should be adjudicated in Paragon's favor once the infringement claim is resolved and no longer in the case.[125]

Whatever the merits of Paragon's current assertions about applying *res judicata* to resolve the non-infringement claims, I observe that "it is well-settled that a movant cannot

---

[121] *Id.* at ¶¶ 24; 74-78.

[122] *Id.* at ¶¶ 81-84.

[123] *Id.* at ¶¶ 85-88.

[124] ECF # 318 at 8-13.

[125] ECF # 315 at 3-4.

raise new issues for the first time in a reply brief."[126] That is true in cases of summary judgment.[127] Indeed, as was noted in the Sixth Circuit summary judgment case of *Lexicon, Inc. v. Safeco Insurance Company of America, Inc.*,[128] "a district court properly declines to consider an issue raised for the first time in a reply brief."[129] Raising an issue for the first time in a summary judgment reply brief is inconsistent with "a party's obligation to fairly present each of its issues at every stage of the proceedings,"[130] and does not preserve the issue for later appellate review.[131]

Accordingly, without considering the merits of Paragon's arguments as relate to *res judicata* barring the non-copyright infringement claims, I recommend that such arguments not be addressed because they were advanced for the first time in Paragon's reply brief.

---

[126] *Hellenberg v. Integrated Deicing Servs., LLC*, 2011 WL 317733, at *2 n.1 (E.D. Mich. Feb. 1, 2011) (citations omitted).

[127] *Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682-83 (E.D. Mich. 2002) (citing *United Stated v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993)).

[128] *Lexicon, Inc. v. Safeco Ins. Co. of America*, 436 F.3d 662 (6th Cir. 2006).

[129] *Id*. at 676 n.3 (citations omitted) (Griffin, J., concurring in part and dissenting in part).

[130] *Id*.

[131] *Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002).

## Conclusion

In sum, for the reasons stated, I recommend finding that Paragon's motion for summary judgment should be granted in part as to ASC's claim(s) of federal copyright infringement but denied as to all other claims. Further, I note again that ASC's motion for sanctions is addressed in a separate and contemporaneous report and recommendation.

Dated:  July 19, 2012                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[132]

---

[132] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-28-